1   Jordan L. Lurie (SBN 130013)
    Jordan.Lurie@capstonelawyers.com
2   Tarek H. Zohdy (SBN 247775)
    Tarek.Zohdy@capstonelawyers.com
3   Cody R. Padgett (SBN 275553)
    Cody.Padgett@capstonelawyers.com
4   Karen L. Wallace (SBN 272309)
    Karen.Wallace@capstonelawyers.com
5   Capstone Law APC
    1875 Century Park East, Suite 1000
6   Los Angeles, California 90067
    Telephone:  (310) 556-4811
7   Facsimile:   (310) 943-0396

8   Troy L. Isaacson, Esq., (Cal. Bar No. 186834, NV Bar No. 6690)
    Norberto J. Cisneros, Esq., (Cal. Bar No. 182001, NV Bar No. 8782)
9   Barbara M. McDonald, Esq., (Cal. Bar No. 281722, NV Bar No. 11651)
    MADDOX | ISAACSON | CISNEROS LLP
10  11920 Southern Highlands Parkway, Suite 100
    Las Vegas, Nevada 89141
11  Telephone:  (702) 366-1900
    Facsimile:   (702) 366-1999

12

13  Attorneys for Plaintiffs Nicholas and Shawna Wylie

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16

| 17 | NICHOLAS WYLIE and SHAWNA WYLIE (fka BROWN), individually, and on behalf of a class of similarly situated individuals, | Case No.: 8:16-CV-02102 |
|---|---|---|
| 18 | | **CLASS ACTION COMPLAINT FOR:** |
| 19 | | |
| 20 | Plaintiffs, | (1)  Violation of Nevada Deceptive Trade Practices Act |
| 21 | v. | (2)  Breach of Common Law Implied Warranty of Merchantability and Breach of Implied Warranty pursuant to Nev. Rev. Stat. §§104.2314 and 104A.2212 |
| 22 | HYUNDAI MOTOR AMERICA, a California corporation, | |
| 23 | Defendant. | (3)  Breach of Implied Warranty pursuant to the Magnuson-Moss Warranty Act |
| 24 | | (4)  Unjust Enrichment |
| 25 | | **DEMAND FOR JURY TRIAL** |
| 26 | | |
| 27 | | |
| 28 | | |

**INTRODUCTION**

1.     Plaintiffs Nicholas and Shawna Wylie ("Plaintiffs") bring this action for themselves and on behalf of all persons in the United States who purchased or leased any Hyundai Veloster, Hyundai Sonata (Eco) and Hyundai Elantra (Eco) vehicles equipped with a 7-speed dual-clutch automatic transmission (DCT) (collectively, "Hyundai Vehicles" or "Class Vehicles")[1] designed, manufactured, marketed, distributed, sold, warranted, and serviced by Hyundai Motor America, a California corporation ("Hyundai" or "Defendant").

2.     In October 2014, Hyundai premiered its 7-speed DCT, designed to "provide an improvement in fuel consumption and CO2 emission compared to a conventional six-gear automated transmission, while acceleration performance increases" and featuring two dry clutches that transfer engine power "independently into the odd and even gear train to always be ready to shift into the next gear."[2]  However, Plaintiffs allege on information and belief that Hyundai's 7-speed DCT contains a design defect in the Transmission Control Module ("TCM") that causes, among other problems, failure to shift, stalling, delayed acceleration, or loss of power ("TCM Defect").  The TCM is a small electronic component within the powertrain that processes data from various sensors throughout the engine in order to determine the optimal gear for shifting and fuel-economy.

3.     On information and belief, the TCM is defective because it fails to interpret data from the vehicle's sensors properly, thus miscalculating both the

---

[1] On information and belief, Hyundai vehicles equipped with the 7-speed DCT include: 2016 Hyundai Veloster (Turbo), 2016-2017 Hyundai Tucson (Eco, Sport, Limited), 2017 Hyundai Sonata (Eco), 2017 Hyundai Elantra (Eco)

[2] *Hyundai to showcase new downsized turbocharged engines and seven-speed dual-clutch transmission in Paris*, Hyundai Corporate News (Oct. 2, 2014), http://worldwide.hyundai.com/WW/Corporate/News/News/DF_WW_GLOBAL NEWS_141002_2.html?selx2=transmission

appropriate gear and the correct shift timing, which results in an unresponsive accelerator pedal and stalling.

4. Since 2015, in an effort to address owner complaints regarding the TCM Defect, Hyundai has issued Technical Service Bulletins ("TSBs"), as detailed below. However, these efforts failed to resolve the TCM Defect.

5. On information and belief, the Hyundai Vehicles are equipped with the same or substantially similar 7-speed DCT and have the same or substantially identical TCMs, and the TCM Defect is the same for all Class Vehicles.

6. The TCM Defect causes unsafe conditions, including the transmission failing to shift, stalling, and delayed or unresponsive acceleration, especially from a stop. These conditions are hazardous because they severely affect the driver's ability to control the vehicle during normal driving conditions and prevent drivers from accelerating to maintain safe speeds in traffic. For example, the TCM Defect may make it difficult for drivers to accelerate safely from traffic stops because Class Members' vehicles hesitate, fail to shift gears, and stall when drivers try to accelerate from stops.[3]

_____

[3] *See*, for example, this 2016 Hyundai Veloster owner's complaint to the National Highway Traffic Safety Administration ("NHTSA"): (2016 Hyundai Veloster, 10/12/2016) MOST IMPORTANTLY IS THE SAFETY **REGARDING THE 7 SPEED DUAL CLUTCH TRANSMISSION.** IT IS INTERMITTENT, BUT I HAVE CAPTURED IT ON CAMERA THREE TIMES - ONCE PRIOR TO THE TRANSMISSION PARTS BEING REPLACED, AND THEN THE ENTIRE TRANSMISSION. AND TWICE AFTER THE ENTIRE TRANSMISSION WAS REPLACED. **JUST LAST FRIDAY, I COULDN'T DRIVE THE VEHICLE BECAUSE IT SEIZED TO SHIFT AND ACCELERATE PROPERLY FIVE TIMES IN A ROW,** THE MOST IT HAS EVER HAPPENED. I HAD IT TOWED TO THE DEALERSHIP AND WAS PLACED BACK INTO A RENTAL. TODAY, THE DEALERSHIP SAYS "THEY CAN'T FIND ANYTHING WRONG" (THIS HAS BEEN SAID OVER THE COURSE OF 5 MONTHS BECAUSE IT'S INTERMITTENT) AND THEY'RE FORCING ME TO RETURN THE RENTAL - LEAVING ME WITH UNSAFE TRANSPORTATION YET AGAIN. (Safercar.gov, *Search for Safety Problems* (Oct. 27, 2016), http://www-odi.nhtsa.dot.gov/owners/Search SafetyIssues)(emphasis added).

7.     Since at least 2015, through consumer complaints and dealership repair orders, among other internal sources, Defendant knew or should have known that the 7-speed DCT in the Class Vehicles contained a design defect that diminishes the drivability of the Class Vehicles and causes safety hazards, in part because the same concerns were expressed regarding the 2016-2017 Hyundai Tucson that is equipped with the same 7-speed DCT and TCM.  For example, a 2016 Hyundai Tucson owner complained to the NHTSA on December 14, 2015:

> THE PROBLEM THAT I AM HAVING IS WHEN I START TO ACCELERATE GOING THROUGH THE GEARS 1,2,3 AND 4 THERE IS A HUGE, PAUSE/DELAY IN SHIFTING THROUGH THE GEARS. IN FACT THERE HAS BEEN MAY TIMES WHEN I START TO ACCELERATE THE GEARS PAUSES AND I HIT THE GAS AGAIN AND THE VEHICLE DOES NOT ACCELERATE AT ALL THE RPM'S GO UP SOMETIMES PAST 6 AND THE TRANSMISSION START BURNING. I EVEN GOT AN SAFETY DISPLAY MESSAGE THAT THE TRANSMISSION IS OVERHEATED AND TO PULL OVER FOR SAFETY UNTIL IT COOLS DOWN. NOTE I ONLY HAVE 5719 MILES AND MY 4TH TIME TAKING IT BACK TO THE DEALERSHIP FOR SERVICE. I AM DRIVING IN FEAR EVERYTHING BECAUSE THIS PROBLEM HAPPENS WHEN IT WANTS TO SOMETIMES THE VEHICLES DRIVES PERFECT THEN THE NEXT MINUTE I'M HAVING THE SAME ISSUE. THIS PROBLEM IS HAPPENING AT A STREET LIGHT, STOP SIGN, STOP AND GO TRAFFIC ON THE STREETS AND ON THE FREEWAY, WHEN I AM SLOWING DOWN TO MAKE A TURN THEN ACCELERATE AND IN THE MORNING, AFTERNOON AND AT NIGHT. I AM AFRAID WHEN I START TO ACCELERATE THEN THE NEXT SECOND I CANNOT ACCELERATE THAT THE CAR BEHIND ME OR IF I AM CHANGES LANES AND STOP ACCELERATING THAN ANOTHER VEHICLE WILL CRASH INTO ME. I DON'T KNOW IF THE PROBLEM IS THE ACTUAL TRANSMISSION AND OR SOFTWARE RELATED, BUT IT IS UNSAFE AND I DO NOT WANT TO DRIVE THIS VEHICLE ANYMORE.  THIS PROBLEM IS OFF AND AND ON, BUT WHEN IT DOES HAPPEN IT DOES NOT STOP THE PROBLEM UNTIL I TURN THE CAR OFF. SOMETIMES IT CONTINUES TO HAPPEN OR NOT. FOR EXAMPLE LAST TIME I HAD THE PROBLEM WAS ON SAT. NIGHT WHILE I WAS OUT WITH MY FAMILY IN THE CAR. THE TRANSMISSION WAS OVERHEATING, IT COOLED OFF AND ABOUT AN HOUR LATER I DRIVE IT HOME AND IT WAS OKAY. I DROVE IT TO THE DEALERSHIP THIS MORNING WITH NO ISSUES. I AM IN SALES AND DRIVE A LOT AND CANNOT AFFORD THESE ISSUES FOR SAFETY REASONS AND FOR WORK.[4]

---

[4] Safercar.gov, *Search for Safety Problems* (Oct. 27, 2016), http://www-

CLASS ACTION COMPLAINT

8.      On information and belief, Defendant's corporate officers, directors, or managers knew about the TCM Defect but failed to disclose it to Plaintiffs and Class Members, at the time of sale, lease, repair, and thereafter.

9.      In fact, in or around August 2016, Hyundai issued a Technical Service Bulletin ("TSB") for Hyundai Tucson vehicles equipped with the 7-speed DCT and a limited recall in September 2016 for certain of the same vehicles informing its dealers that a faulty "transmission clutch application logic can result in a delayed engagement when accelerating from a stop" or fail to accelerate at all "if the accelerator pedal is repeatedly cycled." Hyundai dealers were instructed to reprogram the TCM in the affected vehicles. However, both the TSB and the recall were limited to the 2016 Tucson, despite owners complaining of similar issues in other Hyundai vehicles equipped with the same 7-speed DCT.

10.     Because Hyundai will not notify Class Members that the 7-speed DCT is defective, Plaintiffs and Class Members (as well as members of the general public) remain subject to dangerous transmission malfunctions that can occur without warning.

11.     The alleged TCM Defect was inherent in each Hyundai Vehicle and was present in each Hyundai Vehicle at the time of sale.

12.     Hyundai knew about and concealed the TCM Defect present in every Class Vehicle, as well as its attendant hazardous conditions, from Plaintiffs and Class Members, at the time of sale, lease, repair, and thereafter. In fact, instead of repairing the defects in the 7-speed DCT, Hyundai either refused to acknowledge their existence or performed repairs that simply masked them.

13.     If they had known about these defects at the time of sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class

odi.nhtsa.dot.gov/owners/Search SafetyIssues)

CLASS ACTION COMPLAINT

Vehicles or would have paid less for them.

14.    As a result of the TCM Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful lives have run.

### THE PARTIES

**Plaintiffs Nicholas and Shawna Wylie**

15.    Plaintiffs Nicholas and Shawna Wylie ("Plaintiffs") are Nevada citizens who reside in Boulder City, Nevada.

16.    On or around October 31, 2015, Plaintiffs purchased a new 2016 Hyundai Veloster Turbo, equipped with a 7-speed DCT, from Henderson Hyundai Superstore, an authorized Hyundai dealer in Clark County.

17.    Plaintiffs' Hyundai vehicle has and continues to exhibit the TCM Defect described herein.

18.    Specifically, on or around July 6, 2016, with approximately 15,180 miles on the odometer, Plaintiffs brought their vehicle to Henderson Hyundai complaining that the vehicle's "TRANS WENT TO 7000RPMS IN SPORT MODE ON HIGHWAY, FEELS LIKE SLIPPING."  A Hyundai service technician inspected the vehicle but could not confirm any transmission-related faults, and no repairs were performed.  Plaintiffs continued to experience symptoms of the TCM Defect, including hesitating and jerking on acceleration.

19.    Then, on or around August 8, 2016, with approximately 15,724 miles on the odometer, Plaintiffs brought their vehicle back to Henderson Hyundai because the transmission was jerking and surging on acceleration or the RPMs would spike with no acceleration.  The service technician inspected the vehicle but failed to make any repairs.

20.    Further, on or around August 17, 2016, with approximately 15,946 miles on the odometer, Plaintiffs brought their vehicle back to Henderson

Hyundai because the transmission was still surging and shuddering in stop and go traffic situations, as well as rolling back on inclines when they tried to accelerate from a stop.   During this visit, the gear actuator assembly, the shift lever control assembly, and the TCM were replaced on Plaintiffs' vehicle.

21.     Plaintiffs continued to experience issues with their Hyundai Veloster such that on or around October 7, 2016, with approximately 17,802 miles on the odometer, Plaintiffs brought their vehicle to Henderson Hyundai again because the vehicle failed to accelerate from stops while pressing the accelerator pedal or hesitated to accelerate before "jumping into gear and start speeding."  The service technician inspected the vehicle but again could not confirm any vehicle faults, and no repairs were performed.

22.     Despite Hyundai technicians inspecting their vehicle for symptoms relating to the TCM Defect for a total of approximately 64 days, Plaintiffs continue to experience those symptoms, including failure to shift, stalling, and delayed or no acceleration.

23.     Plaintiffs purchased their vehicle primarily for personal, family, or household use.  Hyundai manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

24.     Passenger safety and reliability were factors in Plaintiffs' decision to purchase their vehicle.  Prior to purchasing their vehicle, Plaintiffs spent time researching the Hyundai Veloster on Hyundai's corporate website.  Based on their research, Plaintiffs believed that the Hyundai Veloster would be a safe and reliable vehicle.  Plaintiffs also test drove their vehicle with a dealership salesperson prior to purchase.

25.     Had Hyundai disclosed its knowledge of the TCM Defect before they purchased their vehicle, Plaintiffs would have seen or heard such disclosures and been aware of them.  Indeed, Hyundai's omissions were material to Plaintiffs.  Like all members of the Class, Plaintiffs would not have purchased

1   their Class Vehicle, or would have paid less for it, had they known of the TCM
2   Defect.

3       26.    At all times, Plaintiffs, like all Class Members, have driven their
4   vehicle in a manner both foreseeable and in which it was intended to be used.
5   **Defendant**

6       27.    Defendant Hyundai Motor America is a corporation organized and
7   in existence under the laws of the State of California and registered to do
8   business in the State of California.  Hyundai Motor America's Corporate
9   Headquarters are located at 10550 Talbert Avenue, Fountain Valley, California
10  92708.  Hyundai Motor America designs, manufactures, markets, distributes,
11  services, repairs, sells, and leases passenger vehicles, including the Class
12  Vehicles, nationwide and in California.  Hyundai Motor America is the
13  warrantor and distributor of the Class Vehicles in the United States.

14      28.    At all relevant times, Defendant was and is engaged in the business
15  of designing, manufacturing, constructing, assembling, marketing, distributing,
16  and selling automobiles and motor vehicle components in Orange County and
17  throughout the United States of America.

18                          **JURISDICTION**

19      29.    This is a class action.

20      30.    Plaintiffs and other members of the Proposed Class are citizens of
21  states different from the home state of Defendant.

22      31.    On information and belief, aggregate claims of individual Class
23  Members exceed $5,000,000.00 in value, exclusive of interest and costs.

24      32.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

25                             **VENUE**

26      33.    Hyundai, through its business of distributing, selling, and leasing the
27  Class Vehicles, has established sufficient contacts in this district such that
28  personal jurisdiction is appropriate.  Defendant is deemed to reside in this district

1    pursuant to 28 U.S.C. § 1391(a).

2         34.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

3    **FACTUAL ALLEGATIONS**

4         35.     Hyundai began development of its new dry 7 speed dual-clutch

5    transmission ("DCT") in 2011: "The design phase [for the DCT] was started in

6    early 2011, and the mass production started finally in September 2014 at the

7    Hyundai-Dymos plant located in South Korea."[5] On information and belief,

8    Hyundai learned of the TCM defect during this period.

9         36.     As discussed above, Hyundai premiered the 7-speed DCT in

10   October 2014. Designed to "provide an improvement in fuel consumption and

11   $CO_2$ emission compared to a conventional six-gear automated transmission,

12   while acceleration performance increases," the 7-speed transmission uses two

13   dry clutches with an actuator for each to transfer engine power independently

14   into the odd and even gears to minimize "torque interruption."[6] However,

15   Plaintiffs allege on information and belief that Hyundai's 7-speed DCT contains

16   a design defect in the Transmission Control Module ("TCM") that causes, among

17   other problems, failure to shift, stalling, and delayed or no acceleration ("TCM

18   Defect").

19        37.     On information and belief, the TCM is defective because it fails to

20   interpret data from the vehicle's sensors properly, thus miscalculating the

21

22        [5] Chang-Yeon Cho, *More Efficiency with the Dry Seven-speed Dual-clutch*

23   *Transmission by Hyundai*, ATZ Worldwide 118:6, 38 (June 2016), https://www.atz-

24   magazine.com/download/More%20Efficiency%20with%20the%20Dry%20Seve n-speed%20Dual-clutch%20Transmission%20by%20Hyundai.pdf (last visited

25   Nov. 17, 2016).

26        [6] *Hyundai to showcase new downsized turbocharged engines and seven-speed dual-clutch transmission in Paris*, Hyundai Corporate News (Oct. 2, 2014),

27   http://worldwide.hyundai.com/WW/Corporate/News/News/DF_WW_GLOBAL

28   NEWS_141002_2.html?selx2=transmission.

1  appropriate gear and shift timing and causing an unresponsive accelerator pedal,
2  delayed or no acceleration, and stalling.

3       38.    The alleged TCM Defect is inherent in all Class Vehicles and is the
4  same for all Class Vehicles.

5       39.    Since at least December 2015, Hyundai was aware of the defects of
6  the 7-speed DCT based on consumer complaints both online and to its authorized
7  dealers and repair facilities.  Hyundai, however, failed to disclose these known
8  defects to consumers.  As a result of this failure, Plaintiffs and Class Members
9  have been damaged.

10              **The TCM Defect Poses an Unreasonable Safety Hazard**

11       40.    The TCM Defect causes unsafe conditions, including, but not
12  limited to, the vehicle failing to shift, stalling, and failing or hesitating to
13  accelerate.  These conditions present a safety hazard because they severely affect
14  the driver's ability to control the vehicle's acceleration during normal driving
15  conditions and prevent drivers from maintaining the appropriate and expected
16  speed of traffic flow. As an example, these conditions may make it difficult for
17  drivers to safely accelerate from traffic stops because Class Members' vehicles
18  hesitate, fail to shift gears, and stall when drivers apply the accelerator pedal
19  from stops.

20       41.    Many purchasers and lessees of the Class Vehicles have experienced
21  problems with the 7-speed DCT.  Complaints filed by consumers with the
22  National Highway Traffic Safety Administration ("NHTSA") and elsewhere
23  online demonstrate that the defect is widespread and dangerous and that it
24  manifests without warning.  The complaints also indicate Defendant's awareness
25  of the problems with the transmission and how potentially dangerous the
26  defective condition is for consumers.  The following are some safety complaints
27  relating to the TCM Defect (spelling and grammar mistakes remain as found in
28  the original) (Safercar.gov, *Search for Safety Issues* (October 28, 2016),

http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues/):

**2016 Hyundai Veloster**

    a.  2/10/2016 THIS BRAND NEW CAR BREAKS DOWN ON MY TEENAGER. IT HAS DONE SO ON ME AS WELL. HAD IT INTO THE DEALER AND AUTO SHOPS AND THEY CNT FIND ANYTHING WRONG. THIS CAR LEA VES MY KID STRANDED IN THE MIDDLE OF NOWHERE. NOT SAFE. GOES INTO LIMP MODE AND STALLS

    b.  9/3/2016 ACCELERATING BY ITSELF, LUNGING IN STOP/GO TRAFFIC.MOTOR REVS INTO PASSING GEAR ALL THE WAY TO 6500 RPM. BUT STAYS IN THE CURRENT SPEED, AND SOMETIMES WILL HOLD AT CERTAIN RPM EVEN IF NOT ON GAS, VERY LAGGY IN REV I FEEL I'M DRIVING OLDER CAR WITH MESSED UP TRANSMISSION

    c.  10/2/2016 CAR SOMETIMES ACCELERATES BY ITSELF EVEN WHEN OFF THE GAS AND ON THE BRAKES. LUNGES IN STOP AND GO TRAFFIC. PASSING GEAR SOMETIMES REVS UP TO 6500RPM'S BUT STAYS IN THE CURRENT SPEED. SOMETIMES CAR STAYS AT A CERTAIN RPM EVEN IF NOT ON THE GAS AND WONT SLOW DOWN. BAD LAG AND TERRIBLE DEAD SPOTS IN ACCELERATION. I FEEL LIKE TRANSMISSION IS NOT COMMUNICATING WELL WITH CONTROL MODULE AND GAS PEDAL POSITION SENSOR IS WAY OFF THE MARK. CAR HAS PUT ME IN LIFE THREATENING SITUATIONS BUT HYUNDAI SERVICE SAYS THEY CAN'T REPRODUCE THE PROBLEM BUT ONLY DROVE IT 7 MILES. I BOUGHT CAR BRAND NEW AND JUST TURNED 5800 MILES BUT HAS BEEN BACK FOR THIS PROBLEM 4 TIMES NOW.

    d.  10/12/2016 WHEN THE CAR IS STOPPED AT A LIGHT OR IN TRAFFIC WITH THE FOOT ON THE BREAK WHEN YOU RELEASE YOUR FOOT OFF THE BREAK THE CAR LURCHES FORWARD - MUST BE SOMETHING WITH THE NEW DUAL CLUTCH 7-SPEED TRANSMISSION. PLEASE HYUNDAI FIX THIS BEFORE SOMEONE GETS HURT OR KILLED

    e.  10/12/2016 RECENTLY THERE WAS A RECALL ISSUES FOR THE 2016 TUCSON DCT. MY 2016 VELOSTER TURBO DCT HAS HAD THE IDENTICAL ISSUES, WHICH BEGAN JUST A FEW MONTHS AFTER PURCHASING THE CAR BRAND NEW. IT'S BEEN IN AND OUT OF THE DEALERSHIP FOR 5 MONTHS NOW, TOTALING OVER 70 DAYS. THERE HAVE BEEN GAS ISSUES - GAS FUMES SMELL OUTSIDE AND INSIDE VEHICLE, LOSING GAS ABNORMALLY FAST WHEN DRIVING, GAS TANK NOT FILLING TO FULL. THE AC RATTLES INTERMITTENTLY AND HAS BLOWN HEAT OFF AND ON. MOST IMPORTANTLY IS THE SAFETY REGARDING THE 7 SPEED DUAL CLUTCH TRANSMISSION. IT IS INTERMITTENT, BUT I HAVE CAPTURED IT ON CAMERA THREE TIMES - ONCE PRIOR TO THE TRANSMISSION PARTS BEING REPLACED, AND THEN THE

ENTIRE TRANSMISSION. AND TWICE AFTER THE ENTIRE TRANSMISSION WAS REPLACED. JUST LAST FRIDAY, I COULDN'T DRIVE THE VEHICLE BECAUSE IT SEIZED TO SHIFT AND ACCELERATE PROPERLY FIVE TIMES IN A ROW, THE MOST IT HAS EVER HAPPENED. I HAD IT TOWED TO THE DEALERSHIP AND WAS PLACED BACK INTO A RENTAL. TODAY, THE DEALERSHIP SAYS "THEY CAN'T FIND ANYTHING WRONG" (THIS HAS BEEN SAID OVER THE COURSE OF 5 MONTHS BECAUSE IT'S INTERMITTENT) AND THEY'RE FORCING ME TO RETURN THE RENTAL - LEAVING ME WITH UNSAFE TRANSPORTATION YET AGAIN. I'VE RISKED MY LIFE FOR MONTHS TRYING TO CAPTURE VIDEO PROOF, AND I HAVE SENT THE VIDEO PROOF TO HYUNDAI - YET THEY ARE STILL MAKING MY RETURN THE RENTAL AND ARE NOT FIXING THE VEHICLE, NOR DO THEY HAVE A FIX FOR IT (ALREADY REPLACED THE ENTIRE TRANSMISSION AND COMPUTER!!). THIS IS A VIDEO I CREATED AND UPLOADED TO YOUTUBE, SUMMARIZING SOME OF WHAT'S GONE ON AND THE VIDEO PROOF I HAVE. HTTPS://WWW.YOUTUBE.COM/WATCH?V=1Y3ECBR07EM I HAVE OPENED A CASE WITH NEVADA CONSUMER AFFAIRS WHO HAS ALREADY REVIEWED MY CASE AND TRIED NEGOTIATING WITH HYUNDAI. THEY HAVE INSTRUCTED ME TO OPEN A CASE WITH NHTSA AND THE DMV.

**2016 Hyundai Tucson**

   f.  Hyundai-Forums.com

      i.  "Overcoming turbo lag?" Thread[7]

         1)  8/28/15 Hi all, I mentioned in another thread that I experienced acceleration lag at times when driving the Tucson's 1.6L turbo engine. Now that I have more experience with it, I'm convinced this is turbo lag, something I'm learning to get used to since this is my first time using a turbocharged engine. It's definitely most noticeable at a dead stop. I thought there was no lag then, but since experimenting with the acceleration, it's definitely noticeable when I punch the gas hard off the line. There seems to be some trick though to getting more smoother acceleration from a dead stop that I'm trying to figure out. If I FLOOR it, the car has to think about it for a few seconds before it decides to go. But if I press the gas lightly and then press down tepidly, it's more responsive. I think there's a trick to spooling it at a certain RPM before punching the gas, because this approach has been hit or miss for me. I haven't been watching the RPMs but there does seem to be a matter of practicing this until I get the timing right, revving it up at the right RPM before I really hit the gas. I think it's more noticeable for me because

---

[7] http://www.hyundai-forums.com/2016-tucson-ix35-models/405994-overcoming-turbo-lag.html (last visited Nov. 17, 2016).

I'm at a higher elevation in very warm weather. As the weather gets colder I suspect the lag will be less noticeable. In the meantime I'm trying to adapt how I accelerate to see if I can at least minimize the lag. If anyone can offer suggestions on how to adjust my driving here to help mitigate the lag, let me know.

2) 8/29/15 …Giving it light throttle like your doing will give the turbo a head start for the heavy throttle but from a dead stop there is not much you can do with this engine to get instant boost, aside from maybe holding in the brake and revving the engine for a second prior to flooring it.

3) 8/29/2015 They did tell me there was a break-in period for the engine that will smooth out acceleration, hopefully by my first oil change I'll start noticing that myself too.

4) 9/2/2015 I have test driven 3 of the 2016 Tucson Limited versions and 2 of the 3 had serious acceleration/turbo lag. It was enough lag that causes me concern in regard to purchasing this vehicle…

ii. "Slow/rough shifting into reverse" Thread[8]

1) 10/9/2015 Hi, Has anybody else experienced what seems like a difficult time shifting into reverse? It seems to me that when I try to shift into reverse, it takes the transmission a bit of time (1-2 seconds) to decide that it is willing to go backwards and even once it does get going, it seems rough. The car only has about 600 miles on it…

g. YouTube Video, "2016 Hyundai Tuscon [sic] DCT Transmission Problem" Comments[9]

i. 2/11/16 …At random times, usually from a stop, but sometimes when pulling into traffic, the transmission will "freak out". When this happens, the engine will rev to high RPMs, usually around 5,000, but the transmission will not send much power, if any, to the wheels. It behaves as if it is either in neutral, has the clutch mostly disengaged, or is attempting to start in a higher gear. This has already caused me to put the vehicle into the shop twice. I consider this to be a very hazardous defect. As I mentioned, this happened once after I pulled out of a parking lot into the normal flow of traffic. The vehicle became essentially disabled, and I had to put my hazard flashers on, and hope that I did not get hit from behind.

ii. 5 months ago (approx. 6/2016) My 2016 Tucson does the same exact thing. I actually used your video to show them when they

[8] http://www.hyundai-forums.com/2016-tucson-ix35-models/418434-slow-rough-shifting-into-reverse.html (last visited Nov. 17, 2016).

[9] My Broken Hyundai, *2016 Hyundai Tuscon DCT Transmission Problem*, YouTube (Feb. 11, 2016), https://www.youtube.com/watch?v=TCVtr_zcyrs.

told me it was normal and not to worry. Mine likes to do it while trying to go in reverse. Revs up to 5000-6000 rpms and doesn't move an inch. I'm worried it will catch and I will fly out of my parking spot. Anyway, Hyundai reset my transmission computer and said that everything should be fine now that it is back to factory settings. The problems started at about 4500 miles on the car. Guess we will see.

iii.   3 months ago (approx.. 8/2016) Same thing happened to me on July 22nd. The dealership replaced a double clutch actuator assy and a actuator assy-clutch. It ran great for three weeks and just happened again. I have a case open and I'm taking it back to the dealership. Hyundai is aware of the issue, but I'm not sure if they know what the fix is…

iv.   4 months ago (approx. 7/2016) This was happening to our new Hyundai Tucson.  We took the car to the dealer and refused to take the car home when they said it was fine... So we requested that they have a tech drive it home every night for a week.  He was able to confirm that there was a problem. We then called Hyundai and filed a "lemon law claim" all while the dealership was " trying" to fix.  They brought a Hyundai engineer to the dealership and he confirmed that there was no way to fix and now Hyundai is buying back our car including sales tax…4 months ago (approx. 7/2016) I have the same problem with my Tucson 2016, AWD 1.6 Limited. Thanks for the video as I didn't have any evidence of this until now. My car is currently at the dealership and like you said, they can't find anything wrong with it, can't recreate the problem. About a week ago I stopped at the traffic light on a red and couldn't move from that spot when the light turned green. The car was in a Drive mode and was revving like on a racing track, but wasn't moving. I had a long line of cars behind me and it was not just embarrassing, but really scary. My 5 year old son asked: "mama, did you forget to put the gas in?" I had to put the car in a Parking mode, then back into Driving and pushed the gas again, but it still wasn't going anywhere. Then I put it back in Parking, turned it off completely, started it again and pushed the gas, hoping that full restart would fix the issue. There was no change in my car's behavior even after the restart. I kept on pumping the gas pedal and after 30-40 seconds, something happened and my car finally started moving. It slooooooowly rolled over the intersection on already yellow light but it wasn't going any faster than 5 mi/hr no matter what I tried. Then I pulled into the parking lot and turned my car off again. After this restart it was acting normally again as nothing had happened, so I was able to get to work and back. When I dropped my car at the dealership at the end of the week, they weren't able to find any issues besides just saying that Tucsons are known for "slow gear switching issues" like the teeth not griping fast enough to switch to the next level or something like that. This is not slow switching, this is not switching at all!

**Veloster Turbo Forum Discussion,** Veloster.org,   (last visited October 28, 2016, http://www.veloster.org/).

h. "Turbo lag on '16 vt" Thread

    i. Posted on 5/24/2016 by KJPitt: So I've notice a really bad turbo lag in my '16 vt auto dct. When the light turns green and I proceed as normal and I can feel it pull and then all the sudden it like hesitates and pulls again, jerking and all. The lag is strong in this car and even my gf notice it too. Is there something I can do to help with this massive turbo lag. It's gotten really annoying. Thanks in advance yall.

    ii. Posted on 5/24/2016 by TooGqForYou: (WITH TRACTION CONTROL OFF) i can concur to this. its like hesitant, very hard to explain. almost jumpy at times. the dct does take its time to switch the gears, you can actually hear them switch sometimes. I usually gradually step on it to get to WOT. but in those gradual stages, its like a gnar pull then norm then gnar pull again all in one pull if that makes any sense lol. is that the turbo?

    iii. Posted on 6/12/2016 by ken oath: We bought a brand new vt the first thing I noticed was the rough acceleration took it back to the dealers, no one new looked up this web site and found the answer we bought the car for 5 yrs warranty so I'm reluctant to do after market mods at 100% throttle it seems to be ok so we drive it easy or floor it if a K&N filter helps and won't stuff the warranty I might go for something like that

i. "Turbo lagging?" Thread

    i. Posted on 4/27/2016 by winozzle: I have a 2016 VT manual with all the upgrades. I bought her brand new January 21 and have just under 2500 miles on her. From day one, it seems that the turbo lags when I accelerate in any gear. Now, I realize this isn't exactly a speed machine, but I wouldn't expect a new car to feel like it's chugging when I press the gas pedal. I've not had a chance to have the dealer check her out...my boyfriend says he feels the hesitation, too. Please also note that I traded in a '14 VT (manual) with about 15K miles that did not hesitate and seemed a lot more peppy. From the small bit of interweb searching I've done, some say it's a firmware upgrade issue, or perhaps and intercooler issue? PS: I've never done any mod's to a car so be gentle. I'd much prefer to have the dealership do their thing before I do anything on my own.

42.    The TCM Defect poses an unreasonable safety risk for Class Members, as well as the drivers, passengers, and pedestrians sharing the road with Class Vehicles. A driver's ability to accelerate and merge into traffic as necessary are critical to a vehicle's safe operation. A defect that prevents such safe operation poses a safety hazard not only to the driver but also to the general

1   public and clearly increases the risk of accidents.

2   **Hyundai Has Exclusive Knowledge of the TCM Defect**

3   43.   Hyundai has had superior and exclusive knowledge of the TCM

4   Defect and knew or should have known that the defect was not known or

5   reasonably discoverable by Plaintiffs and Class Members before they purchased

6   or leased the Class Vehicles.

7   44.   Plaintiffs are informed and believe and based thereon allege that

8   before Plaintiffs purchased their Class Vehicles, and since at least 2015, Hyundai

9   knew about the TCM Defect in the 7-speed DCT through sources not available to

10   consumers, including pre-release testing data, early consumer complaints about

11   the TCM Defect to Hyundai and its authorized dealers, testing conducted in

12   response to those complaints, high failure rates of the 7-speed DCT in other

13   Hyundai vehicles, most notably the Hyundai Tucson, replacement part sales data,

14   and other aggregate data from Hyundai dealers, among other internal sources of

15   information about the problem.

16   45.   As described above, in or around August 2016, Hyundai issued

17   Service Bulletin #5NP-X7J3D-10 for Hyundai Tucson vehicles equipped with

18   the 7-speed DCT informing its dealers that the "TRANSMISSION CLUTCH

19   APPLICATION LOGIC CAN RESULT IN A DELAYED ENGAGEMENT

20   WHEN ACCELERATING FROM A STOP…[AND] THE INABILITY TO

21   MOVE THE VEHICLE IN TRAFFIC MAY INCREASE THE RISK OF A

22   CRASH."  Hyundai did not provide any details regarding the remedies available

23   for the transmission issues at that time.

24   46.   Then, on or around September 6, 2016, Hyundai recalled a limited

25   number of 2016 Hyundai Tucson vehicles equipped with 7-speed DCTs for a

26   faulty "transmission clutch application logic [that] can result in a delayed

27   engagement when accelerating from a stop" or fail to accelerate at all "if the

28   accelerator pedal is repeatedly cycled."   Hyundai dealers were instructed to

reprogram the TCM in the affected vehicles.  However, the recall was limited to these specific vehicles, despite owners complaining of similar issues in other Hyundai vehicles equipped with the same 7-speed DCT.

47.   The existence of the TCM Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle with the 7-speed DCT.  Had they known that the Class Vehicles were equipped with defective 7-speed DCTs, Plaintiffs and other Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

48.   Reasonable consumers, like Plaintiffs, expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects.  Plaintiffs and Class Members further reasonably expect that Hyundai will not sell or lease vehicles with known safety defects, such as the TCM Defect, and will disclose any such defects to consumers when it learns of them.  They did not expect Hyundai to fail to disclose the TCM Defect to them and to continually deny the defect.

49.   Despite Hyundai's knowledge of this defect, it continues to manufacture, market, distribute and sell to otherwise unsuspecting purchasers defective vehicles.

**Hyundai Has Actively Concealed the TCM Defect**

50.   While it has been fully aware of the TCM Defect in the Class Vehicles, Hyundai actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease, or repair and thereafter.  Specifically, Hyundai failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)   any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the 7-speed DCT;

(b)   that the Class Vehicles, including their 7-speed DCT, were

1    not in good in working order, were defective, and were not fit

2    for their intended purpose; and

3       (c)    that the Class Vehicles and their 7-speed DCT were defective,

4    despite the fact that Hyundai learned of such defects as early

5    as 2015 through failure rates, customer complaints, and other

6    internal sources.

7    51.    When consumers present the Class Vehicles to an authorized

8    Hyundai dealer for repair of the 7-speed DCT, rather than repair the problem

9    under warranty, Hyundai dealers either inform consumers that their vehicles are

10   functioning properly or conduct repairs that merely mask the defect.

11   **CLASS ACTION ALLEGATIONS**

12   52.    Plaintiffs bring this lawsuit as a class action on behalf of themselves

13   and all others similarly situated as members of the proposed Class pursuant to

14   Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). This action

15   satisfies the numerosity, commonality, typicality, adequacy, predominance, and

16   superiority requirements of those provisions.

17   53.    The Class and Sub-Class are defined as:

18   **Nationwide Class**:    All individuals in the United States who
     purchased or leased any Hyundai Veloster Turbo vehicle equipped
19   with a 7-speed DCT (the "Nationwide Class" or "Class").

     **Nevada Sub-Class**:    All members of the Nationwide Class who
20   reside in the State of Nevada.

21   **Implied Warranty Sub-Class**:    All members of the Nationwide
     Class who purchased or leased their vehicles in the State of Nevada.

22

23   54.    Excluded from the Class and Sub-Classes are:  (1) Defendant, any

24   entity or division in which Defendant has a controlling interest, and their legal

25   representatives, officers, directors, assigns, and successors; (2) the Judge to

26   whom this case is assigned and the Judge's staff; (3) any Judge sitting in the

27   presiding state and/or federal court system who may hear an appeal of any

28

judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

55.    Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

56.    Typicality:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Hyundai and equipped with a 7-speed DCT.  The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective 7-speed DCT components.  Furthermore, the factual bases of Hyundai's misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

57.    Commonality:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting only individual Class Members.  These common legal and factual issues include the following:

(a)    Whether Class Vehicles suffer from defects relating to the 7-speed DCT;

(b)    Whether the defects relating to the 7-speed DCT constitute an unreasonable safety risk;

(c) Whether Defendant knows about the defects relating to the 7-speed DCT and, if so, how long Defendant has known of the defect;

(d) Whether the defective nature of the 7-speed DCT constitutes a material fact;

(e) Whether Defendant has a duty to disclose the defective nature of the 7-speed DCT to Plaintiffs and Class Members;

(f) Whether Plaintiffs and the other Class Members are entitled to equitable relief, including a preliminary and/or permanent injunction;

(g) Whether Defendant knew or reasonably should have known of the defects relating to the 7-speed DCT before it sold and leased Class Vehicles to Class Members;

(h) Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective 7-speed DCT components;

(i) Whether Defendant breached the implied warranty of merchantability pursuant to the Magnuson-Moss Act;

(j) Whether Defendant breached the common law implied warranty of merchantability; and

(k) Whether Defendant breached the implied warranty of merchantability pursuant to Nev. Rev. Stat. §598.0903, *et seq.*

58.     Adequate Representation:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

59.     The Prerequisites of Rule 23(b)(2) are Satisfied:  the prerequisites to

maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

60.    The prosecution of separate actions by members of the class would create a risk of establishing incompatible standards of conduct for the Defendant. For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide those same actions are not illegal. Individual actions may, as a practical matter, be dispositive of the interests of Class members, who would not be parties to those actions.

61.    Defendant's actions are generally applicable to the Class as a whole, and Plaintiffs seek, *inter alia*, equitable remedies with respect to the class as a whole.

62.    Defendant's systemic policy and practices as set forth in this Complaint make declaratory relief with respect to the class as a whole appropriate.

63.    <u>Predominance and Superiority</u>:  Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in

1    that class treatment will conserve the resources of the courts and the litigants,

2    and will promote consistency and efficiency of adjudication.

### FIRST CAUSE OF ACTION

### (Violation of the Nevada Deceptive Trade Practices Act

### Nev. Rev. Stat. § 598.0903, *et seq.*)

6    64.    Plaintiffs incorporate by reference the allegations contained in the

7    preceding paragraphs of this Complaint.

8    65.    Plaintiffs bring this cause of action on behalf of themselves and on

9    behalf of the members of the Nevada Sub-Class.

10    66.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev.

11    Rev. Stat. § 598.0903, *et seq.* prohibits deceptive trade practices. Nev. Rev. Stat.

12    § 598.0915 provides that a person engages in a "deceptive trade practice" if, in

13    the course of business or occupation, the person: "5. Knowingly makes a false

14    representation as to the characteristics, ingredients, uses, benefits, alterations or

15    quantities of goods or services for sale or lease or a false representation as to the

16    sponsorship, approval, status, affiliation or connection of a person therewith";

17    "7. Represents that goods or services for sale or lease are of a particular standard,

18    quality or grade, or that such goods are of a particular style or model, if he or she

19    knows or should know that they are of another standard, quality, grade, style or

20    model"; "9. Advertises goods or services with intent not to sell or lease them as

21    advertised"; or "15. Knowingly makes any other false representation in a

22    transaction."

23    67.    Defendant's actions as set forth below occurred in the conduct of

24    trade or commerce.

25    68.    By failing to disclose and concealing the defective nature of the 7-

26    speed DCT from Plaintiffs and prospective Class Members, Defendant violated

27    the Nevada DTPA, as it represented that the Class Vehicles and their

28    transmissions had characteristics and benefits that they do not have and

represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.

69. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

70. Defendant knew and continues to know that the Class Vehicles and their 7-speed DCTs suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

71. Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the 7-speed DCT and/or the associated repair costs because:

        (a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' 7-speed DCT;

        (b)   Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their 7-speed DCT had a dangerous safety defect until it manifested; and

        (c)   Defendant knew that Plaintiffs and Class Members could not reasonably have been expected to learn of or discover the safety defect.

72. In failing to disclose the defective nature of the 7-speed DCT, Defendant knowingly and intentionally concealed and continues to conceal material facts and breached its duty not to do so.

73. The facts Defendant concealed from or failed to disclose to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had they known that the Class Vehicles' 7-speed

1   DCTs were defective, Plaintiffs and Class Members would not have purchased or
2   leased the Class Vehicles or would have paid less for them.

3        74.    Plaintiffs and Class Members are reasonable consumers who do not
4   expect the transmissions installed in their vehicles to exhibit problems such as
5   failure to shift, stalling, and delayed or no acceleration.

6        75.    This is the reasonable and objective consumer expectation relating
7   to vehicle transmissions.

8        76.    Plaintiffs and the Class are entitled to equitable relief.

9   **SECOND CAUSE OF ACTION**

10  **(Breach of Common Law Implied Warranty of Merchantability and Breach**

11  **of Implied Warranty Pursuant to**

12  **Nev. Rev. Stat. §§ 104.2314 and 104A.2212)**

13       77.    Plaintiffs incorporate by reference the allegations contained in the
14  preceding paragraphs of this Complaint.

15       78.    Plaintiffs bring this cause of action against Defendant on behalf of
16  themselves and on behalf of the members of the Implied Warranty Sub-Class.

17       79.    Defendant was at all relevant times the manufacturer, distributor,
18  warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to
19  know of the specific use for which the Class Vehicles were purchased or leased.

20       80.    Defendant provided Plaintiffs and Class Members with an implied
21  warranty that the Class Vehicles and their components and parts are
22  merchantable and fit for the ordinary purposes for which they were sold.
23  However, the Class Vehicles are not fit for their ordinary purpose of providing
24  reasonably reliable and safe transportation because, inter alia, the Class Vehicles
25  and their 7-speed DCTs suffered from an inherent defect at the time of sale and
26  thereafter are not fit for their particular purpose of providing safe and reliable
27  transportation.

28       81.    Defendant impliedly warranted that the Class Vehicles were of

merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their 7-speed DCT that were manufactured, supplied, distributed, and/or sold by Hyundai were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their 7-speed DCT would be fit for their intended use while the Class Vehicles were being operated.

82.     Contrary to the applicable implied warranties, the Class Vehicles and their 7-speed DCT at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective design of their 7-speed DCT and its TCM.

83.     The alleged TCM Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

84.     As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the TCM Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' 7 speed DCT components, including the TCM, are substantially certain to fail before their expected useful life has run.

85.     Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Nevada Common Law Implied Warranties and Nevada Revised Statutes §§ 104.2314 and 104A.2212.

### THIRD CAUSE OF ACTION

**(Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2303 *et seq.*)**

86.     Plaintiffs incorporate by reference the allegations contained in the

1    preceding paragraphs of this Complaint.

2       87.    Plaintiffs bring this cause of action on behalf of themselves and on

3    behalf of the Nationwide Class, or, in the alternative, on behalf of the Nevada

4    Sub-Class, against Defendant.

5       88.    The Class Vehicles are a "consumer product" within the meaning of

6    the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

7       89.    Plaintiffs and Class Members are "consumers" within the meaning

8    of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

9       90.    Defendant is a "supplier" and "warrantor" within the meaning of the

10   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

11      91.    Hyundai impliedly warranted that the Class Vehicles were of

12   merchantable quality and fit for such use.  This implied warranty included,

13   among other things: (i) a warranty that the Class Vehicles and their 7-speed DCT

14   that were manufactured, supplied, distributed, and/or sold by Hyundai were safe

15   and reliable for providing transportation; and (ii) a warranty that the Class

16   Vehicles and their 7-speed DCT would be fit for their intended use while the

17   Class Vehicles were being operated.

18      92.    Contrary to the applicable implied warranties, the Class Vehicles

19   and their 7-speed DCT at the time of sale and thereafter were not fit for their

20   ordinary and intended purpose of providing Plaintiffs and Class Members with

21   reliable, durable, and safe transportation.  Instead, the Class Vehicles are

22   defective, including the defective design of their TCM.

23      93.    Defendant's breach of implied warranties has deprived Plaintiffs

24   and Class Members of the benefit of their bargain.

25      94.    The amount in controversy of Plaintiffs' individual claims meets or

26   exceeds the sum or value of $25,000.  In addition, the amount in controversy

27   meets or exceeds the sum or value of $50,000 (exclusive of interests and costs)

28   computed on the basis of all claims to be determined in this suit.

CLASS ACTION COMPLAINT

95.     Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the TCM Defect.

96.     As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiffs and Class Members sustained injuries and are entitled to relief as appropriate.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

97.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

98.     Plaintiffs and the Class have conferred benefits on the Defendant by purchasing Class Vehicles.

99.     Defendant has knowingly and willingly accepted these benefits from Plaintiffs and the Class.

100.    Under the circumstances, it is inequitable for Defendant to retain these benefits at the expense of Plaintiffs and the Class.

101.    Defendant has been unjustly enriched at the expense of and to the detriment of Plaintiffs and the Class by wrongfully collecting money to which Defendant, in equity, is not entitled.

102.    Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

103.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendant of the benefits conferred by Plaintiffs and the Class.

104.    Plaintiffs and the Class have no adequate remedy at law.

105.    Plaintiffs seek to obtain a pecuniary benefit for the Class in the form

1  of all reimbursement, restitution, and disgorgement from Defendant.  Plaintiffs'
2  counsel are entitled to recover their reasonable attorneys' fees and expenses as a
3  result of the conference of a pecuniary benefit on behalf of the Class and will
4  seek an award of such fees and expenses at the appropriate time.

**RELIEF REQUESTED**

6      106.   Plaintiffs, on behalf of themselves, and all others similarly situated,
7  request the Court to enter judgment against Defendant, as follows:

8           (a)    An order certifying the proposed Class and Sub-Classes,
9                  designating Plaintiffs as named representative of the Class,
10                 and designating the undersigned as Class Counsel;

11          (b)    A declaration that Defendant is financially responsible for
12                 notifying all Class Members about the defective nature of the
13                 7-speed DCT, including the need for periodic maintenance;

14          (c)    An order enjoining Defendant from further deceptive
15                 distribution, sales, and lease practices with respect to Class
16                 Vehicles; compelling Defendant to issue a voluntary recall for
17                 the Class Vehicles pursuant to.  49 U.S.C. § 30118(a);
18                 compelling Defendant to remove, repair, and/or replace the
19                 Class Vehicles' defective TCM with suitable alternative
20                 product(s) that do not contain the defects alleged herein;
21                 enjoining Defendant from selling the Class Vehicles with the
22                 misleading information; and/or compelling Defendant to
23                 reform its warranty, in a manner deemed to be appropriate by
24                 the Court, to cover the injury alleged and to notify all Class
25                 Members that such warranty has been reformed;

26          (d)    A declaration requiring Defendant to comply with the various
27                 provisions of the Nevada DTPA alleged herein and to make
28                 all the required disclosures;

CLASS ACTION COMPLAINT

1       (e)    Any and all remedies provided pursuant to the Nevada DTPA
2             and Nevada Implied Warranty of Merchantability;

3       (f)    Any and all remedies provided pursuant to the Magnuson-
4             Moss Warranty Act;

5       (g)    A declaration that Defendant must disgorge, for the benefit of
6             the Class, all or part of the ill-gotten profits it received from
7             the sale or lease of its Class Vehicles, or make full restitution
8             to Plaintiffs and Class Members;

9       (h)    An award of attorneys' fees and costs, as allowed by law;

10      (i)    An award of pre-judgment and post-judgment interest, as
11            provided by law;

12      (j)    Leave to amend the Complaint to conform to the evidence
13            produced at trial; and

14      (k)    Such other relief as may be appropriate under the
15            circumstances.

16                     **DEMAND FOR JURY TRIAL**

17     107.   Pursuant to Federal Rule of Civil Procedure 38(b) and Southern
18 District of California Local Rule 38.1, Plaintiffs demand a trial by jury of any
19 and all issues in this action so triable.

20 Dated:  November 22, 2016         Respectfully submitted,

21                          Capstone Law APC

22

23                By: /s/ Jordan L. Lurie
24                    Jordan L. Lurie
                      Tarek H. Zohdy
25                    Cody R. Padgett
                      Karen L. Wallace

26

27

28

1

2                                              MADDOX | ISAACSON | CISNEROS LLP

3

4                              By:___/s/ Norberto J. Cisneros_____
                                   Troy L. Isaacson, Esq.
5                                  Norberto J. Cisneros, Esq.
                                   Barbara McDonald, Esq.
6
                                   Attorneys for Plaintiffs Nicholas and
7                                  Shawna Wylie

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT