Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 556-4811
Facsimile:   (310) 943-0396

Troy L. Isaacson, Esq., (Cal. Bar No. 186834, NV Bar No. 6690)
Norberto J. Cisneros, Esq., (Cal. Bar No. 182001, NV Bar No. 8782)
Barbara M. McDonald, Esq., (Cal. Bar No. 281722, NV Bar No. 11651)
MADDOX | ISAACSON | CISNEROS LLP
11920 Southern Highlands Parkway, Suite 100
Las Vegas, Nevada 89141
Telephone:  (702) 366-1900
Facsimile:   (702) 366-1999

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS WYLIE, SHAWNA WYLIE (fka BROWN), TIMOTHY RYAN, and GREGORY PERGER individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, a California corporation,<br><br>Defendant. | Case No.: 8:16-CV-02102<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violation of Nevada Deceptive Trade Practices Act<br>(2)  Breach of Common Law Implied Warranty of Merchantability and Breach of Implied Warranty pursuant to Nev. Rev. Stat. §§104.2314 and 104A.2212<br>(3)  Breach of Implied Warranty pursuant to the Magnuson-Moss Warranty Act<br>(4)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(5)  Violation of California Consumer Legal Remedies Act<br>(6)  Violation of Unfair Competition Law<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.     Plaintiffs Nicholas Wylie, Shawna Wylie, Timothy Ryan, and Gregory Perger ("Plaintiffs") bring this action for themselves and on behalf of all persons in the United States who purchased or leased any Hyundai Tucson, Hyundai Veloster, Hyundai Sonata (Eco) and Hyundai Elantra (Eco) vehicle equipped with a 7-speed dry dual-clutch automatic transmission  (collectively, "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Hyundai Motor America, a California corporation ("Hyundai" or "Defendant").

2.     Hyundai premiered its 7-speed automatic transmission ("DCT") in October 2014. Designed to "provide an improvement in fuel consumption and CO2 emission compared to a conventional six-gear automated transmission, while acceleration performance increases,"  the DCT features two dry clutches that transfer engine power "independently into the odd and even gear train to always be ready to shift into the next gear."[1]  However, Plaintiffs are informed and believe that Hyundai's DCT has a defectively designed Transmission Control Module ("TCM") that causes, among other problems, failure to shift, stalling, delayed acceleration, or loss of power ("TCM Defect").

3.     The TCM is a small electronic component within the powertrain that processes data from various sensors throughout the engine in order to determine the optimal gear for shifting and fuel-economy.

4.     On information and belief, the TCM is defective because it misinterprets data from the vehicle's sensors, thus miscalculating both the appropriate gear and the correct shift timing. These miscalculations result in an

---

[1] Hyundai, *Hyundai to showcase new downsized turbocharged engines and seven-speed dual-clutch transmission in Paris*, Press Release (Oct. 2, 2014), https://www.hyundai.com/worldwide/en/about-hyundai/news-room/news/hyundai-to-showcase-new-downsized-turbocharged-engines-and-seven%2521speed-dual-clutch-transmission-in-paris-0000003499.

1    unresponsive accelerator pedal, jerking, shuttering, shaking, and stalling.

2        5.    In 2016, in an effort to address owner complaints regarding the

3    TCM Defect, Hyundai has issued several Technical Service Bulletin ("TSB")

4    and a couple of recalls, as detailed below.  However, neither has resolved the

5    TCM Defect.

6        6.    On information and belief, all the Class Vehicles are equipped with

7    the same or substantially similar DCT and have the same or substantially

8    identical TCMs with the same defect.

9        7.    The TCM Defect causes dangerous conditions, including failing to

10   shift, stalling, and delayed or unresponsive acceleration, especially from a stop.

11   These conditions severely affect the driver's ability to control the vehicle during

12   normal operation and prevent drivers from accelerating safely to maintain safe

13   speeds in traffic.  For example, the TCM Defect may make it difficult to

14   accelerate safely from traffic stops because Class Vehicles hesitate, fail to shift

15   gears, and stall when drivers depress the gas pedal to gain speed.[2]

16       8.    Since at least 2015, through consumer complaints and dealership

17

18       [2] *See*, for example, this 2016 Hyundai Veloster owner's complaint to the
     National Highway Traffic Safety Administration ("NHTSA"): (2016 Hyundai
19   Veloster, 10/12/2016) MOST IMPORTANTLY IS THE SAFETY
     **REGARDING THE 7 SPEED DUAL CLUTCH TRANSMISSION.** IT IS
20   INTERMITTENT, BUT I HAVE CAPTURED IT ON CAMERA THREE
     TIMES - ONCE PRIOR TO THE TRANSMISSION PARTS BEING
21   REPLACED, AND THEN THE ENTIRE TRANSMISSION. AND TWICE
     AFTER THE ENTIRE TRANSMISSION WAS REPLACED. **JUST LAST**
22   **FRIDAY, I COULDN'T DRIVE THE VEHICLE BECAUSE IT SEIZED**
     **TO SHIFT AND ACCELERATE PROPERLY FIVE TIMES IN A ROW,**
23   THE MOST IT HAS EVER HAPPENED. I HAD IT TOWED TO THE
     DEALERSHIP AND WAS PLACED BACK INTO A RENTAL. TODAY, THE
24   DEALERSHIP SAYS "THEY CAN'T FIND ANYTHING WRONG" (THIS
     HAS BEEN SAID OVER THE COURSE OF 5 MONTHS BECAUSE IT'S
25   INTERMITTENT) AND THEY'RE FORCING ME TO RETURN THE
     RENTAL - LEAVING ME WITH UNSAFE TRANSPORTATION YET
26   AGAIN. (Safercar.gov, *Search for Safety Problems* (Oct. 27, 2016), http://www-
     odi.nhtsa.dot.gov/owners/Search SafetyIssues)(emphasis added).
27

28

repair orders, among other internal sources, Defendant knew or should have known that the DCT in the Class Vehicles contained a design defect that diminishes the drivability of the Class Vehicles and creates safety hazards. For example, a 2016 Hyundai Tucson owner complained to the NHTSA on December 14, 2015:

> THE PROBLEM THAT I AM HAVING IS WHEN I START TO ACCELERATE GOING THROUGH THE GEARS 1,2,3 AND 4 THERE IS A HUGE, PAUSE/DELAY IN SHIFTING THROUGH THE GEARS. IN FACT THERE HAS BEEN MAY TIMES WHEN I START TO ACCELERATE THE GEARS PAUSES AND I HIT THE GAS AGAIN AND THE VEHICLE DOES NOT ACCELERATE AT ALL THE RPM'S GO UP SOMETIMES PAST 6 AND THE TRANSMISSION START BURNING. I EVEN GOT AN SAFETY DISPLAY MESSAGE THAT THE TRANSMISSION IS OVERHEATED AND TO PULL OVER FOR SAFETY UNTIL IT COOLS DOWN. NOTE I ONLY HAVE 5719 MILES AND MY 4TH TIME TAKING IT BACK TO THE DEALERSHIP FOR SERVICE. I AM DRIVING IN FEAR EVERYTHING BECAUSE THIS PROBLEM HAPPENS WHEN IT WANTS TO SOMETIMES THE VEHICLES DRIVES PERFECT THEN THE NEXT MINUTE I'M HAVING THE SAME ISSUE. THIS PROBLEM IS HAPPENING AT A STREET LIGHT, STOP SIGN, STOP AND GO TRAFFIC ON THE STREETS AND ON THE FREEWAY, WHEN I AM SLOWING DOWN TO MAKE A TURN THEN ACCELERATE AND IN THE MORNING, AFTERNOON AND AT NIGHT. I AM AFRAID WHEN I START TO ACCELERATE THEN THE NEXT SECOND I CANNOT ACCELERATE THAT THE CAR BEHIND ME OR IF I AM CHANGES LANES AND STOP ACCELERATING THAN ANOTHER VEHICLE WILL CRASH INTO ME. I DON'T KNOW IF THE PROBLEM IS THE ACTUAL TRANSMISSION AND OR SOFTWARE RELATED, BUT IT IS UNSAFE AND I DO NOT WANT TO DRIVE THIS VEHICLE ANYMORE. THIS PROBLEM IS OFF AND AND ON, BUT WHEN IT DOES HAPPEN IT DOES NOT STOP THE PROBLEM UNTIL I TURN THE CAR OFF. SOMETIMES IT CONTINUES TO HAPPEN OR NOT. FOR EXAMPLE LAST TIME I HAD THE PROBLEM WAS ON SAT. NIGHT WHILE I WAS OUT WITH MY FAMILY IN THE CAR. THE TRANSMISSION WAS OVERHEATING, IT COOLED OFF AND ABOUT AN HOUR LATER I DRIVE IT HOME AND IT WAS OKAY. I DROVE IT TO THE DEALERSHIP THIS MORNING WITH NO ISSUES. I AM IN SALES AND DRIVE A LOT AND CANNOT AFFORD THESE ISSUES FOR SAFETY REASONS AND FOR WORK.[3]

9.      On information and belief, Defendant's corporate officers, directors,

---

[3] Safercar.gov, *Search for Safety Problems* (Oct. 27, 2016), http://www-odi.nhtsa.dot.gov/owners/Search SafetyIssues)

or managers knew about the TCM Defect but failed to disclose it to Plaintiffs and Class Members at the time of sale, lease, repair, and thereafter.

10.     Because Hyundai will not notify Class Members that the DCT is defective, Plaintiffs and Class Members, as well as members of the general public, remain subject to dangerous transmission malfunctions that can occur without warning.

11.     The alleged TCM Defect was inherent and present in each Class Vehicle at the time of sale.

12.     Hyundai knew about and concealed the TCM Defect in every Class Vehicle, as well as its attendant hazardous conditions, from Plaintiffs and Class Members at the time of sale, lease, repair, and thereafter.  In fact, instead of repairing the defects in the DCT, Hyundai either refused to acknowledge their existence or performed repairs that simply masked them.

13.     Hyundai has benefitted from the TCM Defect at the expense of Plaintiffs and the Class.

14.     If they had known about these defects at the time of sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

15.     As a result of the TCM Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful lives have run.

## THE PARTIES

### Plaintiffs Nicholas and Shawna Wylie

16.     Plaintiffs Nicholas and Shawna Wylie ("the Wylie Plaintiffs") are Nevada citizens who reside in Boulder City, Nevada.

17.     On or around October 31, 2015, the Wylie Plaintiffs purchased a new 2016 Hyundai Veloster Turbo, equipped with a 7-speed DCT, from

Henderson Hyundai Superstore, an authorized Hyundai dealer in Clark County.

18.    The Wylie Plaintiffs' Class Vehicle has and continues to exhibit the TCM Defect described herein.

19.    Specifically, on or around July 6, 2016, with approximately 15,180 miles on the odometer, the Wylie Plaintiffs brought their vehicle to Henderson Hyundai complaining that the vehicle's "TRANS WENT TO 7000RPMS IN SPORT MODE ON HIGHWAY, FEELS LIKE SLIPPING." A Hyundai service technician inspected the vehicle but could not confirm any transmission-related faults, and no repairs were performed. The Wylie Plaintiffs continued to experience symptoms of the TCM Defect, including hesitating and jerking on acceleration.

20.    Then, on or around August 8, 2016, with approximately 15,724 miles on the odometer, the Wylie Plaintiffs brought their vehicle back to Henderson Hyundai because the transmission was jerking and surging on acceleration or the RPMs would spike with no acceleration. The service technician inspected the vehicle but failed to make any repairs.

21.    Further, on or around August 17, 2016, with approximately 15,946 miles on the odometer, the Wylie Plaintiffs brought their vehicle back to Henderson Hyundai because the transmission was still surging and shuddering in stop and go traffic situations, as well as rolling back on inclines when they tried to accelerate from a stop. During this visit, the gear actuator assembly, the shift lever control assembly, and the TCM were replaced on the Wylie Plaintiffs' vehicle.

22.    The Wylie Plaintiffs continued to experience issues with their Hyundai Veloster such that on or around October 7, 2016, with approximately 17,802 miles on the odometer, they brought their vehicle back to Henderson Hyundai because it failed to accelerate from stops when they pressed the accelerator pedal or hesitated to accelerate before "jumping into gear and start

speeding." The service technician inspected the vehicle but again could not confirm any vehicle faults, and no repairs were performed.

23.     Despite Hyundai technicians inspecting their vehicle for symptoms relating to the TCM Defect for a total of approximately 64 days, the Wylie Plaintiffs continue to experience those symptoms, including failure to shift, stalling, and delayed or no acceleration.

24.     The Wylie Plaintiffs purchased their vehicle primarily for personal, family, or household use.  Hyundai manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

25.     Passenger safety and reliability were factors in the Wylie Plaintiffs' decision to purchase their vehicle.  Prior to purchasing the Veloster, the Wylie Plaintiffs spent time researching the vehicle on Hyundai's corporate website.  Based on their research, they believed that the Hyundai Veloster would be a safe and reliable vehicle.  The Wylie Plaintiffs also test drove the Veloster with a dealership salesperson prior to purchase.

26.     Had Hyundai disclosed its knowledge of the TCM Defect before they purchased their vehicle, the Wylie Plaintiffs would have seen or heard such disclosures and been aware of them.  Indeed, Hyundai's omissions were material to them.  Like all members of the Class, the Wylie Plaintiffs would not have purchased their Class Vehicle, or would have paid less for it, had they known of the TCM Defect.

27.     At all times, the Wylie Plaintiffs, like all Class Members, have driven their vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Timothy Ryan**

28.     Plaintiff Timothy Ryan is a Nevada citizen who resides in Henderson, Nevada.

29.     On or around September 10, 2016, Plaintiff Ryan purchased a new

2016 Hyundai Tucson SUV, equipped with a 7-speed DCT, from Henderson Hyundai Superstore, an authorized Hyundai dealer in Clark County.

30.     Plaintiff Ryan's Class Vehicle has and continues to exhibit the TCM Defect described herein.

31.     Specifically, within a week of purchase, Plaintiff Ryan began experiencing hesitation when he tried to accelerate. He returned to Henderson Hyundai immediately to complain and again in or around November 2016 but was told each time that there was nothing wrong with the car.

32.     On or around December 21 2016, with approximately 3,093 miles on the odometer, Plaintiff Ryan brought his vehicle back to Henderson Hyundai for a DCT update pursuant to TSB 16-01-057.  The service technician performed the vehicles' first "lube oil filter change" but failed to make any repairs.

33.     Then, on or around May 4, 2017, with approximately 6,984 miles on the odometer, Plaintiff Ryan brought his vehicle to Henderson Hyundai again complaining that the vehicle's "transmission is slipping and hesitating."  A service technician inspected the vehicle but could not confirm any transmission-related faults, and confirmed that the "vehicle is running as designed." No repairs were performed, and Plaintiff Ryan continued to experience symptoms of the TCM Defect, including hesitating on acceleration.

34.     Plaintiff Ryan purchased his vehicle primarily for personal, family, or household use.  Hyundai manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

35.     Passenger safety and reliability were factors in Plaintiff Ryan's decision to purchase his vehicle.  Prior to purchasing the Tucson, he spent time researching the vehicle, including visiting Hyundai's corporate website.  Based on his research, Plaintiff Ryan believed that the Hyundai Tucson would be a safe and reliable vehicle.  Plaintiff Ryan also test drove the Tucson with a dealership salesperson prior to purchase.

36.    Had Hyundai disclosed its knowledge of the TCM Defect before he purchased his vehicle, Plaintiff Ryan would have seen or heard such disclosures and been aware of them.  Indeed, Hyundai's omissions were material to him. Like all members of the Class, Plaintiff Ryan would not have purchased his Class Vehicle, or would have paid less for it, had he known of the TCM Defect.

37.    At all times, Plaintiff Ryan, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Plaintiff Gregory Perger**

38.    Plaintiff Gregory Perger is a California citizen who resides in Coarsegold, California.

39.    On or around October 5, 2016, Plaintiff Perger purchased a new 2017 Hyundai Tucson, equipped with a 7-speed DCT, from an authorized Hyundai dealer in Fresno County, California.

40.    Plaintiff Perger's Class Vehicle has exhibited the TCM Defect described herein.

41.    Specifically, shortly after purchase, Plaintiff Perger's vehicle began to turn off intermittently, requiring him to reset it by pulling over to the side of the road and turning the car off and back on. He also began experiencing delayed acceleration, sometimes including an inability to use the SelectShift function. He returned several times to Lithia Hyundai of Fresno to complain.

42.    On or around December 2, 2016, with approximately 4,600 miles on the odometer, Plaintiff Perger brought his vehicle back to Lithia Hyundai, complaining of a delay in shifting and loss of power.  No repairs were made at that time.

43.    On or around December 6, 2016, Plaintiff Perger brought his vehicle back to Lithia Hyundai, complaining again of a delay in shifting and loss of power. The service technician performed a vehicle inspection but failed to make any repairs.

44.     On or around May 3, 2017, Plaintiff Perger was driving through Madera, California, on his way home from work. He was travelling northbound on Highway 41 in heavy traffic and needed make a left turn onto Avenue 15 to enter a gas station. When he stepped on the gas pedal to accelerate, the vehicle had barely enough power to initiate the turn; while he was crossing the southbound lane with traffic approaching at approximately 65 mph, the transmission simply stuck in gear, making acceleration slow to non-responsive, such that the vehicle was barely crawling.  It took him at least 10 seconds to complete the turn and actually exit the highway.  He entered the gas station premises and turned off the ignition. After it was re-set, the transmission appeared to operate normally.  He immediately brought his vehicle back to Lithia Hyundai to describe the near-fatal incident and demand that his transmission be repaired.  The service manager recorded Plaintiff Perger's complaint as merely an intermittent inability to shift, then confirmed both the failure to shift into second gear and the failure to engage manual mode through the SelectShift function.  The service technician was advised by Hyundai's "tech line" to replace the shift actuator, which repair was made.

45.     On or around May 15, 2017, Plaintiff Perger brought his vehicle back to Lithia Hyundai, complaining that the transmission was not shifting properly. The service technician kept the vehicle overnight for an extended test drive but was not able to verify Plaintiff Perger's concerns.

46.     On or around May 19, 2017, with approximately 14,401 miles on the odometer, Plaintiff Perger brought his vehicle back to Lithia Hyundai, complaining that the transmission was not shifting properly, would lose power before accelerating, and would not go into manual mode through the SelectShift function. The service technician verified that Plaintiff Perger's vehicle was not operating properly because the transmission and shifter lever assembly had malfunctioned. The vehicle remained at the dealership for two weeks, while the

transmission and shifter lever assembly were replaced.

47.     Plaintiff Perger purchased his vehicle primarily for personal, family, or household use.  Hyundai manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

48.     Passenger safety and reliability were factors in Plaintiff Perger's decision to purchase his vehicle.  Prior to purchasing the Tucson, he spent time researching the vehicle, including Hyundai's promotional materials and window sticker.  Based on his research, Plaintiff Perger believed that the Hyundai Tucson would be a safe and reliable vehicle.  Plaintiff Perger also test drove the Tucson with a dealership salesperson prior to purchase.

49.     Had Hyundai disclosed its knowledge of the TCM Defect before he purchased his vehicle, Plaintiff Perger would have seen or heard such disclosures and been aware of them.  Indeed, Hyundai's omissions were material to him. Like all members of the Class, Plaintiff Perger would not have purchased his Class Vehicle, or would have paid less for it, had he known of the TCM Defect.

50.     At all times, Plaintiff Perger, like all Class Members, has driven his vehicle in a manner both foreseeable and in which it was intended to be used.

**Defendant**

51.     Defendant Hyundai Motor America is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California.  Hyundai Motor America's Corporate Headquarters are located at 10550 Talbert Avenue, Fountain Valley, California 92708.  Hyundai Motor America designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide and in California.  Hyundai Motor America is the warrantor and distributor of the Class Vehicles in the United States.

52.     At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing,

and selling automobiles and motor vehicle components in Orange County, in the Central District of California, and throughout the United States of America.

## JURISDICTION

53.     This is a class action.

54.     Plaintiffs Wylie and Ryan and other members of the Proposed Class are citizens of states different from the home state of Defendant.

55.     On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

56.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

57.     Hyundai, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate.  Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

58.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a). Plaintiff Perger's Declaration of Venue is attached as Exhibit 1.

## FACTUAL ALLEGATIONS

59.     Hyundai began development of its new DCT in 2011: "The design phase [for the DCT] was started in early 2011, and the mass production started finally in September 2014 at the Hyundai-Dymos plant located in South Korea."[4] On information and belief, Hyundai learned of the TCM defect during this period.

60.     As discussed above, Hyundai premiered the DCT in October 2014 to "provide an improvement in fuel consumption and $CO_2$ emission compared to

_____

[4] Chang-Yeon Cho, et al., *More Efficiency with the Dry Seven-speed Dual-clutch Transmission by Hyundai*, ATZ Worldwide 118:6, 38 (June 2016), https://www.atz-magazine.com/download/More%20Efficiency%20with%20the%20Dry%20Seven-speed%20Dual-clutch%20Transmission%20by%20Hyundai.pdf.

a conventional six-gear automated transmission, while acceleration performance increases."[5]   The 7-speed transmission uses two dry clutches with an actuator for each to transfer engine power independently into the odd and even gears to minimize "torque interruption."[6]  However, Plaintiffs allege on information and belief that Hyundai's DCT contains a TCM defect  that causes transmission malfunctions, including failure to shift, stalling, and delayed or no acceleration.

61.    On information and belief, the TCM is defective because it misinterprets data from the vehicle's sensors, thus miscalculating the appropriate gear and shift timing and causing an unresponsive accelerator pedal, delayed or no acceleration, and stalling.

62.    The alleged TCM Defect is inherent in all Class Vehicles and is the same for all Class Vehicles.

63.    Since at least December 2015, Hyundai was aware of the TCM Defect based on consumer complaints made both online and to its authorized dealers and repair facilities.  Hyundai, however, failed to disclose this known defect to consumers.  As a result of this omission, Plaintiffs and Class Members have been damaged.

**The TCM Defect Poses an Unreasonable Safety Hazard**

64.    The TCM Defect is dangerous, its symptoms manifesting as failing to shift, stalling, and hesitating or failing to accelerate.  These conditions severely affect the driver's ability to control the vehicle's acceleration during normal driving conditions and prevent drivers from maintaining the appropriate and expected speed in traffic. For example, these conditions may prevent drivers

---

[5] Hyundai, *Hyundai to showcase new downsized turbocharged engines and seven-speed dual-clutch transmission in Paris*, Press Release (Oct. 2, 2014), https://www.hyundai.com/worldwide/en/about-hyundai/news-room/news/hyundai-to-showcase-new-downsized-turbocharged-engines-and-seven%2521speed-dual-clutch-transmission-in-paris-0000003499.

[6] *Id.*

from accelerating safely from stops because the Class Vehicles hesitate, fail to shift gears, and stall when drivers depress the accelerator pedal.

65.   Many purchasers and lessees of the Class Vehicles have experienced problems with the DCT.  Complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA") and elsewhere online demonstrate that the defect is widespread and dangerous and that it manifests without warning.  The complaints also indicate Defendant's awareness of the problems with the transmission and how potentially dangerous the defective design is for consumers.  The following are some safety complaints relating to the TCM Defect (spelling and grammar mistakes remain as found in the original) (Safercar.gov, *Search for Safety Issues* (October 28, 2016), http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues/):

**2016 Hyundai Veloster**

   a. 2/10/2016 THIS BRAND NEW CAR BREAKS DOWN ON MY TEENAGER. IT HAS DONE SO ON ME AS WELL. HAD IT INTO THE DEALER AND AUTO SHOPS AND THEY CNT FIND ANYTHING WRONG. THIS CAR LEA VES MY KID STRANDED IN THE MIDDLE OF NOWHERE. NOT SAFE. GOES INTO LIMP MODE AND STALLS

   b. 9/3/2016 ACCELERATING BY ITSELF, LUNGING IN STOP/GO TRAFFIC.MOTOR REVS INTO PASSING GEAR ALL THE WAY TO 6500 RPM. BUT STAYS IN THE CURRENT SPEED, AND SOMETIMES WILL HOLD AT CERTAIN RPM EVEN IF NOT ON GAS, VERY LAGGY IN REV I FEEL I'M DRIVING OLDER CAR WITH MESSED UP TRANSMISSION

   c. 10/2/2016 CAR SOMETIMES ACCELERATES BY ITSELF EVEN WHEN OFF THE GAS AND ON THE BRAKES. LUNGES IN STOP AND GO TRAFFIC. PASSING GEAR SOMETIMES REVS UP TO 6500RPM'S BUT STAYS IN THE CURRENT SPEED. SOMETIMES CAR STAYS AT A CERTAIN RPM EVEN IF NOT ON THE GAS AND WONT SLOW DOWN. BAD LAG AND TERRIBLE DEAD SPOTS IN ACCELERATION. I FEEL LIKE TRANSMISSION IS NOT COMMUNICATING WELL WITH CONTROL MODULE AND GAS PEDAL POSITION SENSOR IS WAY OFF THE MARK. CAR HAS PUT ME IN LIFE THREATENING SITUATIONS BUT HYUNDAI SERVICE SAYS THEY CAN'T REPRODUCE THE PROBLEM BUT ONLY DROVE IT 7 MILES. I BOUGHT CAR BRAND NEW AND JUST TURNED 5800 MILES BUT HAS BEEN BACK FOR THIS PROBLEM 4 TIMES NOW.

d.  10/12/2016 WHEN THE CAR IS STOPPED AT A LIGHT OR IN TRAFFIC WITH THE FOOT ON THE BREAK WHEN YOU RELEASE YOUR FOOT OFF THE BREAK THE CAR LURCHES FORWARD - MUST BE SOMETHING WITH THE NEW DUAL CLUTCH 7-SPEED TRANSMISSION. PLEASE HYUNDAI FIX THIS BEFORE SOMEONE GETS HURT OR KILLED

e.  10/12/2016 RECENTLY THERE WAS A RECALL ISSUES FOR THE 2016 TUCSON DCT. MY 2016 VELOSTER TURBO DCT HAS HAD THE IDENTICAL ISSUES, WHICH BEGAN JUST A FEW MONTHS AFTER PURCHASING THE CAR BRAND NEW. IT'S BEEN IN AND OUT OF THE DEALERSHIP FOR 5 MONTHS NOW, TOTALING OVER 70 DAYS. THERE HAVE BEEN GAS ISSUES - GAS FUMES SMELL OUTSIDE AND INSIDE VEHICLE, LOSING GAS ABNORMALLY FAST WHEN DRIVING, GAS TANK NOT FILLING TO FULL. THE AC RATTLES INTERMITTENTLY AND HAS BLOWN HEAT OFF AND ON. MOST IMPORTANTLY IS THE SAFETY REGARDING THE 7 SPEED DUAL CLUTCH TRANSMISSION. IT IS INTERMITTENT, BUT I HAVE CAPTURED IT ON CAMERA THREE TIMES - ONCE PRIOR TO THE TRANSMISSION PARTS BEING REPLACED, AND THEN THE ENTIRE TRANSMISSION. AND TWICE AFTER THE ENTIRE TRANSMISSION WAS REPLACED. JUST LAST FRIDAY, I COULDN'T DRIVE THE VEHICLE BECAUSE IT SEIZED TO SHIFT AND ACCELERATE PROPERLY FIVE TIMES IN A ROW, THE MOST IT HAS EVER HAPPENED. I HAD IT TOWED TO THE DEALERSHIP AND WAS PLACED BACK INTO A RENTAL. TODAY, THE DEALERSHIP SAYS "THEY CAN'T FIND ANYTHING WRONG" (THIS HAS BEEN SAID OVER THE COURSE OF 5 MONTHS BECAUSE IT'S INTERMITTENT) AND THEY'RE FORCING ME TO RETURN THE RENTAL - LEAVING ME WITH UNSAFE TRANSPORTATION YET AGAIN. I'VE RISKED MY LIFE FOR MONTHS TRYING TO CAPTURE VIDEO PROOF, AND I HAVE SENT THE VIDEO PROOF TO HYUNDAI - YET THEY ARE STILL MAKING MY RETURN THE RENTAL AND ARE NOT FIXING THE VEHICLE, NOR DO THEY HAVE A FIX FOR IT (ALREADY REPLACED THE ENTIRE TRANSMISSION AND COMPUTER!!). THIS IS A VIDEO I CREATED AND UPLOADED TO YOUTUBE, SUMMARIZING SOME OF WHAT'S GONE ON AND THE VIDEO PROOF I HAVE. HTTPS://WWW.YOUTUBE.COM/WATCH?V=1Y3ECBR07EM I HAVE OPENED A CASE WITH NEVADA CONSUMER AFFAIRS WHO HAS ALREADY REVIEWED MY CASE AND TRIED NEGOTIATING WITH HYUNDAI. THEY HAVE INSTRUCTED ME TO OPEN A CASE WITH NHTSA AND THE DMV.

**2016 Hyundai Tucson**

f.  Hyundai-Forums.com

1) "Overcoming turbo lag?" Thread[7]

    i. 8/28/15 Hi all, I mentioned in another thread that I experienced acceleration lag at times when driving the Tucson's 1.6L turbo engine. Now that I have more experience with it, I'm convinced this is turbo lag, something I'm learning to get used to since this is my first time using a turbocharged engine. It's definitely most noticeable at a dead stop. I thought there was no lag then, but since experimenting with the acceleration, it's definitely noticeable when I punch the gas hard off the line. There seems to be some trick though to getting more smoother acceleration from a dead stop that I'm trying to figure out. If I FLOOR it, the car has to think about it for a few seconds before it decides to go. But if I press the gas lightly and then press down tepidly, it's more responsive. I think there's a trick to spooling it at a certain RPM before punching the gas, because this approach has been hit or miss for me. I haven't been watching the RPMs but there does seem to be a matter of practicing this until I get the timing right, revving it up at the right RPM before I really hit the gas. I think it's more noticeable for me because I'm at a higher elevation in very warm weather. As the weather gets colder I suspect the lag will be less noticeable. In the meantime I'm trying to adapt how I accelerate to see if I can at least minimize the lag. If anyone can offer suggestions on how to adjust my driving here to help mitigate the lag, let me know.

    ii. 8/29/15 …Giving it light throttle like your doing will give the turbo a head start for the heavy throttle but from a dead stop there is not much you can do with this engine to get instant boost, aside from maybe holding in the brake and revving the engine for a second prior to flooring it.

    iii. 8/29/2015 They did tell me there was a break-in period for the engine that will smooth out acceleration, hopefully by my first oil change I'll start noticing that myself too.

    iv. 9/2/2015 I have test driven 3 of the 2016 Tucson Limited versions and 2 of the 3 had serious acceleration/turbo lag. It was enough lag that causes me concern in regard to purchasing this vehicle…

2) "Slow/rough shifting into reverse" Thread[8]

---

[7] http://www.hyundai-forums.com/2016-tucson-ix35-models/405994-overcoming-turbo-lag.html (last visited Nov. 17, 2016).

[8] http://www.hyundai-forums.com/2016-tucson-ix35-models/418434-slow-rough-shifting-into-reverse.html (last visited Nov. 17, 2016).

CLASS ACTION COMPLAINT

i. 10/9/2015 Hi, Has anybody else experienced what seems like a difficult time shifting into reverse? It seems to me that when I try to shift into reverse, it takes the transmission a bit of time (1-2 seconds) to decide that it is willing to go backwards and even once it does get going, it seems rough. The car only has about 600 miles on it…

g. YouTube Video, "2016 Hyundai Tuscon [sic] DCT Transmission Problem" Comments[9]

1) 2/11/16 …At random times, usually from a stop, but sometimes when pulling into traffic, the transmission will "freak out". When this happens, the engine will rev to high RPMs, usually around 5,000, but the transmission will not send much power, if any, to the wheels. It behaves as if it is either in neutral, has the clutch mostly disengaged, or is attempting to start in a higher gear. This has already caused me to put the vehicle into the shop twice. I consider this to be a very hazardous defect. As I mentioned, this happened once after I pulled out of a parking lot into the normal flow of traffic. The vehicle became essentially disabled, and I had to put my hazard flashers on, and hope that I did not get hit from behind.

2) 5 months ago (approx. 6/2016) My 2016 Tucson does the same exact thing. I actually used your video to show them when they told me it was normal and not to worry. Mine likes to do it while trying to go in reverse. Revs up to 5000-6000 rpms and doesn't move an inch. I'm worried it will catch and I will fly out of my parking spot. Anyway, Hyundai reset my transmission computer and said that everything should be fine now that it is back to factory settings. The problems started at about 4500 miles on the car. Guess we will see.

3) 3 months ago (approx.. 8/2016) Same thing happened to me on July 22nd. The dealership replaced a double clutch actuator assy and a actuator assy-clutch. It ran great for three weeks and just happened again. I have a case open and I'm taking it back to the dealership. Hyundai is aware of the issue, but I'm not sure if they know what the fix is…4 months ago (approx. 7/2016) This was happening to our new Hyundai Tucson. We took the car to the dealer and refused to take the car home when they said it was fine... So we requested that they have a tech drive it home every night for a week. He was able to confirm that there was a problem. We then called Hyundai and filed a "lemon law claim" all while the dealership was "trying" to fix. They brought a Hyundai engineer to the dealership and he confirmed that there was no way to fix and now Hyundai is buying back our car including sales tax…

4) 4 months ago (approx. 7/2016) I have the same problem with my Tucson 2016, AWD 1.6 Limited. Thanks for the video as I

---

[9] My Broken Hyundai, *2016 Hyundai Tuscon DCT Transmission Problem*, YouTube (Feb. 11, 2016), https://www.youtube.com/watch?v=TCVtr_zcyrs.

didn't have any evidence of this until now. My car is currently at the dealership and like you said, they can't find anything wrong with it, can't recreate the problem. About a week ago I stopped at the traffic light on a red and couldn't move from that spot when the light turned green. The car was in a Drive mode and was revving like on a racing track, but wasn't moving. I had a long line of cars behind me and it was not just embarrassing, but really scary. My 5 year old son asked: "mama, did you forget to put the gas in?" I had to put the car in a Parking mode, then back into Driving and pushed the gas again, but it still wasn't going anywhere. Then I put it back in Parking, turned it off completely, started it again and pushed the gas, hoping that full restart would fix the issue. There was no change in my car's behavior even after the restart. I kept on pumping the gas pedal and after 30-40 seconds, something happened and my car finally started moving. It slooooooowly rolled over the intersection on already yellow light but it wasn't going any faster than 5 mi/hr no matter what I tried. Then I pulled into the parking lot and turned my car off again. After this restart it was acting normally again as nothing had happened, so I was able to get to work and back. When I dropped my car at the dealership at the end of the week, they weren't able to find any issues besides just saying that Tucsons are known for "slow gear switching issues" like the teeth not griping fast enough to switch to the next level or something like that. This is not slow switching, this is not switching at all!

**Veloster Turbo Forum Discussion,** Veloster.org, (last visited October 28, 2016, http://www.veloster.org/).

h. "Turbo lag on '16 vt" Thread

1) Posted on 5/24/2016 by KJPitt: So I've notice a really bad turbo lag in my '16 vt auto dct. When the light turns green and I proceed as normal and I can feel it pull and then all the sudden it like hesitates and pulls again, jerking and all. The lag is strong in this car and even my gf notice it too. Is there something I can do to help with this massive turbo lag. It's gotten really annoying. Thanks in advance yall.

2) Posted on 5/24/2016 by TooGqForYou: (WITH TRACTION CONTROL OFF) i can concur to this. its like hesitant, very hard to explain. almost jumpy at times. the dct does take its time to switch the gears, you can actually hear them switch sometimes. I usually gradually step on it to get to WOT. but in those gradual stages, its like a gnar pull then norm then gnar pull again all in one pull if that makes any sense lol. is that the turbo?

3) Posted on 6/12/2016 by ken oath: We bought a brand new vt the first thing I noticed was the rough acceleration took it back to the dealers, no one new looked up this web site and found the answer we bought the car for 5 yrs warranty so I'm reluctant to do after market mods at 100% throttle it seems to be ok so we drive it easy or floor it if a K&N filter helps and won't stuff the warranty I might go for something like that

i. "Turbo lagging?" Thread

1) Posted on 4/27/2016 by winozzle: I have a 2016 VT manual with all the upgrades. I bought her brand new January 21 and have just under 2500 miles on her. From day one, it seems that the turbo lags when I accelerate in any gear. Now, I realize this isn't exactly a speed machine, but I wouldn't expect a new car to feel like it's chugging when I press the gas pedal. I've not had a chance to have the dealer check her out...my boyfriend says he feels the hesitation, too. Please also note that I traded in a '14 VT (manual) with about 15K miles that did not hesitate and seemed a lot more peppy. From the small bit of interweb searching I've done, some say it's a firmware upgrade issue, or perhaps and intercooler issue? PS: I've never done any mod's to a car so be gentle. I'd much prefer to have the dealership do their thing before I do anything on my own.

66.     The TCM Defect poses an unreasonable safety risk for Class Members, as well as the drivers, passengers, and pedestrians sharing the road with Class Vehicles.  A driver's ability to accelerate and merge into traffic as necessary are critical to a vehicle's safe operation.  A defect that prevents such safe operation poses a safety hazard not only to the driver, but also to the general public, and clearly increases the risk of accidents.

**Hyundai Has Exclusive Knowledge of the TCM Defect**

67.     Hyundai has had superior and exclusive knowledge of the TCM Defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

68.     Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased their Class Vehicles, and since at least 2015, Hyundai knew about the TCM Defect in the DCT through sources not available to consumers, including pre-release testing data, early consumer complaints about the TCM Defect to Hyundai and its authorized dealers, testing conducted in response to those complaints, high failure rates of the DCT in Class Vehicles, replacement part sales data, and other aggregate data from Hyundai dealers.

69.     In or around August 2016, Hyundai issued service bulletin #5NP-

X7J3D-10 for certain Hyundai Tucson vehicles equipped with the DCT informing its dealers that the "transmission clutch application logic can result in a delayed engagement when accelerating from a stop…[and] the inability to move the vehicle in traffic may increase the risk of a crash."  Hyundai did not provide any details regarding the remedies available at that time.

70.     On or around September 2, 2016, Hyundai released service bulletin 5NP-S9D9P-10, providing its authorized dealers and service technicians with "information on components, attributes, and precautions of the 7-speed dry-type dual clutch transmission (DCT)" in all applicable vehicles, including the Class Vehicles. No further details regarding the information made available to dealers appears to have been provided by Hyundai to NHTSA.

71.     Then, on or around September 6, 2016, Hyundai initiated Recall Campaign 149, entitled "2016 Tucson Dual Clutch Transmission Reprograming." The recall affected certain 2016 Hyundai Tucson vehicles equipped with the DCT for a faulty "transmission clutch application logic [that] can result in a delayed engagement when accelerating from a stop" or fail to accelerate at all "if the accelerator pedal is repeatedly cycled" in specific conditions. TSB 16-01-038, launched the same day, described the procedure to reprogram the TCM in the affected vehicles.  However, the recall and software update were limited to these specific vehicles, despite owners complaining of similar issues in other Hyundai vehicles equipped with the same DCT.

72.     Furthermore, the TSBs were ineffectual.  After their release, Class Vehicle owners, including Tucson owners who had the recall performed, continued to experience and complain about the TCM Defect.

73.     The existence of the TCM Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle with the DCT.  Had they known that the Class Vehicles were equipped with a defective DCT, Plaintiffs and other Class Members would have paid less for the

1   Class Vehicles or would not have purchased or leased them at all.

2       74.   Reasonable consumers, like Plaintiffs, expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects.  Plaintiffs and Class Members further reasonably expect that Hyundai will not sell or lease vehicles with known safety defects, such as the TCM Defect, and will disclose any such defects to consumers when it learns of them.  They did not expect Hyundai to fail to disclose the TCM Defect to them and to continually deny its existence.

3       75.   Despite its knowledge of the TCM Defect, Hyundai continues to manufacture, market, distribute, and sell defective vehicles to otherwise unsuspecting purchasers.

**Hyundai Has Actively Concealed the TCM Defect**

       76.   While it has been fully aware of the TCM Defect in the Class Vehicles, Hyundai actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease, or repair and thereafter.  Specifically, Hyundai failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

     a.  any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the DCT;

     b.  that the Class Vehicles, including their DCT, were not in good in working order, were defective, and were not fit for their intended purpose; and

     c.  that the Class Vehicles and their DCT were defective, despite the fact that Hyundai learned of such defects as early as 2015 through failure rates, customer complaints, and other internal sources.

       77.   When consumers present the Class Vehicles to an authorized Hyundai dealer for repair of the DCT, rather than repair the problem under

1   warranty, Hyundai dealers either inform consumers that their vehicles are

2   functioning properly or conduct repairs that merely mask the defect.

3                    **CLASS ACTION ALLEGATIONS**

4          78.    Plaintiffs bring this lawsuit as a class action on behalf of themselves

5   and all others similarly situated as members of the proposed Class pursuant to

6   Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). This action

7   satisfies the numerosity, commonality, typicality, adequacy, predominance, and

8   superiority requirements of those provisions.

9          79.    The Class and Sub-Class are defined as:

10   **Nationwide Class**:   All individuals in the United States who
     purchased or leased any Hyundai vehicle equipped with a DCT (the
11   "Nationwide Class" or "Class").

12   **Nevada Sub-Class**:   All members of the Nationwide Class who
     reside in the State of Nevada.

13   **Nevada Implied Warranty Sub-Class**:   All members of the
     Nationwide Class who purchased or leased their vehicles in the State
14   of Nevada.

15   **California Sub Class**: All residents of the State of California who
     purchased or leased any Hyundai vehicle equipped with a DCT.
16
     **CLRA Sub-Class**: All members of the California Sub-Class who are
17   "consumers" within the meaning of California Civil Code § 1761(d).

18   **California Implied Warranty Sub-Class**: All members of the
     Nationwide Class who purchased or leased their vehicles in the State
19   of California.

20
21         80.    Excluded from the Class and Sub-Classes are:  (1) Defendant, any

22   entity or division in which Defendant has a controlling interest, and their legal

23   representatives, officers, directors, assigns, and successors; (2) the Judge to

24   whom this case is assigned and the Judge's staff; (3) any Judge sitting in the

25   presiding state and/or federal court system who may hear an appeal of any

26   judgment entered; and (4) those persons who have suffered personal injuries as a

27   result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class

28   and Sub-Class definitions if discovery and further investigation reveal that the

Class and Sub-Class should be expanded or otherwise modified.

81.    Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

82.    Typicality:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Hyundai and equipped with a DCT. The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing defective DCT components.  Furthermore, the factual bases of Hyundai's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

83.    Commonality:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting only individual Class Members.  These common legal and factual issues include the following:

       a.  Whether Class Vehicles suffer from defects relating to the DCT;

       b.  Whether the defects relating to the DCT constitute an unreasonable safety risk;

       c.  Whether Defendant knows about the defects relating to the DCT and, if so, how long Defendant has known of the defect;

       d.  Whether the defective nature of the DCT constitutes a material fact;

       e.  Whether Defendant has a duty to disclose the defective nature of

the DCT to Plaintiffs and Class Members;

      f.  Whether Plaintiffs and the other Class Members are entitled to equitable relief, including a preliminary and/or permanent injunction;

      g.  Whether Defendant knew or reasonably should have known of the defects relating to the DCT before it sold and leased Class Vehicles to Class Members;

      h.  Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective DCT components;

      i.  Whether Defendant breached the implied warranty of merchantability pursuant to the Magnuson-Moss Act;

      j.  Whether Defendant breached the common law implied warranty of merchantability; and

      k.  Whether Defendant breached the implied warranty of merchantability pursuant to Nev. Rev. Stat. §598.0903, *et seq.*

84.   <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

85.   <u>The Prerequisites of Rule 23(b)(2) are Satisfied</u>:  the prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

86.   The prosecution of separate actions by members of the class would create a risk of establishing incompatible standards of conduct for the Defendant.

1   For example, one court might decide that the challenged actions are illegal and

2   enjoin them, while another court might decide those same actions are not illegal.

3   Individual actions may, as a practical matter, be dispositive of the interests of

4   Class members, who would not be parties to those actions.

5       87.    Defendant's actions are generally applicable to the Class as a whole,

6   and Plaintiffs seek, *inter alia*, equitable remedies with respect to the class as a

7   whole.

8       88.    Defendant's systemic policy and practices as set forth in this

9   Complaint make declaratory relief appropriate with respect to the Class as a

10  whole.

11      89.    <u>Predominance and Superiority</u>:  Plaintiffs and Class Members have

12  all suffered and will continue to suffer harm and damages as a result of

13  Defendant's unlawful and wrongful conduct.  A class action is superior to other

14  available methods for the fair and efficient adjudication of the controversy.

15  Absent a class action, most Class Members would likely find the cost of

16  litigating their claims prohibitively high and would therefore have no effective

17  remedy at law.  Because of the relatively small size of the individual Class

18  Members' claims, it is likely that only a few Class Members could afford to seek

19  legal redress for Defendant's misconduct.  Absent a class action, Class Members

20  will continue to incur damages, and Defendant's misconduct will continue

21  without remedy.  Class treatment of common questions of law and fact would

22  also be a superior method to multiple individual actions or piecemeal litigation in

23  that class treatment will conserve the resources of the courts and the litigants,

24  and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**

**(Violation of the Nevada Deceptive Trade Practices Act**

**Nev. Rev. Stat. § 598.0903, *et seq.*)**

28      90.    Plaintiffs incorporate by reference the allegations contained in the

1    preceding paragraphs of this Complaint.

2        91.    Plaintiffs bring this cause of action on behalf of themselves and the

3    Nevada Sub-Class.

4        92.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev.

5    Rev. Stat. § 598.0903, *et seq*. prohibits deceptive trade practices. Nev. Rev. Stat.

6    § 598.0915 provides that a person engages in a "deceptive trade practice" if, in

7    the course of business or occupation, the person: "5. Knowingly makes a false

8    representation as to the characteristics, ingredients, uses, benefits, alterations or

9    quantities of goods or services for sale or lease or a false representation as to the

10   sponsorship, approval, status, affiliation or connection of a person therewith";

11   "7. Represents that goods or services for sale or lease are of a particular standard,

12   quality or grade, or that such goods are of a particular style or model, if he or she

13   knows or should know that they are of another standard, quality, grade, style or

14   model"; "9. Advertises goods or services with intent not to sell or lease them as

15   advertised"; or "15. Knowingly makes any other false representation in a

16   transaction."

17       93.    Defendant's actions as set forth below occurred in the conduct of

18   trade or commerce.

19       94.    By failing to disclose and concealing the defective nature of the

20   DCT from Plaintiffs and prospective Class Members, Defendant violated the

21   Nevada DTPA, as it represented that the Class Vehicles and their transmissions

22   had characteristics and benefits that they do not have and represented that the

23   Class Vehicles and their transmissions were of a particular standard, quality, or

24   grade when they were of another.

25       95.    Defendant's unfair and deceptive acts or practices occurred

26   repeatedly in Defendant's trade or business, were capable of deceiving a

27   substantial portion of the purchasing public, and imposed a serious safety risk on

28   the public.

96. Defendant knew and continues to know that the Class Vehicles and their DCTs suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

97. Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the DCT and/or the associated repair costs because:

   a. Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' DCT;

   b. Plaintiffs and Class Members could not reasonably have been expected to learn or discover that their DCT had a dangerous safety defect until it manifested; and

   c. Defendant knew that Plaintiffs and Class Members could not reasonably have been expected to learn of or discover the safety defect.

98. In failing to disclose the defective nature of the DCT, Defendant knowingly and intentionally concealed and continues to conceal material facts and breached its duty not to do so.

99. The facts Defendant concealed from or failed to disclose to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had they known that the Class Vehicles' DCT was defective, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

100. Plaintiffs and Class Members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit problems such as failure to shift, stalling, and delayed or no acceleration.

101. This is the reasonable and objective consumer expectation relating to vehicle transmissions.

102.   Plaintiffs and the Class are entitled to equitable relief.

**SECOND CAUSE OF ACTION**

**(Breach of Common Law Implied Warranty of Merchantability and Breach**

**of Implied Warranty Pursuant to**

**Nev. Rev. Stat. §§ 104.2314 and 104A.2212)**

103.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

104.   Plaintiffs bring this cause of action against Defendant on behalf of themselves and the Nevada Implied Warranty Sub-Class.

105.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

106.   Defendant provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their DCTs suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

107.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their DCTs that were manufactured, supplied, distributed, and/or sold by Hyundai were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their DCTs would be fit for their intended use while the Class Vehicles were being operated.

108.   Contrary to the applicable implied warranties, the Class Vehicles

1   and their DCTs at the time of sale and thereafter were not fit for their ordinary

2   and intended purpose of providing Plaintiffs and Class Members with reliable,

3   durable, and safe transportation.  Instead, the Class Vehicles are defective,

4   including the defective design of their DCT and its TCM.

5        109.   The alleged TCM Defect is inherent in each Class Vehicle and was

6   present in each Class Vehicle at the time of sale.

7        110.   As a result of Defendant's breach of the applicable implied

8   warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

9   loss of money, property, and/or value of their Class Vehicles. Additionally, as a

10   result of the TCM Defect, Plaintiffs and Class Members were harmed and

11   suffered actual damages in that the Class Vehicles' DCT components, including

12   the TCM, are substantially certain to fail before their expected useful life has

13   run.

14        111.   Defendant's actions, as complained of herein, breached the implied

15   warranty that the Class Vehicles were of merchantable quality and fit for such

16   use in violation of Nevada Common Law Implied Warranties and Nevada

17   Revised Statutes §§ 104.2314 and 104A.2212.

18                     **THIRD CAUSE OF ACTION**

19   **(Breach of Implied Warranty under the Magnuson-Moss Warranty Act,**

20                  **15 U.S.C. §§ 2303 *et seq.*)**

21        112.   Plaintiffs incorporate by reference the allegations contained in the

22   preceding paragraphs of this Complaint.

23        113.   Plaintiffs bring this cause of action on behalf of themselves and the

24   Nationwide Class, or, in the alternative, on behalf of the Nevada Implied

25   Warranty Sub-Class, against Defendant.

26        114.   The Class Vehicles are a "consumer product" within the meaning of

27   the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

28        115.   Plaintiffs and Class Members are "consumers" within the meaning

of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

116.  Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

117.  Hyundai impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their DCTs that were manufactured, supplied, distributed, and/or sold by Hyundai were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their DCTs would be fit for their intended use while the Class Vehicles were being operated.

118.  Contrary to the applicable implied warranties, the Class Vehicles and their DCTs at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including the defective design of their TCM.

119.  Defendant's breach of implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

120.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25,000.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

121.  Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the TCM Defect.

122.  As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiffs and Class Members sustained injuries and are entitled to relief as appropriate.

**FOURTH CAUSE OF ACTION**

**Breach of Implied Warranty Pursuant to Song-Beverly**

**Consumer Warranty Act – Cal. Civ. Code §§ 1792 and 1791.1, *et seq.***

(**On Behalf of the Nationwide Class or,**

**Alternatively, the California Implied Warranty Sub-Class**)

123.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

124.   Plaintiffs bring this cause of action against Defendant on behalf of themselves and the California Implied Warranty Sub-Class.

125.   Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

126.   Defendant provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their DCTs suffered from an inherent defect at the time of sale and thereafter and are not fit for their particular purpose of providing safe and reliable transportation.

127.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their DCTs were manufactured, supplied, distributed, and/or sold by Hyundai were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their DCTs would be fit for their intended use while the Class Vehicles were being operated.

128.   Contrary to the applicable implied warranties, the Class Vehicles

1   and their transmissions at the time of sale and thereafter were not fit for their

2   ordinary and intended purpose of providing Plaintiffs and the Class Members

3   with reliable, durable, and safe transportation.  Instead, the Class Vehicles are

4   defective, including the defective design and manufacture of their DCTs and

5   TCMs.

6       129.   As a result of Defendant's breach of the applicable implied

7   warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable

8   loss of money, property, and/or value of their Class Vehicles. Additionally, as a

9   result of the DCT Defect, Plaintiffs and Class Members were harmed and

10  suffered actual damages in that the Class Vehicles' DCTs are substantially

11  certain to fail before their expected useful life has run.

12      130.   Defendant's actions, as complained of herein, breached the implied

13  warranty that the Class Vehicles were of merchantable quality and fit for such

14  use in violation of California Civil Code §§ 1792 and 1791.1.

15                    **FIFTH CAUSE OF ACTION**

16         **Violation of California's Consumer Legal Remedies Act –**

17               **Cal. Civ. Code § 1750, *et seq.***

18              (**On Behalf of the Nationwide Class or,**

19           **Alternatively, the California CLRA Sub-Class**)

20      131.   Plaintiffs incorporate by reference the allegations contained in the

21  preceding paragraphs of this Complaint.

22      132.   Plaintiffs bring this cause of action on behalf of themselves and the

23  CLRA Sub-Class.

24      133.   Defendant is a "person" as defined by California Civil Code

25  § 1761(c).

26      134.   Plaintiffs and CLRA Sub-Class Members are "consumers" within

27  the meaning of California Civil Code § 1761(d) because they purchased their

28  Class Vehicles primarily for personal, family, or household use.

135.   By failing to disclose and concealing the defective nature of the DCTs from Plaintiffs and Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class Vehicles and their DCTs had characteristics and benefits that they do not have, and represented that the Class Vehicles and their DCTs were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

136.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

137.   Defendant knew that the Class Vehicles and their DCTs suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

138.   As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the DCT Defect, Plaintiffs and the Class Members were harmed and suffered actual damages in that the Class Vehicles' DCTs are substantially certain to fail before their expected useful life has run.

139.   Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the DCTs and/or the associated repair costs because:

    a. Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' DCTs;

    b. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their DCTs had a dangerous safety defect until it manifested; and

    c. Defendant knew that Plaintiffs and the Class Members could not

reasonably have been expected to learn of or discover the safety defect.

140.   In failing to disclose the defective nature of the DCTs, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

141.   The facts Defendant concealed from or did not disclose to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less.  Had Plaintiffs and other Class Members known that the Class Vehicles' DCTs were defective, they would not have purchased or leased the Class Vehicles or would have paid less for them.

142.   Plaintiffs and the Class Members are reasonable consumers who do not expect the DCTs installed in their vehicles to exhibit hesitation or delayed acceleration, failing to shift, stalling, and/or loss of power.  This is the reasonable and objective consumer expectation relating to vehicle transmissions.

143.   As a result of Defendant's conduct, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience delayed acceleration, failing to shift, stalling, loss of power, and, eventually, transmission failure.

144.   As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and Class Members suffered and will continue to suffer actual damages.

145.   Plaintiffs and the Class are entitled to equitable relief.

146.   Plaintiffs provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  Defendant failed to provide appropriate relief for its violations of the CLRA.  Therefore, Plaintiffs now seek monetary, compensatory, and punitive damages, in addition to injunctive and equitable relief.

**SIXTH CAUSE OF ACTION**

**Violation of California Business & Professions Code § 17200, *et seq.***

(**On Behalf of the Nationwide Class or, Alternatively, the California Sub-Classes**)

147.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

148.   Plaintiffs bring this cause of action on behalf of themselves and the California Sub-Classes.

149.   As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the DCT Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' DCTs are substantially certain to fail before their expected useful life has run.

150.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

151.   Plaintiffs and Class Members are reasonable consumers who do not expect hesitation or delayed acceleration, failure to shift, stalling, loss of power, and, eventually, transmission failure.

152.   Defendant knew the Class Vehicles and their DCTs suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

153.   In failing to disclose the DCT Defect, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

154.   Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles and their DCTs:

        a.   Defendant was in a superior position to know the true state of

facts about the safety defect in the Class Vehicles' DCTs;

   b. Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their DCTs; and

   c. Defendant actively concealed the defective nature of the Class Vehicles and their DCTs from Plaintiffs and the Class.

155. The facts Defendant concealed from or not disclosed to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had Plaintiffs and other Class Members known that the Class Vehicles' DCT was defective and posed a safety hazard, then Plaintiffs and Class Members would not have purchased or leased Class Vehicles equipped with the DCT or would have paid less for them.

156. Defendant continued to conceal the defective nature of the Class Vehicles and their DCTs even after Class Members began to report problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem.

157. Defendant's conduct was and is likely to deceive consumers.

158. Defendant's acts, conduct and practices were unlawful, in that they constituted:

   a. Violations of the California Consumer Legal Remedies Act;

   b. Violations of the Song-Beverly Consumer Warranty Act; and

   c. Violations of the express warranty provisions of California Commercial Code section 2313.

159. By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

160. Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a

1   substantial portion of the purchasing public.

2       161.   As a direct and proximate result of Defendant's unfair and deceptive

3   practices, Plaintiffs and the Class have suffered and will continue to suffer actual

4   damages.

5       162.   Defendant has been unjustly enriched and should be required to

6   make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of

7   the Business & Professions Code.

8   **RELIEF REQUESTED**

9       163.   Plaintiffs, on behalf of themselves and all others similarly situated,

10   request the Court to enter judgment against Defendant, as follows:

11           a.   An order certifying the proposed Class and Sub-Classes,

12              designating Plaintiffs as named representative of the Class, and

13              designating the undersigned as Class Counsel;

14           b.   A declaration that Defendant is financially responsible for

15              notifying all Class Members about the defective nature of the

16              DCT, including the need for periodic maintenance;

17           c.   An order enjoining Defendant from further deceptive

18              distribution, sales, and lease practices with respect to Class

19              Vehicles; compelling Defendant to issue a voluntary recall for

20              the Class Vehicles pursuant to.  49 U.S.C. § 30118(a);

21              compelling Defendant to remove, repair, and/or replace the Class

22              Vehicles' defective TCM with suitable alternative product(s) that

23              do not contain the defects alleged herein; enjoining Defendant

24              from selling the Class Vehicles with the misleading information;

25              and/or compelling Defendant to reform its warranty, in a manner

26              deemed to be appropriate by the Court, to cover the injury

27              alleged and to notify all Class Members that such warranty has

28              been reformed;

d.  A declaration requiring Defendant to comply with the various provisions of the Nevada DTPA alleged herein and to make all the required disclosures;

e.  Any and all remedies provided pursuant to the Nevada DTPA and Nevada Implied Warranty of Merchantability;

f.  Any and all remedies provided pursuant to the Song-Beverly Consumer Warranty Act;

g.  Any and all remedies provided pursuant to the Magnuson-Moss Warranty Act;

h.  Any and all remedies provided pursuant to the California Consumer Legal Remedies Act;

i.  Any and all remedies provided pursuant to California's Unfair Competition Law;

j.  A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles, or make full restitution to Plaintiffs and Class Members;

k.  An award of attorneys' fees and costs, as allowed by law;

l.  An award of pre-judgment and post-judgment interest, as provided by law;

m. Leave to amend the Complaint to conform to the evidence produced at trial; and

n.  Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

164.   Pursuant to Federal Rule of Civil Procedure 38(b) and Southern District of California Local Rule 38.1, Plaintiffs demand a trial by jury of any and all issues in this action so triable.

//

1    Dated:  September 12, 2017                Respectfully submitted,

2                                             Capstone Law APC

3

4                                      By: /s/ Jordan L. Lurie

5                                          Jordan L. Lurie
                                           Tarek H. Zohdy
6                                          Cody R. Padgett
                                           Karen L. Wallace
7

8                                      MADDOX | ISAACSON | CISNEROS LLP

9

10                               By:    /s/ Norberto J. Cisneros
                                        Troy L. Isaacson, Esq.
11                                      Norberto J. Cisneros, Esq.
                                        Barbara McDonald, Esq.
12
                                        Attorneys for Plaintiffs
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS WYLIE, SHAWNA WYLIE (fka BROWN), TIMOTHY RYAN, and GREGORY PERGER, individually, and on behalf of a class of similarly situated individuals,<br><br>    Plaintiffs,<br><br>    v.<br><br>HYUNDAI MOTOR AMERICA, a California corporation,<br><br>    Defendant. | Case No.: 8:16-CV-02102<br><br>**DECLARATION OF GREGORY PERGER IN SUPPORT OF VENUE FOR FIRST AMENDED COMPLAINT PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)** |

## DECLARATION OF GREGORY PERGER

I, GREGORY PERGER, declare under penalty of perjury as follows:

1.      I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, and as to those matters I believe them to be true.  I am over the age of eighteen, a citizen of the State of California, and a Plaintiff in this action.

2.      Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiffs' Selection of Venue for the Trial of Plaintiffs' Cause of Action alleging violation of California's Consumers Legal Remedies Act.

3.      I am informed and believe Defendant Hyundai Motor America is a corporation organized and in existence under the laws of the State of California and registered to do business in the State of California.  Hyundai Motor America's Corporate Headquarters are located at 10550 Talbert Avenue, Fountain Valley, California 92708.  Hyundai Motor America designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide and in California.  Hyundai Motor America is the warrantor and distributor of the Class Vehicles in the United States.

4.      I am informed and believe that at all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in Orange County, in the Central District of California, and throughout the United States of America.

5.      Based on the facts set forth herein, this Court is a proper venue for the prosecution of Plaintiffs' Cause of Action alleging violation of California's Consumers Legal Remedies Act because vehicles that are the subject of this lawsuit are situated here, and a substantial portion of the events giving rise to my

DECLARATION IN SUPPORT OF VENUE FOR FAC

1  claims occurred here.

2        6.     I declare under penalty of perjury under the laws of California and

3  the United States of America that the foregoing is true and correct.

4      Executed on September 12, 2017, in ___Coarsegold___, California.

5

6

7  By: _____
        Gregory Perger

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28