Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:     (310) 943-0396

Troy L. Isaacson, Esq., (Cal. Bar No. 186834, NV Bar No. 6690)
Norberto J. Cisneros, Esq., (Cal. Bar No. 182001, NV Bar No. 8782)
Barbara M. McDonald, Esq., (Cal. Bar No. 281722, NV Bar No. 11651)
MADDOX | ISAACSON | CISNEROS LLP
11920 Southern Highlands Parkway, Suite 100
Las Vegas, Nevada 89141
Telephone:    (702) 366-1900
Facsimile:     (702) 366-1999

Attorneys for Plaintiffs Nicholas Wylie,
Shawna Wylie, Timothy Ryan, and Gregory Perger

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS WYLIE and SHAWNA WYLIE (fka BROWN), individually, and on behalf of a class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>    v.<br><br>HYUNDAI MOTOR AMERICA, a California corporation,<br><br>        Defendant. | Case No.: 8:16-cv-02102-DOC-JCG<br><br>Hon. David O. Carter<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      August 19, 2019<br>Time:     8:30 a.m.<br>Place:    Courtroom 9D |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 19, 2019 at 8:30 a.m., in Courtroom 9D of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, California, 92701, the Honorable David O. Carter presiding, Plaintiffs Nicholas Wylie, Shawna Wylie, Timothy Ryan, and Gregory Perger, on behalf of themselves and all others similarly situated, will, and hereby do, move this Court to:

1.      Preliminarily approve the settlement set forth in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Mark Ozzello;

2.      Conditionally certify the Settlement Class;

3.      Approve distribution of the proposed Class Notice;

4.      Appoint Plaintiffs Nicholas Wylie, Shawna Wylie, Timothy Ryan, and Gregory Perger as the Class Representatives;

5.      Appoint Capstone Law APC and Maddox | Isaacson | Cisneros LLP as Class Counsel;

6.      Set a hearing date and briefing schedule for final settlement approval and Plaintiffs' fee and expense application.

This Motion, unopposed by Defendant Hyundai Motor America, is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declarations of Mark Ozzello; (4) the Declaration of Troy Isaacson; (5) the Declaration of Susan Thompson; (6) the Settlement Agreement and attached exhibits thereto; (7) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this action; and (9) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

1   Dated:  July 19, 2019                                Respectfully submitted,

2
                                                         By: /s/ Mark A. Ozzello
3                                                            Mark A. Ozzello
                                                            Tarek H. Zohdy
4                                                            Cody R. Padgett
                                                            Trisha K. Monesi
5                                                            **CAPSTONE LAW APC**

6                                                            Troy Isaacson
                                                            Norberto Cisneros
7                                                            **MADDOX, ISAACSON, CISNEROS LLP**

8                                                            Attorneys for Plaintiffs Nicholas Wylie,

9                                                            Shawna Wylie, Timothy Ryan, and

10                                                           Gregory Perger

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTS AND PROCEDURE ................................................................................ 2

    A.    Plaintiffs' Experiences with the Class Vehicles ...................................... 3

    B.    Overview of the Litigation and Settlement Negotiations ......................... 4

III.  MATERIAL TERMS OF THE PROPOSED CLASS ACTION
     SETTLEMENT ...................................................................................................... 4

    A.    Conditional Certification of the Settlement Class ................................... 4

    B.    Reimbursement for Diagnostic Visits and Repairs ................................. 5

    C.    Compensation for Unsatisfactory Performance ...................................... 5

    D.    Compensation for Loss in Value ............................................................ 6

    E.    Informational Brochure .......................................................................... 7

    F.    The Proposed Notice to the Settlement Class ......................................... 7

    G.    Proposed Attorneys' Fees, Litigation Expenses, and Service Awards ................. 8

IV.   ARGUMENT ....................................................................................................... 9

    A.    Conditional Class Certification Is Appropriate for Settlement Purposes .............. 9

        1.    The Proposed Class Meets the Requirements of Rule 23 .............................. 9

        2.    The Proposed Class Is Sufficiently Numerous and Ascertainable ................. 9

        3.    There are Questions of Law and Fact that Are Common to the Class ........ 10

        4.    Plaintiffs' Claims Are Typical of the Proposed Settlement Class .............. 11

        5.    Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the
           Interests of the Proposed Settlement Class ..................................................... 12

        6.    Common Issues Predominate Over Individual Issues ................................. 12

        7.    A Class Settlement Is Superior to Other Available Means of
           Resolution ......................................................................................................... 13

    B.    The Court Should Grant Preliminary Approval of the Class Settlement ............ 14

        1.    The Settlement is Entitled to a Presumption of Fairness ............................. 16

2.   The Extent of Discovery Completed Supports Preliminary Approval........17

3.   The Proposed Settlement Is Well Within the Range of
     Reasonableness..............................................................................................18

4.   Equitable Method of Allocating Relief to Class Members..........................21

5.   The Court Should Preliminarily Approve the Negotiated Attorneys'
     Fees and Costs ...............................................................................................22

6.   The Views of Experienced Counsel Should Be Accorded Substantial
     Weight.............................................................................................................24

V.   CONCLUSION ............................................................................................................24

1
2

# TABLE OF AUTHORITIES

3
**FEDERAL CASES**

4
*Aarons v. BMW of N. Am. LLC*, No. 11-7667, 2014 U.S. Dist. LEXIS 118442
5
    (C.D. Cal. Apr. 29, 2014)................................................................................20

6
*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ...................................................15

7
*Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372
8
    (N.D. Cal. July 24, 2015)..............................................................................22

9
*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)..........................9, 13, 14

10
*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...............................................11

11
*Boyd v. Bank of Am. Corp.*, No. 13-cv-0561-DOC, 2014 WL 6473804
12
    (C.D. Cal. Nov. 18, 2014) ............................................................................22

13
*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. Jan. 3, 2017)...............10

14
*Browne v. American Honda Motor Co., Inc.*, Case No. 09-cv-06750, 2010
15
    WL 9499072 (C.D. Cal. 2010)......................................................................11

16
*Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004) ......................11

17
*Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012) ........19

18
*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) .....................21

19
*Coba v. Ford Motor Co.*, No. 12-1622-KM, 2017 WL 3332264
20
    (D.N.J. Aug. 4, 2017)...................................................................................20

21
*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)......................................11

22
*Eisen v. Porsche Cars North American, Inc.*, Case No. 11-09405, 2014 U.S.
23
    Dist. LEXIS 14301, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) .....................24

24
*Estrella v. Freedom Fin'l Network*, No. C-09-03156-SI, 2010 U.S. Dist.
25
    LEXIS 61236 (N.D. Cal. June 2, 2010) .............................................................10

26
*Grodzitsky v. Am. Honda Motor Co.*, No. 2-01142-SVW, 2014 U.S. Dist.
27
    LEXIS 24599 (C.D. Cal. Feb. 19, 2014) ........................................................19

28
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................10, 11, 12, 14

*Hensley v. Eckehart*, 461 U.S. 424 (1983)..................................................... 16, 23

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)..................... 15, 23

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ...................... 9, 13, 23

*In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d
    708 (E.D. Pa. 2014)...........................................................................15

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ....................................24

*In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886
    (N.D. Cal. Nov. 26, 2007)...................................................................21

*In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078 (N.D. Cal. 2007) ...........................15

*In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ............ 16, 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, Prods. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ...................................................... 9, 12, 16

*Laguna v. Coverall North America,* 753 F.3d 918 (9th Cir. 2014)......................................23

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)............................................18

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007)..............................11

*Officers for Justice v. Civil Service Comm'n*, 668 F.3d 615 (9th Cir. 1982)................. 16, 18

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008)..................................11

*Philips v. Ford Motor Co.*, No. 14-02989, 2016 WL 7428810
    (N.D. Cal. Dec. 22, 2016)...................................................................19

*Rannis v. Recchia*, 380 F. App'x. 646 (9th Cir. 2010) ..........................................8

*Robbins v. Hyundai Motor America, Inc.*, 2015 WL 304142
    (C.D. Cal. Jan. 14, 2015)....................................................................21

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ........................................ 18, 20

*Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016)..................15

*Smith v. Am. Greetings Corp.*, No. 14-cv-02577, 2016 WL 362395
    (N.D. Cal. Jan. 29, 2016)...................................................................22

*Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364
    (N.D. Cal. Sep. 5, 2008).....................................................................14

*Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010) ..........................................19

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...................................................23

*Sullivan v. DB Invs. Inc.*, 667 F.3d 273 (3d Cir. 2011) ...................................................13

*Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ...................................................12

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) ....................9

*Wakefield v. Wells Fargo & Co.*, No. C 13-05053 LB, 2014 WL 7240339
    (N.D. Cal. Dec. 18, 2014) ...................................................13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................................10

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ...............................11

## FEDERAL STATUTES

Fed. R. Civ. P. 23 ...................................................9

Fed. R. Civ. P. 23(a) ...................................................9, 10

Fed. R. Civ. P. 23(a)(1) ...................................................9

Fed. R. Civ. P. 23(a)(2) ...................................................10

Fed. R. Civ. P. 23(a)(4) ...................................................12

Fed. R. Civ. P. 23(b)(3) ...................................................9

Fed. R. Civ. P. 23(c)(2)(B) ...................................................7

Fed. R. Civ. P. 23(e)(1) ...................................................7

Fed. R. Civ. P. 23(e)(1)(A) ...................................................14

Fed. R. Civ. P. 23(e)(2)(D) ...................................................21

Fed. R. Civ. P. 23(h) ...................................................22

## STATE STATUTES

Cal. Civ. Code § 1793.2(d)(2)(C) ...................................................21

## SECONDARY AUTHORITIES

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) ...................................15

Hyundai Corporate News (Oct. 2, 2014),
   https://www.hyundaipressoffice.co.uk/release/559/........................................................3

Manual for Complex Litigation (4th ed. 2004).....................................................................9

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# I.     INTRODUCTION

Nicholas Wylie, Shawna Wylie, Timothy Ryan, and Gregory Perger ("Plaintiffs") belong to a nationwide class of over 135,000 current and former owners and lessees of 2015-2017 Sonata Eco, 2016-2017 Tucson, and 2016-2017 Veloster vehicles equipped with allegedly defective dual-clutch transmissions ("DCT" or "DCTs").  Plaintiffs allege that the DCTs contain an undisclosed design defect in the Transmission Control Module ("TCM") that causes, among other problems, jerking, shuttering, shaking, failure to shift, stalling, delayed acceleration, and loss of power ("Alleged Defect").  Plaintiffs' global settlement with Defendant Hyundai Motor Co. ("Hyundai" or "HMA") is intended to provide Class Members with immediate and valuable relief for the Defect in the form of:

- Reimbursement for Diagnostic Visits and Repairs. Class Members who incurred out-of-pocket costs for any type of repair, replacement, diagnosis, or inspection of a Class Vehicle relating to the DCT ("Qualifying Repair") will be entitled to **full reimbursement** for all reasonable costs incurred for the Qualifying Repairs, including the payment of insurance copays and deductibles.

- Compensation for Unsatisfactory Performance. Class Members will also be entitled to compensation for the unsatisfactory performance of their Class Vehicles. Specifically, Class Members who made multiple visits to an authorized Hyundai dealership within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer (whichever occurs first) to complain about a DCT-Related Symptom will have the option to claim compensation up to $675, or vehicle rebate certificates up to $1,350. Based on warranty data provided by Hyundai (which tracks only service visits associated with repairs under warranty rather than just service visits), a minimum of 71,345 Class Members are already eligible for the above relief (*see* Declaration of Susan Thompson ¶¶ 13-15), and if they submitted claims, would be eligible to receive a minimum of $11.27 million, or $22.5 million in vehicle rebate certificates (*see id.*).

- Compensation for Lost Value on Trade-In or Sale. Class Members who have traded-in or sold (or will trade-in or sell) their Class Vehicles may claim compensation after trading-in or selling their cars because of transmission-related complaints. This valuable benefit for partial compensation is intended to offset the Class Vehicle's potential loss in value resulting from the Alleged Defect.

- Notice of DCT Software Upgrades. An Informational Brochure about the operation and function of the DCT, as well as notice regarding the most recent

DCT software upgrades, will be distributed to Class Members within 30 calendar days after the Effective Date.

Plaintiffs and their counsel believe the Settlement is fair and reasonable, and provides Class Members similar, if not superior, remedies to what they could otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with continued litigation and trial.

Plaintiffs accordingly request that this Court review their negotiated Settlement Agreement,[1] attached as Exhibit 1 to the accompanying Declaration of Mark Ozzello, and enter an order: (1) granting preliminary approval of the Settlement; (2) certifying a class for settlement purposes: (3) appointing Plaintiffs as Class Representatives and Plaintiffs' counsel, Capstone Law APC and Maddox | Isaacson | Cisneros LLP, as Class Counsel; (4) approving the parties' proposed form and method of giving Class Members notice of the action and proposed Settlement; (5) directing that notice be given to Class Members in the proposed form and manner; and (6) setting a hearing on whether the Court should grant Final Approval of the Settlement, enter judgment, award attorneys' fees and expenses to Plaintiffs' counsel, and grant incentive awards to Plaintiffs.

## II.     FACTS AND PROCEDURE

This nationwide class action arises out of an alleged defect in DCTs designed and manufactured by Hyundai for use in the 2015-2017 Sonata Eco, 2016-2017 Tucson, and 2016-2017 Veloster vehicles.  Hyundai premiered the DCT in October 2014, and described it as "an improvement in fuel consumption and $CO_2$ emission compared to a conventional six-gear automatic transmission, while acceleration performance also improves."  The DCT features two dry clutches that, according to Hyundai, transfer engine power "independently into the odd and even gear train ensuring it is ready to shift into the next gear without any torque interruption."[2] Despite Hyundai's marketing claims, the DCTs installed on Plaintiffs'

---

[1] Unless indicated otherwise, all capitalized terms used herein have the same definition as those defined by the Settlement Agreement.

[2] Hyundai to showcase new downsized turbocharged engines and seven-speed

1  vehicles were often unreliable and occasioned multiple trips to their Hyundai dealerships for
2  service. In fact, within weeks of purchasing their Class Vehicles, each of the Plaintiffs
3  experienced the shuddering, stalling, delayed acceleration, and power loss that have become
4  symptomatic of the DCTs.

5        **A.**     **Plaintiffs' Experiences with the Class Vehicles**

6       **Nicholas and Shawna Wylie:** Plaintiffs Nicholas and Shawna Wylie (the "Wylies")
7  are Nevada citizens who reside in Boulder City, Nevada. (*See* Dkt. No. 27, First Amended
8  Complaint ("FAC") ¶ 16.)  On October 31, 2015, the Wylies purchased a new 2016
9  Hyundai Veloster Turbo, equipped with a 7-speed DCT, from Henderson Hyundai
10 Superstore, an authorized Hyundai dealer in Clark County. (*Id.* at ¶ 17.)  On July 6, 2016,
11 the Wylies brought their vehicle to Henderson Hyundai complaining that the vehicle's
12 transmission felt like it was "slipping." (*Id.* at ¶ 19.)  A Hyundai service technician inspected
13 the vehicle but could not confirm any transmission-related faults, and no repairs were
14 performed. (*Id.*) Although no faults were confirmed, the issues persisted. (*Id.* at ¶¶ 20-22.)

15      **Timothy Ryan:** Plaintiff Timothy Ryan ("Ryan") is a Nevada citizen who resides in
16 Henderson, Nevada. (FAC ¶ 28.) On September 10, 2016, Ryan purchased a new 2016
17 Hyundai Tucson SUV, equipped with a 7-speed DCT, from Henderson Hyundai
18 Superstore. (*Id.* at ¶ 29.)  Within a week of his purchase, Ryan began experiencing hesitation
19 when he tried to accelerate the vehicle. (*Id.* at ¶ 31.)  He returned to Henderson Hyundai
20 immediately to complain but was told that there was nothing wrong with the car. (*Id.*)
21 Notwithstanding, the issues persisted. (*Id.* at ¶¶ 32-33.)

22      **Gregory Perger:** Plaintiff Gregory Perger ("Perger") is a California citizen who
23 resides in Coarsegold, California. (FAC ¶ 38.)  On October 5, 2016, Perger purchased a new
24 2017 Hyundai Tucson, equipped with a 7-speed DCT, from an authorized Hyundai dealer
25 in Fresno County, California. (*Id.* at ¶ 39.)  Shortly after purchase, Perger's vehicle began to

---

dual-clutch transmission in Paris, Hyundai Corporate News (Oct. 2, 2014),
https://www.hyundaipressoffice.co.uk/release/559/.

1   turn off intermittently, requiring him to reset it by turning the car off and back on. (*Id.* at ¶
2   41.) He also began experiencing delayed acceleration and SelectShift function failure.
3   Perger returned several times to Lithia Hyundai of Fresno to complain. (*Id.* at ¶¶ 42-46.)

**B.   Overview of the Litigation and Settlement Negotiations**

5          The Wylies filed the initial class action complaint on November 22, 2016.  As a
6   result of several meetings regarding Defendant's anticipated motion to dismiss and the
7   prospect of amending the complaint, the Parties agreed to participate in an early mediation.
8   On March 15, 2017, the Court issued an order staying proceedings pending mediation.  On
9   May 1, 2017, the Parties participated in a mediation with the Hon. Russell Bostrom (Ret.) of
10  Judicate West.  The Parties were unable to settle at mediation, but agreed to revisit their
11  settlement negotiations as the litigation resumed. (Declaration of Mark Ozzello ["Ozzello
12  Decl."] ¶ 2.)

13         Plaintiffs filed their First Amended Complaint on September 12, 2017, adding Ryan
14  and Perger as additional named plaintiffs.  On November 27, 2017, the Parties participated
15  in another mediation with Judge Bostrom.  Although the Parties were able to close the gap
16  between their respective positions, they were still unable to settle. (Ozzello Decl. ¶ 3.)

17         On January 26, 2018, Hyundai filed its Answer to Plaintiffs' First Amended
18  Complaint. The Parties thereafter exchanged significant formal discovery and evidence, and
19  eventually agreed to participate in a third mediation on May 30, 2018, this time before the
20  Hon. Howard B. Wiener (Ret.). Although the Parties did not settle at the third mediation,
21  with Justice Wiener's continuing guidance and months of continued negotiations, the Parties
22  were eventually able to negotiate a complete settlement of the claims at issue.  The
23  settlement is set forth in complete and final form in the Settlement Agreement. (Ozzello
24  Decl. ¶ 4, Ex. 1.)

**III.   MATERIAL TERMS OF THE PROPOSED CLASS ACTION
         SETTLEMENT**

**A.   Conditional Certification of the Settlement Class**

28  Plaintiffs' settlement contemplates conditional certification of a Settlement Class

consisting of all persons and entities who, as of the date of Preliminary Approval, purchased or leased a Class Vehicle, defined as 2015 to 2017 model year Sonata Eco vehicles, 2016-2017 model year Tucson vehicles, and 2016-2017 model year Veloster vehicles equipped with a DCT, that was sold by HMA in the United States of America.[3] (Settlement Agreement ¶¶ 1.6, 1.8.)

### B. Reimbursement for Diagnostic Visits and Repairs

Class Members who incurred out-of-pocket costs for any type of Qualifying Repair will be entitled to full reimbursement for all reasonable costs incurred, including the payment of insurance copays and deductibles. (Settlement Agreement ¶ 2.2.) To be eligible for reimbursement, Class Members must submit a Claim Form no later than 120 days after the Notice Date. (*Id.*, Ex. C.) Reimbursements will be provided irrespective of whether Qualifying Repairs occurred at an authorized Hyundai dealership or elsewhere. (*Id.*)

### C. Compensation for Unsatisfactory Performance

Under the Settlement, Class Members are eligible to receive substantial payments if they have experienced the symptoms related to the Alleged Defect, as demonstrated by having taken Class Vehicles to authorized HMA dealers for inspection and service. Class Members who made (or will make) two or more Service Visits will receive $250 for the second Service Visit, with increasing payments for each additional Service Visit, up to four

---

[3] The following are expressly excluded from the Settlement: HMA's affiliates, parent, or subsidiary of HMA or HMC; any entity in which HMA or HMC has a controlling interest; any employee, officer, or director of HMA or HMC; any successor or assign of HMA or HMC; attorneys, agents, insurers, third-party providers of extended warranty/service contracts, dealers, the attorneys representing HMA in this case, the Judges and Mediators to whom this case is or was assigned and their immediate family members, all persons who request exclusion from (opting-out of) the Settlement, vehicles deemed a total loss, anyone claiming personal injury, and all persons who previously released any claims encompassed in this Settlement. Except as to the named plaintiffs in this Agreement, the class definition expressly excludes all owners or lessees of Class Vehicles who have filed and served litigation against HMA alleging problems with the DCT in Class Vehicles that were pending as of the Notice Date and who do not dismiss their actions before final judgment. Owners or lessees of Class Vehicles who timely dismiss such litigation shall be members of the Class for all purposes. (Settlement Agreement ¶ 1.6.)

visits. (Settlement Agreement ¶ 2.3.)  In lieu of such payments, Class Members may elect to receive a "Vehicle Rebate Certificate," as defined in the Settlement Agreement, toward the purchase of an HMA vehicle.  Class Members may collect up to $675 or $1,350 in Vehicle Rebate Certificates. (*Id.*)  Importantly, Class Members need not have incurred any out-of-pocket costs to be eligible for this payment.

Based on warranty data provided by Hyundai, which tracks Service Visits associated with repairs under warranty (in Plaintiffs' estimation, however, the majority of Service Visits had no associated repairs under warranty, and therefore would not be captured by the warranty data), a minimum of 71,345 Class Members have already made the requisite number of Service Visits to qualify for this remedy.  If these Class Members submitted claims for payment, they would be eligible to receive approximately $11.27 million or $22.54 million in Vehicle Rebate Certificates, depending on which remedy they select. *See* Declaration of Susan Thompson ¶¶ 13-15.[4]

### D.      Compensation for Loss in Value

Class Members who have, or will, trade or sell their Class Vehicles may claim compensation in the form of money for partial reimbursement after having trading-in or selling their cars because of transmission-related complaints. To make a claim for partial reimbursement, Class Members must provide either: (1) documentary proof that they have made a DCT-related complaint at least once within the first 20,000 miles of ownership of their vehicle; or (2) a declaration signed under penalty of perjury that the Class Member experienced DCT Related symptoms within the first 20,000 miles of ownership; and (3) documentary proof of at least two Service Visits.  The amount of compensation under the Customer Satisfaction Program will be based on the difference (the "Purchase/Sale Price Difference") between the purchase price for the Class Vehicle (the "Purchase Price") and

---

[4] Moreover, an additional 32,480 Class Members would qualify for this remedy if they were to make even one additional Service Visit; i.e., the warranty data reflects that 32,480 Class Members each made one Service Visit, but if they were to make a subsequent Service Visit, they too would qualify for the relief provided by this remedy.

the trade-in value or sale price of the Class Vehicle (the "Sale Price"), adjusted for mileage and other factors, such as set forth in Paragraph 2.4 of the Settlement Agreement.[5]

### E.  Informational Brochure

Via the "Informational Brochure," HMA will inform Class Members about the operation and functionality of the DCT and provide them with notice of the most recent DCT software upgrades.  HMA will distribute the Informational Brochure within 30 calendar days after the Effective Date.

### F.  The Proposed Notice to the Settlement Class

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Parties agreed to provide individual notice by both U.S. mail and email (where available). (Settlement Agreement ¶¶ 1.21, 4.) In addition, the Parties have agreed to publish a settlement website, on which will be posted a long-form class notice. (*Id.*, Ex. A.) For the U.S. mail notice, Hyundai will derive up-to-date mailing addresses for class members by employing the services of R.L. Polk & Company, or a similar third-party entity, to utilize the most current address data from state agencies. (*Id.* ¶ 4.3.)  For any individual notice that is returned as undeliverable, Hyundai will also conduct an advanced address search using Hyundai's customer database information regarding the Class Vehicle

---

[5] The recovery shall be reduced by two and one-half percent (2.5%) for each calendar year of ownership, with ordinary rounding rules applied. Additionally, Class Members with three (3) or more documented DCT related complaints within the first 20,000 miles of ownership shall be entitled to an additional five percent (5%) recovery. Further, Class Members who owned their vehicles at least three (3) years from the date of the original retail purchase, and who made at least four (4) DCT-related complaints, shall also be entitled to an additional five percent (5%) recovery. Finally, Class Members shall be entitled to an additional ten percent (10%) recovery if they can demonstrate that their Class Vehicle was traded-in as part of the same transaction where the Class Member obtained another Hyundai vehicle from an authorized Hyundai dealership.

1   owner to obtain a deliverable address. (*Id.*)

2       Plaintiffs request that the Court approve this method of notice as the best practicable

3   under the circumstances. *See, e.g., Rannis v. Recchia*, 380 F. App'x. 646, 650 (9th Cir.

4   2010) (finding mailed notice to be the best notice practicable where reasonable efforts were

5   taken to ascertain class members addresses). The notices comply with Rule 23(c)(2)(B) in

6   that they "clearly and concisely state in plain, easily understood language" the nature of the

7   action; the class definition; the class claims, issues, or defenses; that the class member may

8   appear through counsel; that the court will exclude from the class any member who requests

9   exclusion; the time and manner for requesting exclusion; and the binding effect of a class

10  judgment on class members. (*See* Settlement, Exhs. A-B.) The notice is also consistent with

11  the sample provided by the Federal Judiciary Center.

12      Notice of the proposed settlement will also be provided to the U.S. Attorney General

13  and appropriate regulatory officials in all 50 states, as required by the Class Action Fairness

14  Act, 28 U.S.C. § 1715. (Settlement Agreement ¶ 4.1.) Hyundai will provide these

15  government officials with copies of all required materials so that the state and federal

16  governments may make an independent evaluation of the settlement and bring any concerns

17  to the Court's attention prior to final approval.

18      **G.      Proposed Attorneys' Fees, Litigation Expenses, and Service Awards**

19      The Parties have negotiated sums for attorneys' fees, expenses, and service awards

20  separately, with the amount finally awarded by the Court not affecting the Class benefits in

21  any way. (*See* Settlement Agreement ¶ 5.) Subject to Court approval, HMA has agreed to

22  not oppose Class Counsel's application for attorneys' fees and documented costs of a

23  combined sum up to $2,000,000. (*Id.*)

24      Also subject to Court approval, HMA has also agreed to not oppose an application

25  for service awards to the named Class Representatives for their efforts to secure relief on

26  behalf of the Settlement Class, in the amount of $5,000.00, each, to be paid separately from

27  the benefits to the Settlement Class. (*Id.* ¶ 5.1.) Further details will be provided when

28  Plaintiffs submit their application for fees, costs, and service awards.

1  **IV.    ARGUMENT**

2      **A.    Conditional Class Certification Is Appropriate for Settlement Purposes**

3          **1.    The Proposed Class Meets the Requirements of Rule 23**

4          Before granting preliminary approval of the Settlement, the Court should determine

5  that the proposed settlement class meets the requirements of Rule 23.  *See Amchem Prods.*

6  *v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. An

7  analysis of the requirements of Rule 23(a) and (b)(3), commonly referred to as numerosity,

8  commonality, typicality, adequacy, predominance, and superiority, shows that certification

9  of this proposed Settlement Class is appropriate.

10          The Court must apply the criteria for class certification "differently in litigation

11  classes and settlement classes."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556

12  (9th Cir. 2019) (en banc). For example, in deciding whether to certify a litigation class, a

13  district court must be concerned with manageability at trial. However, such "manageability

14  is not a concern in certifying a settlement class where, by definition, there will be no trial."

15  *Id.* On the other hand, in deciding whether to certify a settlement class, a district court must

16  give heightened attention to the definition of the class or subclasses. *See In re Volkswagen*

17  *"Clean Diesel" Mktg., Sales Practices, Prods. Liab. Litig.*, 895 F.3d 597, 606 (9th Cir.

18  2018) ("In the settlement context, a court "must pay 'undiluted, even heightened attention'

19  to the class certification requirements." (citation omitted)). That said, the Ninth Circuit en

20  banc court in *Hyundai* recognized that the element of predominance is "readily met" in

21  cases, such as here, alleging consumer fraud. *Hyundai*, 926 F.3d at 559.

22          **2.    The Proposed Class Is Sufficiently Numerous and Ascertainable**

23          The numerosity requirement is met where "the class is so numerous that joinder of

24  all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Generally, courts will find a class

25  sufficiently numerous if it consists of 40 or more members.  *Vasquez v. Coast Valley*

26  *Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a

27  level of 40 members).  Here, the settlement Class consists of current and former owners of

28  approximately 136,950 vehicles, satisfying this requirement:

| Model | Vehicles Sold in the United States |
|-------|-----------------------------------|
| Sonata (2015-2017) | 9,722 |
| Tucson (2016-2017) | 113,895 |
| Veloster Turbo (2016-2017) | 13,333 |
| **Total** | **136,950** |

The Ninth Circuit recently clarified that there is no threshold "ascertainability" requirement in this Circuit.  *See Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1125 n.4 (9th Cir. Jan. 3, 2017).  Nonetheless, the Class is ascertainable as they can be readily identified through the purchase and repair records of HMA and through each state's department of motor vehicle records.

> **3.    There are Questions of Law and Fact that Are Common to the Class**

The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The operative criterion for commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal."  *Estrella v. Freedom Fin'l Network*, No. C-09-03156-SI, 2010 U.S. Dist. LEXIS 61236, at *25 (N.D. Cal. June 2, 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018-20 (9th Cir. 1998)).  A single common question of law or fact satisfies this requirement.  *See Dukes*, 564 U.S. at 369.

Here, each Class Member purchased an HMA vehicle equipped with the DCT that suffered from the alleged Defect that HMA failed to disclose to its customers.   HMA contends that the DCT is not defective.  Given that the issues in dispute—*e.g.*, whether the DCT is defective, and, if so, whether and when HMA knew about the defect; whether HMA had a legal obligation to disclose the defect pursuant to consumer protection statues; and whether HMA had the legal obligation to repair the defect under warranty—all reflect common questions of fact and law.

The need to determine whether an inherent defect exists not only satisfies Rule 23's

1  commonality requirement, it raises the overarching common question that has resulted in

2  class treatment in other automotive defect cases.  *See*, *e.g.*, *Hanlon*, 150 F.3d at 1020

3  (allegedly defective rear liftgate latches); *Browne v. American Honda Motor Co., Inc.*, Case

4  No. 09-cv-06750, 2010 WL 9499072, at *1 (C.D. Cal. 2010) (allegedly defective braking

5  system); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 595-97 (C.D. Cal. 2008)

6  (allegedly defective flywheels); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D.

7  Cal. 2004) (allegedly defective engine intake manifolds); *Daffin v. Ford Motor Co.*, 458

8  F.3d 549, 552 (6th Cir. 2006) (allegedly defective throttle body assembly); *see also*, *Wolin v.*

9  *Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1172 (9th Cir. 2010) (holding that whether the

10  LR3's alignment geometry was defective, whether Land Rover was aware of the defect,

11  whether Land Rover concealed the nature of the defect in violations of consumer protection

12  statutes, and whether Land Rover was obligated to pay for or repair the alleged defect

13  pursuant to the express or implied terms of its warranties are all common issues of law or

14  fact that satisfy the commonality requirement).

15         **4.**     **Plaintiffs' Claims Are Typical of the Proposed Settlement Class**

16       "In determining whether typicality is met, the focus should be on the defendants'

17  conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T*

18  *Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).  Thus, typicality is "satisfied

19  when each class member's claim arises from the same course of events, and each class

20  member makes similar legal arguments to prove the defendant's liability." *Armstrong v.*

21  *Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted).

22       Here, Plaintiffs assert that Class Members' claims arising from the defect are

23  reasonably coextensive with the legal claims asserted by the named Plaintiffs. (FAC ¶¶ 16-

24  50.) Each Class Member's claims arise from the same alleged course of conduct—that

25  HMA knowingly failed to disclose that the DCT is defective to its customers. Plaintiffs'

26  claims are thus typical of the Class, as "they are reasonably coextensive with those of absent

27  class members."  Plaintiffs and Class Members would also similarly benefit from the relief

28  provided by the Settlement.  Accordingly, typicality is satisfied.

1    **5.     Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the**
2    **Interests of the Proposed Settlement Class**

3    Adequacy is satisfied because "the representative parties will fairly and adequately

4    protect the interests of the class," Fed. R. Civ. P. 23(a)(4); specifically: (a) the proposed

5    representative Plaintiffs do not have conflicts of interest with the proposed class, and, (b)

6    Plaintiffs are represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

7    Here, Plaintiffs are adequate class representatives, as they have no conflict of interest with

8    the proposed Class.  In fact, Plaintiffs share a common interest in holding HMA accountable

9    for selling vehicles with an alleged DCT defect that they did not disclose to their customers.

10   Moreover, there is no "'irreparable conflict of interest,' either in the structure of the class or

11   the terms of the settlement." *Volkswagen "Clean Diesel,"* 895 F.3d at 608.  In addition,

12   Plaintiffs are represented by competent counsel well-versed in prosecuting automotive

13   litigation and/or class action matters. (*See, e.g.*, Ozzello Decl. ¶¶ 10-13, Ex. 2; Isaacson

14   Decl. ¶¶ 4-11.)

15   **6.     Common Issues Predominate Over Individual Issues**

16   "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking

17   class certification must also show that the action is maintainable under Fed. R. Civ. P.

18   23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022.  The predominance inquiry under Rule

19   23(b)(3) asks "whether the common, aggregation-enabling issue are more prevalent or more

20   important than the non-common, aggregation-defeating, individual issues." *Tyson Foods v.*

21   *Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).

22   "When one or more of the central issues in the action are common to the class and

23   can be said to predominate, the action may be proper under Rule 23(b)(3) even though other

24   important matters will have to be tried separately, such as damages or some affirmative

25   defenses peculiar to some individual class members." *Id.*  So long as there is a "clear

26   justification for handling the dispute on a representative rather than an individual basis"

27   (*Hanlon*, 150 F.3d at 1022), the inquiry is satisfied. If "just one common question

28   predominates" the action may be considered proper under Rule 23(b)(3), and regardless

1  whether "other important matters [would] have to be tried separately." *See Hyundai*, 926

2  F.3d at 557.

3      Manageability at trial is not a concern in the class action settlement context, "for the

4  proposal is that there be no trial." *Amchem*, *supra*, 521 U.S. at 620.  Indeed, the

5  predominance inquiry in the context of a nationwide settlement should be considered under

6  "three guideposts":

7  > [F]irst, that commonality is informed by the defendant's
conduct as to all class members and any resulting injuries
8  > common to all class members; second, that variations in state
law do not necessarily defeat predominance; and third, that
9  > concerns regarding variations in state law largely dissipate
when a court is considering the certification of a settlement
10  > class.

11  *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc); *see also, Wakefield v.*

12  *Wells Fargo & Co.*, No. C 13-05053 LB, 2014 WL 7240339, at *4 (N.D. Cal. Dec. 18,

13  2014) (adopting *Sullivan*'s analysis that state law variations dissipate in a settlement class).

14  Under similar guiding principles, the Ninth Circuit en banc court recently confirmed that

15  predominance is not defeated by certifying a nationwide settlement class alleging state law

16  violations.  *See Hyundai*, 926 F.3d at 561-62.

17      Here, for purposes of settlement, the predominance test is satisfied, as the proposed

18  Settlement makes the relief for reimbursement, cash payment/rebate certificates, and partial

19  reimbursement for trade-ins/sales available for all Class Members based on easily

20  ascertainable criteria, bypassing whatever individual evidentiary and factual issues that

21  could arise in litigation in determining liability or damages.  Consequently, common

22  questions predominate over individual issues that might have arisen had this action

23  continued to be litigated.

24         **7.**    **A Class Settlement Is Superior to Other Available Means of**

25                **Resolution**

26      Similarly, there can be little doubt that resolving all Class Members' claims through a

27  single class action is superior to a series of individual lawsuits.  "From either a judicial or

28  litigant viewpoint, there is no advantage in individual members controlling the prosecution

of separate actions.  There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrate the advantages of a collective bargaining and resolution process.

The damages sought by each Class Member here, while representing an important purchase for Class Members, are not so large as to weigh against the certification of a class action. *See Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364, at **32-33 (N.D. Cal. Sep. 5, 2008) (finding that class members had a small interest in personally controlling the litigation even where the average amount of damages were $25,000-$30,000 per year). The sheer number of separate trials that would otherwise be required also weighs in favor of settlement.

There should therefore be little doubt that resolving all settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Finally, in the settlement context, there can be no objection that class proceedings would present the sort of intractable management problems that sometimes override the collective benefits of class actions, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

**B.      The Court Should Grant Preliminary Approval of the Class Settlement**

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed.  Fed. R. Civ. P. 23(e)(1)(A). F.R.C.P. 23(e) provides that if the proposal would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of

1   trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the

2   class, including the method of processing class-member claims; (iii) the terms of any

3   proposed award of attorney's fees, including timing of payment; and (iv) any agreement

4   required to be identified under Rule 23(e)(3); and, (d) the proposal treats class members

5   equitably relative to each other.

6        At the preliminary approval stage, the Court evaluates whether the settlement is

7   within the "range of reasonableness," and whether notice to the class and the scheduling of a

8   final approval hearing should be ordered.  *See generally,* 3 Conte & Newberg, *Newberg on*

9   *Class Actions*, § 7.20 (4th ed. 2002).  For preliminary approval, scrutiny of the settlement is

10  reduced.  *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d

11  708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to meet the 'fair,

12  reasonable and adequate' standard is lowered.").  The Court need only review the parties'

13  proposed settlement to determine whether it is within the permissible "range of possible

14  judicial approval" and thus, whether the notice to the class and the scheduling of the formal

15  fairness hearing is appropriate.  Newberg, § 11:25. Preliminary approval should be granted

16  if "the proposed settlement appears to be the product of serious, informed, non-collusive

17  negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to

18  class representatives or segments of the class, and falls within the range of possible approval.

19  *Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016)

20  (quoting *In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

21       The Court must, however, assure itself that the settlement was not the product of

22  "collusion" by checking for "subtle signs that class counsel have allowed pursuit of their

23  own self-interests . . . to infect the negotiations." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th

24  Cir. 2015). The Ninth Circuit has identified three such signs: (1) "when counsel receive a

25  disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear

26  sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee

27  request by class counsel); and (3) when the parties create a reverter that returns unclaimed

28  fees to the defendant (the "*Bluetooth* Factors"). *In re Bluetooth Headset Prod. Liab. Litig.*,

1    654 F.3d 935, 947 (9th Cir. 2011). However, "for all these factors, "subtle signs," and red

2    flags… the underlying question remains this: **Is the settlement fair**?" *Volkswagen "Clean*

3    *Diesel,"* 895 F.3d at 611 (emphasis added).

4         For the reasons discussed in detail below, this Settlement is fair, and with the

5    exception of the "clear sailing" provision (*see infra*), none of the *Bluetooth* Factors are

6    present here. Plaintiffs' Counsel do not seek a disproportionate share of fees and there is no

7    "reverter" of unclaimed funds to Hyundai as the Settlement does not provide for the

8    establishment of a common fund. Rather, the settlement was negotiated at arm's-length after

9    multiple mediations before distinguished mediators and jurists; namely, the Hon. Russell

10   Bostrom (Ret.) and the Hon. Howard B. Wiener (Ret.). Further, by agreeing to resolve

11   attorneys' fees amicably, HMA's counsel averted the possibility that Class Counsel might

12   apply for, and receive, a much larger award, and thus avoided a "second major litigation" on

13   attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for

14   attorney's fees should not result in a second major litigation.").

### 1.    The Settlement is Entitled to a Presumption of Fairness

16        In reviewing what is "otherwise a private consensual agreement negotiated between

17   the parties to a lawsuit," the district court's scrutiny should be "limited to the extent

18   necessary to reach a reasoned judgment that the agreement is not the product of fraud or

19   overreaching by, or collusion between, the negotiating parties and that the settlement, taken

20   as a whole, is fair, reasonable and adequate in all concerned." *Officers for Justice v. Civil*

21   *Service Comm'n*, 668 F.3d 615, 625 (9th Cir. 1982).

22        A non-collusive settlement, negotiated with the involvement of a respected mediator,

23   is entitled to "a presumption of fairness." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295

24   F.R.D. 438, 450 (C.D. Cal. 2014).  The proposed Settlement is the product of multiple

25   mediations before two respected mediators, the Hon. Russell Bostrom (Ret.) and the Hon.

26   Howard B. Wiener.  Based on these factors, the Settlement is entitled to a presumption of

27   fairness.  *See In re Toys "R" Us-Del FACTA Litig.,* 295 F.R.D. at 450 (finding a

28   presumption of fairness where the settlement was reached following a mediation).

### 2.     The Extent of Discovery Completed Supports Preliminary Approval

Both before and after the action was filed, Plaintiffs thoroughly investigated and researched their claims, which allowed Plaintiffs' Counsel to better evaluate Hyundai's representations and omissions concerning the functionality of the DCTs.  Among other tasks, Plaintiffs fielded hundreds of inquiries from putative Class Members and investigated many of their reported claims.  They consulted and retained expert Susan Thompson, PA/CFF Hemming Morse, LLP, Certified Public Accountants, to assist them in quantifying the value of the benefits conferred by the settlement. (Ozzello Decl. ¶ 5.)

Plaintiffs also researched publicly available materials and information provided by the National Highway Traffic Safety Administration ("NHTSA") concerning consumer complaints about the DCTs. They reviewed and researched consumer complaints and discussions of DCT-related problems in articles and forums online, in addition to various manuals and technical service bulletins ("TSBs") discussing the alleged defect. *Id.* Finally, they conducted research into the various causes of actions and other similar automotive actions. (Ozzello Decl. ¶ 6.)

In response to Plaintiffs' written discovery efforts, Plaintiffs received over **two hundred thousand pages of documents**, including spreadsheets with thousands of rows of data, owners' manuals, maintenance and warranty manuals, internal Hyundai investigation reports, TSBs, field reports, warranty data, etc. (Ozzello Decl. ¶ 7.) All of this information was thoroughly and meticulously reviewed by Class Counsel.

In addition to written discovery, Plaintiffs took the depositions of Hyundai's corporate representatives: Wayne Gates (Director of the Hyundai United States Safety Office), Gregory Webster (Senior Group Manager of the Engineering Design and Analysis Department), and Sandy Zielomski (Senior Group Manager for Customer Claims). (Ozzello Decl. ¶ 8.)

In reviewing the above discovery, evidence, and testimony, Plaintiffs identified information that was instrumental to the case and to Plaintiffs' efforts during mediation.

1    Finally, over the course of litigation, Plaintiffs responded to hundreds of Class Members

2    who contacted Plaintiffs' Counsel to report problems with their Class Vehicles and seek

3    relief. Plaintiffs' Counsel also conducted detailed interviews with Class Members regarding

4    their pre-purchase research, their purchasing decisions, and their repair histories, and

5    developed a plan for litigation and settlement based in part on Class Members' reported

6    experiences with their Class Vehicles and with Hyundai dealers. (Ozzello Decl. ¶ 9.)

### 3.    The Proposed Settlement Is Well Within the Range of Reasonableness

9    The proposed Settlement is well within the range of reasonableness, particularly

10   when compared to the likely outcome of prosecuting the action.  In its evaluation, "the

11   district court's determination is nothing more than an amalgam of delicate balancing, gross

12   approximations, and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotation

13   omitted).  Thus, there is "no single formula" to be applied, but the court may presume that

14   the parties' counsel and the mediator arrived at a reasonable range of settlement by

15   considering the plaintiffs' likelihood of recovery.  *Rodriguez v. West Pub. Corp.*, 463 F.3d

16   948, 965 (9th Cir. 2009).  And this Circuit expressly rejected any requirement that the

17   settling parties value maximum damages that can be obtained at trial, as that figure would be

18   inherently speculative.  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) ("[N]ot

19   only would such a requirement be onerous, it would often be impossible... [since] the

20   amount of damages of a given plaintiff (or class of plaintiffs) has suffered in a question of

21   fact that must be proved at trial.").

22   This Settlement offers substantial benefits to Class Members, including

23   reimbursement for out-of-pocket costs, payments for multiple Service Visits, and partial

24   reimbursement for Class Vehicle trades and sales.  Thus, when weighed against the risk of

25   further litigation, the Settlement clearly falls within the range of reasonableness.  To be sure,

26   while Plaintiffs believe that their case is strong on the merits, HMA has raised a number of

27   substantive defenses that present serious risks to Plaintiffs' case.  These defenses include,

28   among others, that no DCT defect exists, or that, even if a defect existed, Plaintiffs would

not be able to show that it constitutes a safety concern.  And, HMA would likely have argued that individual issues as to liability and damages would prevail over common issues.

As a threshold matter, the existence of a defect may not lead to legal liability under federal or state statutes.  *See, e.g.*, *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991-92 (N.D. Cal. 2010) (granting defendant's motion for summary judgment and finding alleged ignition-lock defect not a safety risk), *aff'd*, 462 F. App'x 660 (9th Cir. 2011).  Accordingly, Plaintiffs would have to meet a high burden to establish violations of state and federal consumer protection and warranty statutes.

Moreover, had litigation continued, HMA would have argued that the variations in the DCT and in the defects also preclude class certification of the consumer fraud claims for omission.  In addition, HMA would have argued that, among other individual variations, questions regarding each customer's proper maintenance of the vehicle, driving conditions, and repair attempts, such as whether the vehicle was taken to the dealer in a reasonable time period for repairs, among others, would preclude certification of the warranty claims.

While Plaintiffs would vigorously dispute these claims, consumers bringing automotive defect actions are frequently denied class certification due to lack of common proof.[6]  Recently, a California district court denied class certification involving a theory based on material omission of a similar defect.  *See Philips v. Ford Motor Co.*, No. 14-02989, 2016 WL 7428810, *17 (N.D. Cal. Dec. 22, 2016) (finding that the plaintiffs failed to present a compelling damages model supporting a class wide determination regarding Ford's alleged omission of a "systemic defect" in the vehicle's electronic steering system).  *Philips* underscores the heightened litigation risk for Plaintiffs seeking class certification.

This body of recent case law demonstrates that, had the case continued, "plaintiffs

---

[6] *See, e.g.*, *Grodzitsky v. Am. Honda Motor Co.*, No. 2-01142-SVW, 2014 U.S. Dist. LEXIS 24599 (C.D. Cal. Feb. 19, 2014) (denying certification due to lack of evidence that common materials were used for all defective "window regulators" in the class); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 553 (C.D. Cal. 2012) ("There is also no evidence that a single design flaw that is common across all of the drains in question is responsible for the alleged water leak defect…").

1   [would] face[] a substantial risk of incurring the expense of a trial without any recovery." *In*

2   *re Toys "R" Us-Del FACTA Litig.*, 295 F.R.D. at 451.  Indeed, the risk of continuing

3   litigation, including the risk of new adverse statutory or case law, increased costs, and

4   expiration of a substantial amount of time, weigh heavily in favor of settlement.  *Rodriguez*,

5   463 F.3d at 966.  In particular, Plaintiffs shoulder exceedingly high financial risks in

6   pursuing this action.  A class action against a major automotive manufacturer, where

7   Plaintiffs allege that over one hundred and thirty thousand vehicles suffer a serious defect,

8   has the strong potential to engulf plaintiffs and attorneys in protracted, resource-draining

9   court battles.

10        In a contested certification motion, HMA would likely submit expert testimony from

11   a HMA engineer showing that the DCT for various Class Vehicles differs in kind.  Plaintiffs

12   would rely on the testimony of a technical expert to dispute the import of these minor part

13   variations, along with that of an expert on consumer expectations and a damages expert.

14   These hefty costs would have to be advanced by Plaintiffs and Class Counsel and would

15   add significantly to the risks of proceeding in litigation.  *See Aarons v. BMW of N. Am. LLC*,

16   No. 11-7667, 2014 U.S. Dist. LEXIS 118442, at *29-31 (C.D. Cal. Apr. 29, 2014)

17   (approving a settlement for repairs/reimbursement of transmission defect and observing that

18   "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive

19   litigation that induce consensual settlements." [citation omitted]).

20        Aside from certification risk, Plaintiffs could face the termination of their action at

21   summary judgment or at trial. For instance, in a long-running action alleging failure to

22   disclose a known defect involving the same class counsel, summary judgment was recently

23   entered in favor of the automotive manufacturer after years of litigation and exorbitant out-

24   of-pocket costs, underscoring the difficulties faced by Plaintiffs here.  *See Coba v. Ford*

25   *Motor Co.*, No. 12-1622-KM, 2017 WL 3332264 (D.N.J. Aug. 4, 2017).

26        Even if Plaintiffs were to certify the Class on a contested motion, and prevail on

27

28

1    dispositive motions and at trial,[7] the years of litigating this action would almost certainly

2    diminish the value of the relief to Class Members, as their Class Vehicles' value will

3    depreciate over time.  Any restitution remedies they could obtain would also be subject to

4    offsets for car owners' use of the vehicles.  For example, even under consumer-friendly

5    California law (the Song-Beverly Consumer Warranty Act), a repurchase would require an

6    offset for the mileage driven.  *See* Cal. Civ. Code § 1793.2(d)(2)(C); *see also Robbins v.*

7    *Hyundai Motor America, Inc.*, 2015 WL 304142, at *6 (C.D. Cal. Jan. 14, 2015).  State law

8    offsets could also apply to claims under the federal Magnuson-Moss Warranty Act, which

9    applies state substantive law for federal causes of action.  *See Clemens v. DaimlerChrysler*

10   *Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[C]laims under the Magnuson-Moss Act stand

11   or fall with… express and implied warranty claims under state law").

12        In light of the substantial risks of continued litigation, including the risk of

13   maintaining class certification, the significant relief secured for the Class by the proposed

14   Settlement should be viewed as a fair, reasonable, and adequate compromise of the issues in

15   dispute.

16                    **4.      Equitable Method of Allocating Relief to Class Members**

17        The Rule 23(e)(2) factor turns on whether the proposed settlement "treats class

18   members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern

19   could include whether the apportionment of relief among class members takes appropriate

20   account of differences among their claims, and whether the scope of the release may affect

21   class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P.

22   23(e)(2)(D), Advisory Committee's Notes.

23        Here, the settlement generally treats all class members the same. All current owners

24   and lessees are equally entitled to the relief and remedies provided by the Settlement.  To the

25

26        [7] The inherent risks of proceeding to trial weigh in favor of settlement.  *See In re*
     *Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, *7-8 (N.D. Cal. Nov. 26,
27   2007) (recognizing that "inherent risks of proceeding to… trial and appeal also support
     the settlement").
28

extent they receive different compensation under the settlement, it will be proportionate to their actual harms.  For example, only those class members who spent money on DCT repairs/service will be reimbursed for such expenses.  *See, e.g.*, *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct"). Once reimbursed for their repair expenses, those Class Members will stand in an identical posture to all other Class Members—at that point, none will have suffered unreimbursed, out-of-pocket repair costs.  Similarly, Class Members who made, e.g., four Service Visits will receive more compensation that those who made only two.

Much the same could be said about those Class Members who experienced the Defect firsthand or those who decide to trade in or sell their vehicles after receiving notice of the settlement.  Not all class members will suffer these types of harms, but those who do will be eligible for the same compensation. The same is true for the class's release: all Class Members will provide an identical release—it does not vary by class member or subset of the class.  As a result, the settlement treats all class members equitably, further supporting approval of the settlement.  Finally, though the class representatives will receive an additional $5,000, the extra payment is in recognition for the service they performed on behalf of the class, and the Ninth Circuit has approved such awards.[8]

## 5. The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs

At the conclusion of a successful class action, the plaintiff may apply to the Court for an award of "reasonable attorneys' fees and non-taxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h).  In considering the fee application, courts

---

[8] *Boyd v. Bank of Am. Corp.*, No. 13-cv-0561-DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003)). The awards here are comparable to the "typical incentive awards in the Ninth Circuit, where $5,000 is presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-cv-02577, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016).

1    must ensure that the fees awarded are reasonable.  *See In re Bluetooth*, 654 F.3d at 941. In

2    their evaluation, however, district courts must account for the fact that "the parties are

3    compromising to avoid litigation." *Laguna v. Coverall North America*, 753 F.3d 918, 922

4    (9th Cir. 2014) *vac'd as moot*, 2014 U.S. App. LEXIS 21950 (9th Cir. Nov. 20, 2014).

5    Accordingly, "the district court need not inquire into the reasonableness of the fees even at

6    the high end with precisely the same level of scrutiny as when the fee amount is litigated."

7    *Id.* (quoting *Staton v. Boeing Co*., 327 F.3d 938, 966 (9th Cir. 2003)). This standard is

8    consistent with the strong policy discouraging a "second major litigation" arising from a

9    request for attorneys' fees. *Hensley*, 461 U.S. at 437 ("Ideally, of course, litigants will settle

10   the amount of a fee").

11          Here, the agreed-upon attorneys' fees and expenses in the amount of $2,000,000 (*see*

12   Settlement Agreement ¶ 5.1) is the product of a non-collusive adversarial negotiation

13   following two mediations with the Hon. Russell Bostrom (Ret.) and the Hon. Howard B.

14   Wiener (Ret.). (Ozzello Decl. ¶¶ 3-4.)  The en banc court in *Hyundai* recently found that

15   separate settlement and fee negotiations provide another indication of non-collusiveness.

16   *Hyundai,* 926 F.3d at 568.

17          Moreover, the parties need not value the settlement when the relief "is difficult or

18   impossible" to calculate.  *Hyundai*, 926 F.3d at 570.  Here, one of the most valuable

19   benefits, the trade-in program, cannot be calculated with precision.  Nonetheless, the cash

20   benefits alone can be valued at $11.27 million. (Thompson Dec. ¶¶ 13-15.)  This amount

21   eclipses the requested fees, supporting non-collusiveness.  Furthermore, by agreeing to

22   resolve attorneys' fees amicably, HMA's counsel averted the possibility that Class Counsel

23   might apply for, and receive, a much larger award.  Accordingly, this Court's review of the

24   reasonableness of the fee request should take into consideration the Parties' bargain,

25   including the important fact that the attorneys' fees, negotiated well after the Class relief had

26   been finalized, are discrete from the funds that have been designated as relief for the Class.

27   Plaintiffs will file a formal motion for the negotiated attorneys' fees and costs once

28   preliminary approval of the Settlement is granted.

|     |     |
| --- | --- |
| 1 | **6.      The Views of Experienced Counsel Should Be Accorded** |
| 2 | **Substantial Weight** |
| 3 | The fact that sophisticated parties with experienced counsel have agreed to settle |
| 4 | their dispute should be given considerable weight by courts, since "parties represented by |
| 5 | competent counsel are better positioned than courts to produce a settlement that fairly |
| 6 | reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig*., 47 |
| 7 | F.3d 373, 378 (9th Cir. 1995).  Here, the Parties achieved a settlement after a thorough |
| 8 | review of relevant documents and testimony, as well as a rigorous analysis of the Parties' |
| 9 | claims and defenses.  The expectations of all Parties are embodied by the Settlement, which, |
| 10 | as set forth above, is non-collusive, being the product of arms'-length negotiations and |
| 11 | finalized with the assistance of an experienced mediator.  The Parties were represented by |
| 12 | experienced class action counsel possessing significant experience in automotive defect and |
| 13 | class action matters.  (*See, e.g.*, Ozzello Decl. ¶¶ 10-13, Ex. 2; Isaacson Decl. ¶¶ 4-11.) |
| 14 | Likewise, HMA's counsel, Bird Marella Boxer Wolpert Nessim Drooks Lincenberg & |
| 15 | Rhow, P.C., is a renowned defense firm.  The Parties' recommendation to approve this |
| 16 | Settlement should therefore "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, |
| 17 | at *5 (crediting the experience and views of counsel in approving a settlement resolving |
| 18 | automotive defect allegations). |
| 19 | **V.     CONCLUSION** |
| 20 | The Parties have negotiated a fair and reasonable settlement.  Accordingly, Plaintiffs |
| 21 | move the Court to preliminarily approve the Settlement Agreement; direct the dissemination |
| 22 | of notice to the class as proposed; and set a hearing date and briefing schedule for final |
| 23 | Settlement approval and Plaintiffs' fee and expense application. |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1   Dated:  July 19, 2019                        Respectfully submitted,

2                                            By: /s/ Mark A. Ozzello

3                                                Mark A. Ozzello
                                                 Tarek H. Zohdy
4                                                Cody R. Padgett
                                                 Trisha K. Monesi
5                                                **CAPSTONE LAW APC**

6                                                Troy Isaacson
                                                 Norberto Cisneros
7                                                **MADDOX, ISAACSON, CISNEROS LLP**

8                                                Attorneys for Plaintiffs Nicholas Wylie,

9                                                Shawna Wylie, Timothy Ryan, and

10                                               Gregory Perger

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28