Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Troy L. Isaacson, Esq., (Cal. Bar No. 186834, NV Bar No. 6690)
Norberto J. Cisneros, Esq., (Cal. Bar No. 182001, NV Bar No. 8782)
Barbara M. McDonald, Esq., (Cal. Bar No. 281722, NV Bar No. 11651)
MADDOX | ISAACSON | CISNEROS LLP
11920 Southern Highlands Parkway, Suite 100
Las Vegas, Nevada 89141
Telephone:    (702) 366-1900
Facsimile:    (702) 366-1999

Attorneys for Plaintiffs Nicholas Wylie,
Shawna Wylie, Timothy Ryan, and Gregory Perger

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS WYLIE, SHAWNA WYLIE (fka BROWN), TIMOTHY RYAN, and GREGORY PERGER, individually, and on behalf of a class of similarly situated individuals,<br><br>          Plaintiffs,<br><br>        v.<br><br>HYUNDAI MOTOR AMERICA, a California corporation,<br><br>          Defendant. | Case No.: 8:16-cv-02102-DOC-JCG<br><br>Hon. David O. Carter<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    March 2, 2020<br>Time:    8:30 a.m.<br>Place:   Courtroom 9D |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 2, 2020, at 8:30 a.m., in Courtroom 9D of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, California, 92701, the Honorable David O. Carter presiding, Plaintiffs Nicholas Wylie, Shawna Wylie, Timothy Ryan, and Gregory Perger will, and hereby do, move this Court to award attorneys' fees, costs and expenses, and class representative incentive awards. Plaintiffs seek reasonable attorneys' fees in the amount of $1,961,340, reimbursable costs and expenses in the amount of $38,660, and incentive awards of $5,000, each. The requested fees are reasonable under the lodestar method, as they are of product of reasonable hours and reasonable rates enhanced by a modest multiplier of 1.32. The requested fees are also reasonable as a percentage of the benefits conferred on the Class.

This Motion is based on:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees, Costs, and Class Representative Incentive Awards incorporated herewith; (3) the Declaration of Tarek Zohdy; (4) the Declaration of Troy Isaacson; (5) the [Proposed] Order filed concurrently herewith; (6) the records, pleadings, and papers filed in this action; and (7) on such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

Dated:  December 12, 2019                    Respectfully submitted,

By:  /s/ Tarek H. Zohdy
Tarek H. Zohdy
Cody R. Padgett
Trisha K. Monesi
**CAPSTONE LAW APC**

Troy Isaacson
Norberto Cisneros
**MADDOX, ISAACSON, CISNEROS LLP**

Attorneys for Plaintiffs Nicholas Wylie,
Shawna Wylie, Timothy Ryan, and
Gregory Perger

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  FACTS AND PROCEDURE ...................................................................3

    A.   Plaintiffs' Experiences with the Class Vehicles .........................3

    B.   Overview of the Litigation and Settlement Negotiations ...........4

III. SETTLEMENT BENEFITS ...................................................................5

    A.   Reimbursement for Diagnostic Visits and Repairs ....................5

    B.   Compensation for Unsatisfactory Performance .........................5

    C.   Compensation for Loss in Value .................................................6

    D.   Informational Brochure ...............................................................7

IV.  ARGUMENT............................................................................................7

    A.   The Parties Have Separately Negotiated Fees That Will Not
           Affect Class Benefits ...................................................................7

    B.   The Fee Request is Reasonable Under the Lodestar Method ...................8

        1.   The Hours Expended Are Reasonable ............................................9

        2.   The Hourly Rates are Reasonable...................................................13

        3.   Class Counsel's Lodestar Should Be Enhanced with a
             Modest Contingent Risk Multiplier...............................................15

             (a)   The Contingent Risk Borne by Class Counsel, the
                    Complexity of Litigation, and the Expected
                    Future Work All Support the Application of the
                    Requested Multiplier ............................................................15
             (b)   The Results Achieved and the Awards in Similar
                    Cases Support the Application of a Multiplier.................19

        4.   A Percentage Cross-Check Confirms the
             Reasonableness of the Requested Fees .........................................20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.    The Expenses Advanced by Class Counsel Should be Reimbursed ................................................................21

D.    The Requested Incentive Awards Are Fair and Reasonable and Should Be Approved ......................................................22

V.    CONCLUSION ..........................................................................22

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

1

# TABLE OF AUTHORITIES

2

3

**FEDERAL CASES**

4

*Aarons v. BMW of North America*, No. 11-7667-PSG, 2014 U.S. Dist.

5

    LEXIS 118442 (C.D. Cal. Apr. 29, 2014)..........................................................14

6

*Alin v. Honda Motor Co.*, No. 08-4825, 2012 WL 8751045 (D.N.J. Apr. 13,

7

    2012) ...............................................................................................................19

8

*Asghari v. Volkswagen Grp. Of America*, No. 13-02529-MMM, 2015 WL

9

    12732462 (May 29, 2015) ..............................................................................14

10

*Blum v. Stenson*, 465 U.S. 886 (1984)...............................................................13

11

*Boeing Co. v. Ven Gemert*, 444 U.S. 472 (1980) ...............................................21

12

*Bravo v. Gale Triangle, Inc.*, No. 16-03347 BRO, 2017 WL 708766 (C.D.

13

    Cal. Feb. 16, 2017).........................................................................................14

14

*Browne v. Am. Honda Motor Co.*, No. 09-06750 MMM, 2010 WL 9499073

15

    (C.D. Cal. Oct. 5, 2010) ................................................................................19

16

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ...................... 14, 18

17

*Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012) ...................17

18

*Coba v. Ford Motor Co.*, No. 12-1622-KM, 2017 WL 3332264 (D.N.J. Aug.

19

    4, 2017) ...........................................................................................................18

20

*Etter v. Thetford Corporation*, No. 13-00081-JLS, 2017 WL 1433312 (C.D.

21

    Cal. Apr. 14, 2017) ........................................................................................14

22

*Fadhl v. City and County of San Francisco*, 859 F.3d 649 (9th Cir. 1988).....................18

23

*Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997 (9th Cir. 2002)...............16

24

*Fox v. Vice*, 131 S. Ct. 2205 (2011) ...................................................................10

25

*Grodzitsky v. Am. Honda Motor Co.*, No. 2-01142-SVW, 2014 U.S. Dist.

26

    LEXIS 24599 (C.D. Cal. Feb. 19, 2014).......................................................17

27

*Hensley v. Eckehart*, 461 U.S. 424 (1983) .......................................................7, 8

28

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...............7, 9

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ..............................8, 20

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................21

*In re Toyota Motor Corp.*, No. 8:10ML-02151-JVS, 2013 U.S. Dist. LEXIS 94485 (C.D. Cal. June 17, 2013)...................................................................19

*In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155 (D. Mass. 2015) ........................................................................... 18, 19, 20

*In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ...................................................................................16

*Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013)................................................................21

*Kearney v. Hyundai Motor Am.*, No. 09-1298, 2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013).................................................................13

*Klee v. Nissan N. Am., Inc.,* 2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July 7, 2015) ..........................................................................................14

*Laguna v. Coverall North America,* 753 F.3d 918 (9th Cir. 2014)....................................7

*MacDonald v. Ford Motor Co.*, No. 13 -02988-JST, 2016 WL 3055643 (May 31, 2016)............................................................................... 14, 15

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995)........................8

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008).......................................10

*O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) ...................................................................................................19

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) .................................................................................................8, 13

*Philips v. Ford Motor Co.*, No. 14-02989, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016)...........................................................................................17

*Rodriguez v. W. Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................................22

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (1990) ......................21

*Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010)....................................17

1    *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................. 7

2    *Steiner v. American Broad. Co.*, 248 Fed. Appx. 780 (9th Cir. 2007) ............................ 15

3    *Trew v. Volvo Cars of N. Am., LLC*, No. S-05-1379-RRB, 2007 U.S. Dist.

4       LEXIS 55305 (S.D. Cal. July 31, 2007)........................................................... 19

5    *Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland*

6       *Ins. Co.*, 460 F.3d 1253 (9th Cir. 2006) ......................................................... 21

7    *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995).................... 15

8    *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)................................... 8, 15, 16

9    *Warner v. Toyota Motor Sales, U.S.A.*, No. 15-02171-FMO (C.D. Cal. May

10      21, 2017).......................................................................................... 18, 20

11    *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ...................... 21

12    *Winterrowd v. Am. Gen. Annuity Ins. Co.,* 556 F.3d 815 (9th Cir. 2009) ...................... 10

13    *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016) ...................... 9, 20

14

15    **S**TATE **C**ASES

16    *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008)........................................... 15

17    *Children's Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740 (2002)...................... 13

18    *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004) .............................. 15, 16, 19

19    *Horsford v. Board of Trustees of California State Univ.*, 132 Cal. App. 4th

20      359 (2005) ........................................................................................ 9, 16

21    *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009)........................................ 15

22    *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ................................................... 9, 16

23    *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170 (2007) ...................... 8

24    *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999 (1982) ........................... 13

25    *PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084 (2000).......................................... 10

26    *Serrano v. Priest*, 20 Cal. 3d 25 (1977) ...................................................... 8, 9, 18

27    *Serrano v. Unruh*, 32 Cal. 3d 621 (1982)......................................................... 10

28    *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495 (2009)........................ 15

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

*Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440 (2000).........................10

*Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128 (1998).............................................10

**FEDERAL STATUTES**

15 U.S.C. §§ 2301 *et seq.* (Magnuson-Moss Warranty Act.................................................8

Fed. R. Civ. P. 23(h).............................................................................................................7

**STATE STATUTES**

Cal. Civ. Code §§ 1750 *et seq.* (Cons. Legal Remedies Act (CLRA)).............................8

Cal. Civ. Code §§ 1790-1795.7 (Song-Beverly Consumer Warranty Act).......................8

**SECONDARY AUTHORITIES**

Hyundai Corporate News (Oct. 2, 2014),

    https://www.hyundaipressoffice.co.uk/release/559/..........................................................9

*Posner, Economic Analysis of Law* (4th ed. 1992)...........................................................15

MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

After having litigated this case on a wholly contingent basis since November 22, 2016, and having successfully negotiated a settlement that creates substantial benefits for the settlement class, Plaintiffs seek to recover reasonable attorneys' fees and costs/expenses of $2,000,000. Plaintiffs also move for incentive awards of $5,000, each, for their service on behalf of the class. The negotiated attorneys' fees and costs/expenses are part of a settlement that resolves Plaintiffs' allegations that certain vehicles manufactured by Defendant Hyundai Motor Co. ("Hyundai" or "HMA") had a transmission design defect that caused, among other problems, jerking, shuttering, shaking, failure to shift, stalling, delayed acceleration, and loss of power ("Alleged Defect").

The Settlement provides Class Members with immediate and valuable relief for the Alleged Defect in the form of:

- Reimbursement for Diagnostic Visits and Repairs. Class Members who incurred out-of-pocket costs for any type of repair, replacement, diagnosis, or inspection of a Class Vehicle relating to the DCT ("Qualifying Repair") will be entitled to **full reimbursement** for all reasonable costs incurred for the Qualifying Repairs, including the payment of insurance copays and deductibles.

- Compensation for Unsatisfactory Performance. Class Members will also be entitled to compensation for the unsatisfactory performance of their Class Vehicles. Specifically, Class Members who made multiple visits to an authorized Hyundai dealership within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer (whichever occurs first) to complain about a DCT-Related Symptom will have the option to claim compensation up to $675, or vehicle rebate certificates up to $1,350. Based on warranty data provided by Hyundai (which tracks only service visits associated with repairs under warranty rather than just service visits), a minimum of 71,345 Class Members are already eligible for the above relief (*see* Declaration of Susan Thompson ¶¶ 13-15 [ECF No. 39-3]), and if they submitted claims, would be eligible to receive a minimum of $11.27 million, or $22.5 million in vehicle rebate certificates (*see id.*).

- Compensation for Lost Value on Trade-In or Sale. Class Members who have traded-in or sold (or will trade-in or sell) their Class Vehicles may claim compensation after trading-in or selling their cars because of transmission-related

complaints. This valuable benefit for partial compensation is intended to offset the Class Vehicle's potential loss in value resulting from the Alleged Defect.

- Notice of DCT Software Upgrades. An Informational Brochure about the operation and function of the DCT, as well as notice regarding the most recent DCT software upgrades, will be distributed to Class Members within 30 calendar days after the Effective Date.

Plaintiffs and their counsel believe the Settlement is fair and reasonable, and provides Class Members similar, if not superior, remedies to what they could otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with continued litigation and trial. Class Counsel accordingly move to be compensated for their efforts and achievement on behalf of the Class, and for incentive awards to the named Plaintiffs who prosecuted this action.

Plaintiffs seek attorneys' fees of $1,961,340 and costs/expenses of $38,660, and incentive awards of $5,000, each. The fees will be paid by Hyundai, and not by Class Members or from a common fund. Awarding the negotiated fees in full will not affect the benefits for Class Members and will fairly compensate Class Counsel for their work in this case, as confirmed under the prevailing lodestar method for calculating fees. The lodestar is based on reasonable hours multiplied by reasonable rates, enhanced by a multiplier, if necessary. Class Counsel have expended a collective 2,820 hours prosecuting this case—a reasonable number given the complexities of this action and its settlement. Among the many tasks performed, Class Counsel have responded to hundreds of inquiries by Class Members, which includes reviewing Class Members' repair orders and answering questions about the Alleged Defect and the Settlement.

Class Counsel's hourly rates are reasonable and are within the range of rates repeatedly approved by the Central District. A modest multiplier of 1.32 is appropriate in light of the high contingent risk presented by this case and the outstanding results achieved, as well as to account for the additional hours that Class Counsel expects to put into this case after the Settlement is finally approved. Finally, the requested fee is a fraction of the monetary benefit conferred on the Class by this Settlement.

1   The expenses advanced by Class Counsel are those that would typically be billed to

2   a paying client and should be reimbursed. The requested incentive awards are similarly

3   reasonable and modest, and should be approved.

4   **II.     FACTS AND PROCEDURE**

5   This nationwide class action arises out of an alleged defect in DCTs designed and

6   manufactured by Hyundai for use in the 2015-2017 Sonata Eco, 2016-2017 Tucson, and

7   2016-2017 Veloster vehicles.  Hyundai premiered the DCT in October 2014, and

8   described it as "an improvement in fuel consumption and $CO_2$ emission compared to a

9   conventional six-gear automatic transmission, while acceleration performance also

10  improves."  The DCT features two dry clutches that, according to Hyundai, transfer engine

11  power "independently into the odd and even gear train ensuring it is ready to shift into the

12  next gear without any torque interruption."[1] Despite Hyundai's marketing claims, the

13  DCTs installed on Plaintiffs' vehicles were often unreliable and occasioned multiple trips

14  to their Hyundai dealerships for service. In fact, within weeks of purchasing their Class

15  Vehicles, each of the Plaintiffs experienced the shuddering, stalling, delayed acceleration,

16  and power loss that have become symptomatic of the DCTs.

17  **A.     Plaintiffs' Experiences with the Class Vehicles**

18  **Nicholas and Shawna Wylie:** Plaintiffs Nicholas and Shawna Wylie (the

19  "Wylies") are Nevada citizens who reside in Boulder City, Nevada. (*See* Dkt. No. 27, First

20  Amended Complaint ("FAC") ¶ 16.)  On October 31, 2015, the Wylies purchased a new

21  2016 Hyundai Veloster Turbo, equipped with a 7-speed DCT, from Henderson Hyundai

22  Superstore, an authorized Hyundai dealer in Clark County. (*Id.* at ¶ 17.)  On July 6, 2016,

23  the Wylies brought their vehicle to Henderson Hyundai complaining that the vehicle's

24  transmission felt like it was "slipping." (*Id.* at ¶ 19.)  A Hyundai service technician

25  inspected the vehicle but could not confirm any transmission-related faults, and no repairs

26

27  _____
    [1] Hyundai to showcase new downsized turbocharged engines and seven-speed

28  dual-clutch transmission in Paris, Hyundai Corporate News (Oct. 2, 2014),
    https://www.hyundaipressoffice.co.uk/release/559/.

were performed. (*Id.*) Although no faults were confirmed, the issues persisted. (*Id.* at ¶¶ 20-22.)

**Timothy Ryan:** Plaintiff Timothy Ryan ("Ryan") is a Nevada citizen who resides in Henderson, Nevada. (FAC ¶ 28.) On September 10, 2016, Ryan purchased a new 2016 Hyundai Tucson SUV, equipped with a 7-speed DCT, from Henderson Hyundai Superstore. (*Id.* at ¶ 29.)  Within a week of his purchase, Ryan began experiencing hesitation when he tried to accelerate the vehicle. (*Id.* at ¶ 31.)  He returned to Henderson Hyundai immediately to complain but was told that there was nothing wrong with the car. (*Id.*) Notwithstanding, the issues persisted. (*Id.* at ¶¶ 32-33.)

**Gregory Perger:** Plaintiff Gregory Perger ("Perger") is a California citizen who resides in Coarsegold, California. (FAC ¶ 38.)  On October 5, 2016, Perger purchased a new 2017 Hyundai Tucson, equipped with a 7-speed DCT, from an authorized Hyundai dealer in Fresno County, California. (*Id.* at ¶ 39.)  Shortly after purchase, Perger's vehicle began to turn off intermittently, requiring him to reset it by turning the car off and back on. (*Id.* at ¶ 41.) He also began experiencing delayed acceleration and SelectShift function failure. Perger returned several times to Lithia Hyundai of Fresno to complain. (*Id.* at ¶¶ 42-46.)

### B.    Overview of the Litigation and Settlement Negotiations

The Wylies filed the initial class action complaint on November 22, 2016.  As a result of several meetings regarding Defendant's anticipated motion to dismiss and the prospect of amending the complaint, the Parties agreed to participate in an early mediation. On March 15, 2017, the Court issued an order staying proceedings pending mediation.  On May 1, 2017, the Parties participated in a mediation with the Hon. Russell Bostrom (Ret.) of Judicate West.  The Parties were unable to settle at mediation, but agreed to revisit their settlement negotiations as the litigation resumed. (Declaration of Tarek Zodhy ["Zohdy Decl."] ¶ 2.)

Plaintiffs filed their First Amended Complaint on September 12, 2017, adding Ryan and Perger as additional named plaintiffs.  On November 27, 2017, the Parties participated

in another mediation with Judge Bostrom.  Although the Parties were able to close the gap between their respective positions, they were still unable to settle. (Zohdy Decl. ¶ 3.)

On January 26, 2018, Hyundai filed its Answer to Plaintiffs' First Amended Complaint. The Parties thereafter exchanged significant formal discovery and evidence, and eventually agreed to participate in a third mediation on May 30, 2018, this time before the Hon. Howard B. Wiener (Ret.). Although the Parties did not settle at the third mediation, with Justice Wiener's continuing guidance and months of continued negotiations, the Parties were eventually able to negotiate a complete settlement of the claims at issue. (Zohdy Decl. ¶ 4.)

## III.    SETTLEMENT BENEFITS

Class Counsel negotiated a Settlement with several tiers of benefits to provide relief to Class Members with varying experiences and suffering different types of harms associated with the Alleged Defect.

### A.    Reimbursement for Diagnostic Visits and Repairs

Class Members who incurred out-of-pocket costs for any type of Qualifying Repair will be entitled to full reimbursement for all reasonable costs incurred, including the payment of insurance copays and deductibles. (Settlement Agreement ¶ 2.2.) To be eligible for reimbursement, Class Members must submit a Claim Form no later than 120 days after the Notice Date. (*Id.*, Ex. C.) Reimbursements will be provided irrespective of whether Qualifying Repairs occurred at an authorized Hyundai dealership or elsewhere. (*Id.*)

### B.    Compensation for Unsatisfactory Performance

Under the Settlement, Class Members are eligible to receive substantial payments if they have experienced the symptoms related to the Alleged Defect, as demonstrated by having taken Class Vehicles to authorized HMA dealers for inspection and service. Class Members who made (or will make) two or more Service Visits will receive $225 for the second Service Visit, with increasing payments for each additional Service Visit, up to four visits. (Settlement Agreement ¶ 2.3.)  In lieu of such payments, Class Members may

1    elect to receive a "Vehicle Rebate Certificate," as defined in the Settlement Agreement,

2    toward the purchase of an HMA vehicle.  Class Members may collect up to $675 or

3    $1,350 in Vehicle Rebate Certificates. (*Id.*)  Importantly, Class Members need not have

4    incurred any out-of-pocket costs to be eligible for this payment.

5          Based on warranty data provided by Hyundai, which tracks Service Visits

6    associated with repairs under warranty (in Plaintiffs' estimation, however, the majority of

7    Service Visits had no associated repairs under warranty, and therefore would not be

8    captured by the warranty data), a minimum of 71,345 Class Members have already made

9    the requisite number of Service Visits to qualify for this remedy.  **If these Class Members**

10    **submitted claims for payment, they would be eligible to receive approximately**

11    **$11.27 million or $22.54 million in Vehicle Rebate Certificates, depending on which**

12    **remedy they select**. *See* Declaration of Susan Thompson ¶¶ 13-15.[2]

13        **C.**    **Compensation for Loss in Value**

14          Class Members who have, or will, trade or sell their Class Vehicles may claim

15    compensation in the form of money for partial reimbursement after having trading-in or

16    selling their cars because of transmission-related complaints. To make a claim for partial

17    reimbursement, Class Members must provide either: (1) documentary proof that they have

18    made a DCT-related complaint at least once within the first 20,000 miles of ownership of

19    their vehicle; or (2) a declaration signed under penalty of perjury that the Class Member

20    experienced DCT Related symptoms within the first 20,000 miles of ownership; and (3)

21    documentary proof of at least two Service Visits.  The amount of compensation under the

22    Customer Satisfaction Program will be based on the difference (the "Purchase/Sale Price

23    Difference") between the purchase price for the Class Vehicle (the "Purchase Price") and

24    the trade-in value or sale price of the Class Vehicle (the "Sale Price"), adjusted for mileage

25    and other factors, such as set forth in Paragraph 2.4 of the Settlement Agreement.

26

27            [2] Moreover, an additional 32,480 Class Members would qualify for this remedy if they
were to make even one additional Service Visit; i.e., the warranty data reflects that 32,480

28    Class Members each made one Service Visit, but if they were to make a subsequent Service
Visit, they too would qualify for the relief provided by this remedy.

### D.   Informational Brochure

Via the "Informational Brochure," HMA will inform Class Members about the operation and functionality of the DCT and provide them with notice of the most recent DCT software upgrades.  HMA will distribute the Informational Brochure within 30 calendar days after the Effective Date.

## IV.   ARGUMENT

### A.   The Parties Have Separately Negotiated Fees That Will Not Affect Class Benefits

At the conclusion of a successful class action, the plaintiff may apply to the Court for an award of "reasonable attorneys' fees and non-taxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). In considering the fee application, courts must ensure that the fees awarded are reasonable. *See In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 941 (9th Cir. 2011). In their evaluation, however, district courts must account for the fact that "the parties are compromising to avoid litigation." *Laguna v. Coverall North America*, 753 F.3d 918, 922 (9th Cir. 2014) *vac'd as moot*, 2014 U.S. App. LEXIS 21950 (9th Cir. Nov. 20, 2014). Accordingly, "the district court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Id*. (quoting *Staton v. Boeing Co*., 327 F.3d 938, 966 (9th Cir. 2003)). This standard is consistent with the strong policy discouraging a "second major litigation" arising from a request for attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee").

Here, the agreed-upon attorneys' fees and costs/expenses in the amount of $2,000,000 (*See* Settlement Agreement ¶ 5) are the product of non-collusive, adversarial negotiations conducted at arm's-length after multiple mediations before distinguished mediators and jurists; namely, the Hon. Russell Bostrom (Ret.) and the Hon. Howard B. Wiener (Ret.). The en banc court in *Hyundai* recently found that separate settlement and fee negotiations provide another indication of non-collusiveness. *In re Hyundai & Kia Fuel Econ.*

1    *Litig.*, 926 F.3d 539, 568 (9th Cir. 2019).

2           By agreeing to resolve attorneys' fees amicably, HMA's counsel averted the

3    possibility that Class Counsel might apply for, and receive, a much larger award, and thus

4    avoided a "second major litigation" on attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S.

5    424, 437 (1983) ("A request for attorney's fees should not result in a second major

6    litigation."). Accordingly, this Court's review of the reasonableness of the fee request

7    should take into consideration the Parties' bargain, including the important fact that the

8    attorneys' fees are discrete from the funds that have been designated as relief for the Class.

9    **B.     The Fee Request is Reasonable Under the Lodestar Method**

10          "In diversity actions, federal courts look to state law in determining whether a party

11   has a right to attorneys' fees and how to calculate those fees." *Mangold v. Calif. Public*

12   *Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The state law governing the

13   underlying claims in a diversity action "also governs the award of fees." *Vizcaino v.*

14   *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Here, California law governs, as

15   Plaintiffs have sued for relief under, *inter alia*, the Consumer Legal Remedies Act

16   ("CLRA"), and, as successful parties, they are entitled to fees under its one-way fee-

17   shifting provision.[3]

18          Under California law, the lodestar is the "starting point of every fee award."

19   *Serrano v. Priest*, 20 Cal. 3d 25, 48 n.23 (1977) ("*Serrano III*"). For any fee application

20

21   ─────────────────────
          [3] Under the mandatory fee-shifting provision of the CLRA, the Court "shall award
22   court costs and attorneys' fees to a prevailing plaintiff in a litigation" under that section.
     Cal. Civ. Code § 1780(e). "[A]n award of attorney fees to 'a prevailing plaintiff' in an
23   action brought pursuant to the CLRA is mandatory, even where the litigation is resolved
     by a pre-trial settlement agreement." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal.
24   App. 4th 170, 178-179 (2007). There is no dispute that Plaintiffs, having obtained the relief
     they sought when they filed suit, are the prevailing party. *See Parkinson v. Hyundai Motor*
25   *America*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) (authorizing fees under CLRA
     when the plaintiff obtained relief sought by way of a class action settlement). And
26   Hyundai recognized Plaintiffs' right to recover fees by entering into the Settlement
     Agreement under which it would not oppose Plaintiffs' request for attorneys' fees and
27   costs/expenses in an amount not exceeding $2,000,000. (Settlement Agreement ¶ 5.)
     Plaintiffs are also entitled to fees under the Magnuson-Moss Warranty Act, 15 U.S.C. §
28   2310(d)(2) and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1794(d).

subject to a statutory award, courts should "presume that the Legislature intended courts to use the prevailing lodestar adjustment method." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001); *accord In re Bluetooth*, 654 F.3d at 941 ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes."). This is because the lodestar method most effectively compensates successful counsel for "all the hours reasonably spent." *Ketchum*, 24 Cal.4th at 1133. "Anchoring the analysis to [the lodestar] is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts." *Serrano III*, 20 Cal. 3d at 48 n.23.

The lodestar method is also appropriate "where the relief sought and obtained is not easily monetized, ensuring compensation for counsel who undertake socially beneficial litigation." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) (quoting *In re Bluetooth*, 654 F.3d at 941–42). Here, the benefits cannot be monetized *with certainty* because the claims' process will be available to Class Members after Final Approval, and several components of the Settlement's benefits are difficult to quantify with precision. The lodestar method is therefore the appropriate method for calculating fees in this action.

To determine the lodestar, the Court must first multiply "the number of hours reasonably expended on the litigation … by a reasonable hourly rate." *In re Bluetooth*, 654 F.3d at 941. However, because the base lodestar does not capture the full market value of the services rendered, California policy strongly encourages "a fee-enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed." *Ketchum*, 24 Cal. 4th at 1138 (citing Posner, Economic Analysis of Law (4th ed. 1992), at 534, 567) (emphasis added).

## 1.    The Hours Expended Are Reasonable

In evaluating the reasonableness of the hours Class Counsel expended, courts must "focus on providing an award of attorneys' fees reasonably designed to fully compensate plaintiffs' attorneys for the services provided." *Horsford v. Board of Trustees of California State Univ.*, 132 Cal. App. 4th 359, 395 (2005). Courts do so by looking at "the entire

course of the litigation, including pretrial matters, settlement negotiations, discovery, [and] litigation tactics…" *Vo v. Las Virgenes Municipal Water Dist*., 79 Cal. App. 4th 440, 445 (2000). The general principle is that "the attorney who takes [a statutory fee-shifting] case can anticipate receiving full compensation for every hour spent litigating a claim even against the most polemical opponent." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998). However, courts should not be "enmeshed in a meticulous analysis of every detailed facet of the professional representation." *Serrano v. Unruh*, 32 Cal. 3d 621, 642 (1982) ("*Serrano IV*"). Rather, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Class Counsel have expended approximately 2,820 hours thus far to prosecute this action[4] and secure benefits for the Class, not counting the hours that will be spent preparing further briefing (including finalizing the motion for final approval and the supplemental brief in support of final approval) and the hours Class Counsel anticipate will be required to help Class Members understand the Settlement and submit claims for many months to come. Class Counsel have reviewed billing entries describing tasks performed that attorneys entered contemporaneously into Class Counsel's billing program.[5] (*See* Zohdy Decl. ¶ 14; Isaacson Decl. ¶ 19.) Following the review of the voluminous records, Class Counsel sorted the entries by task categories, summarizing those tasks for the

---

[4] In an exercise of billing discretion, Class Counsel have voluntarily excluded over 300 hours from the lodestar submission. (Zohdy Decl. ¶ 14.) The Court should take the voluntary reductions into consideration in evaluating the reasonableness of the fee request. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (instructing courts to take into account existing voluntary deductions in making evaluating whether further deductions should be made, and crediting counsel with a voluntary 10% "haircut").

[5] California law does not require actual billing records; courts may award statutory fees based on declarations and summaries. *See PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1098 (2000); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) (applying California law and determining that the "testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time record."). However, Class Counsel stands ready to provide the complete billing records upon the Court's request.

Court's convenience. (*Id.*) The hours incurred reflect Class Counsel's exceptional efforts in surmounting a number of obstacles, including strong resistance from a well-financed opponent represented by highly experienced and skilled counsel, to secure an excellent Settlement for the Class. The following are the most time-intensive categories:

**<u>Discovery and Investigation</u>**. Both before and after the action was filed, Class Counsel thoroughly investigated and researched Plaintiffs' claims. This investigation enabled Class Counsel to better evaluate Hyundai's representations and omissions concerning the functionality of the transmissions.  Among other tasks, Class Counsel fielded hundreds of inquiries from putative Class Members and investigated many of their reported claims.  They consulted and retained expert Susan Thompson, PA/CFF Hemming Morse, LLP, Certified Public Accountants, to assist them in quantifying the value of the benefits conferred by the settlement. (Zohdy Decl. ¶ 5.)

Class Counsel also researched publicly available materials and information provided by the National Highway Traffic Safety Administration ("NHTSA") concerning consumer complaints about the DCTs. They reviewed and researched consumer complaints and discussions of DCT-related problems in articles and forums online, in addition to various manuals and technical service bulletins ("TSBs") discussing the alleged defect. Id. Finally, they conducted research into the various causes of actions and other similar automotive actions. (Zohdy Decl. ¶ 6.)

In response to their written discovery efforts, Class Counsel received over two hundred thousand pages of documents, including spreadsheets with thousands of rows of data, owners' manuals, maintenance and warranty manuals, internal Hyundai investigation reports, TSBs, field reports, warranty data, etc. (Zohdy Decl. ¶ 7.) All of this information was thoroughly and meticulously reviewed by Class Counsel.

In addition to written discovery, Class Counsel took the depositions of Hyundai's corporate representatives: Wayne Gates (Director of the Hyundai United States Safety Office), Gregory Webster (Senior Group Manager of the Engineering Design and Analysis Department), and Sandy Zielomski (Senior Group Manager for Customer

1   Claims). (Zohdy Decl. ¶ 8.)

2          In reviewing the above discovery, evidence, and testimony, Class Counsel

3   identified information that was instrumental to the case and to Plaintiffs' efforts during

4   mediation. Finally, over the course of litigation, Class Counsel responded to hundreds of

5   Class Members who contacted Class Counsel to report problems with their Class Vehicles

6   and seek relief. Class Counsel also conducted detailed interviews with Class Members

7   regarding their pre-purchase research, their purchasing decisions, and their repair histories,

8   and developed a plan for litigation and settlement based in part on Class Members'

9   reported experiences with their Class Vehicles and with Hyundai dealers. (Zohdy Decl. ¶

10  9.)

11         **Advising Class Members**. Class Counsel have devoted substantial resources to

12  this case, particularly in response to Class Members seeking a remedy for an alleged defect

13  in their vehicles. Class Counsel responded to hundreds of inquiries from Class Members.

14  During the litigation itself, Class Counsel advised Class Members as to the status of the

15  litigation, reviewed their repair orders, and documented their complaints in a detailed

16  database. Following preliminary approval and the dissemination of the Class Notices,

17  Class Counsel have continued to regularly field calls and emails from Class Members

18  seeking further explanation and advice regarding the Settlement and its terms. During this

19  time—still ongoing as of the date of this filing—multiple attorneys have worked on this

20  case, including responding to Class Members' inquiries.

21         **Settlement Negotiations and Settlement Motions**. Class Counsel have also spent

22  considerable time to draft the Settlement and Settlement motions. This expenditure is

23  reasonable and necessary given the nature of the Settlement negotiations and the

24  Settlement drafting process. The proposed Settlement comes after multiple mediations and

25  months of drafting and fine-turning the Settlement Agreement and its various companion

26  documents. (Zohdy Decl. ¶¶ 2-4.) This was no ordinary agreement; the Settlement features

27  several novel components, including "Compensation for Unsatisfactory Performance."

28  Class Counsel spent considerable time harmonizing the various benefit components,

reviewing class action settlements in other car cases, and refining the processes for claims submission.

Class Counsel also spent many hours preparing the Motion for Preliminary Approval and this Motion, including examining and categorizing over several thousand billing entries, conducting legal research, and drafting the memorandum of points and authorities.

### 2.    The Hourly Rates are Reasonable

Class Counsel's hourly rates, which range from $295 for associates to $775 for very senior attorneys and partners, are also reasonable. (*See* Zohdy Decl. ¶¶ 14-20; Isaacson Decl. ¶ 19-22.) Counsel are entitled to their requested hourly rates if those rates are within the range of rates charged by and awarded to attorneys of comparable experience, reputation, and ability for similar work, *i.e.*, complex class action litigation. *Children's Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740, 783 (2002) (affirming rates that were "within the range of reasonable rates charged by, judicially awarded to, comparable attorneys for comparable work"); *accord Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (determining reasonable rate by examining the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). Prior judicial orders are probative evidence of market rates. *See Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1005 (1982) (rejecting the defendant's attacks on prior court orders and deeming such orders to be highly probative of rates).

Class Counsel's rates are wholly consistent with rates approved by courts in this district for major consumer class actions.[6] *See Chambers v. Whirlpool Corp.*, 214 F. Supp.

_____

[6] *See also*, *Kearney v. Hyundai Motor Am.*, No. 09-1298, 2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013) (approving hourly rates of $650-$800 for senior attorneys in consumer class action); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675); *Richard v. Ameri-Force Mgmt. Servs., Inc.* (San Diego Super. Ct., August 27, 2010, No. 37-2008-00096019) ($695 to $750 an hour for partners; $495 an hour for associates); *Barrera v. Gamestop Corp.* (C.D. Cal. Nov. 29, 2010, No. CV 09-1399) ($700 an hour for partners; $475 an hour for associates); *Anderson v. Nextel Retail Stores, LLC* (C.D. Cal. June 20,

3d 877, 899 (C.D. Cal. 2016) (approving rates of $485 to $750 for consumer class action attorneys on a contested fee motion); *Etter v. Thetford Corporation*, No. 13-00081-JLS, 2017 WL 1433312 (C.D. Cal. Apr. 14, 2017) (approving $275 to $775 for attorneys on a contested fee motion); *Bravo v. Gale Triangle, Inc*., No. 16-03347 BRO, 2017 WL 708766, at *17 (C.D. Cal. Feb. 16, 2017) (approving rates between $350 and $700. (*See also* Zohdy Decl. ¶¶ 18-20.)

Here, Class Counsel's rates have specifically been approved by California district courts in approving settlements involving automotive defects. *See, e.g.*, *MacDonald v. Ford Motor Co*., No. 13 -02988-JST, 2016 WL 3055643, *9 (May 31, 2016) (approving rates of $370 to $695 for many of the same attorneys as here on a contested catalyst motion); *Klee v. Nissan N. Am., Inc.,* 2015 U.S. Dist. LEXIS 88270, *38 (C.D. Cal. July 7, 2015) (approving rates of $370 to $695 for Capstone attorneys in an automotive defect case); *Asghari v. Volkswagen Grp. Of America*, No. 13-02529-MMM, 2015 WL 12732462 (May 29, 2015) (same); *Aarons v. BMW of North America*, No. 11-7667-PSG, 2014 U.S. Dist. LEXIS 118442, *40-41 (C.D. Cal. Apr. 29, 2014) (same). In *Aarons*, the district court also approved rates for comparable plaintiffs'-side firms such as Baron & Budd (rates ranging from $775 for the requested partner to $390-$630 for non-partners), Wasserman, Comden, Casselman, & Essensten (rates ranging from $670-750 for partners and $300-500 for associates), and Blood Hurst & O'Reardon ($510-695 for partners).

Moreover, Class Counsel are both respected and accomplished plaintiffs'-side firms responsible for numerous class action settlements and significant appellate decisions. (*See* Zohdy Decl. ¶¶ 10-13; Ex. 1; Isaacson Decl. ¶¶ 4-11.)

In short, Class Counsels' hourly rates are within the range of hourly rates charged by comparable attorneys and approved by multiple jurisdictions, including by courts in the Central District of California. The requested rates should be approved.

---

2010, No. CV 07-4480) ($655 to $750 an hour for partners; $300 to $515 an hour for associates).

**3.    Class Counsel's Lodestar Should Be Enhanced with a Modest Contingent Risk Multiplier**

Class Counsel are also entitled to the application of a positive multiplier. In determining whether a multiplier should be applied, the Court must consider a number of factors, including: (1) the contingent nature of the fee and the complexity of the case; (2) the results achieved and the awards made in similar cases; and (3) a percentage cross-check. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *accord In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 551 (2009). While no single factor is determinative of reasonableness, these factors also support Class Counsel's fee request. Indeed, based on the factors below, a multiplier of 2.0 (or higher) for Class Counsel would be justified. *See*, *e,g.*, *MacDonald*, 2016 WL 3055643, at *10 (applying a 2.0 multiplier for contingent risk and results achieved to Class Counsel (Capstone Law APC) on a contested catalyst fee motion against Ford).[7] The modest multiplier of 1.32 is therefore reasonable and should be approved.[8]

**(a)    The Contingent Risk Borne by Class Counsel, the Complexity of Litigation, and the Expected Future Work All Support the Application of the Requested Multiplier**

Under California law, a risk multiplier is meant to compensate the contingency attorney for the risk he or she undertakes to enforce important public rights:

> A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work

---

[7] A multiplier of 2.0 or above is frequently applied. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (stating the existence of a "3-4 range [of] common" multipliers for sophisticated class actions); *Steiner v. American Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming fee award where the lodestar multiplier was 3.65). *See also, Graham*, 34 Cal. 4th at 581 (affirming a 2.25 multiplier for work on the merits); *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009) (applying a 2.52 multiplier in an antitrust class action); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 60 (2008) (applying a 2.5 multiplier in a consumer class action).

[8] The multiplier is the quotient of the requested fee amount of $1,961,340 and the base lodestar of $1,492,271.50.

1
2

> if he is paid only for the second of these functions. If he is paid
> no more, competent counsel will be reluctant to accept fee
> award cases.

3    *Ketchum*, 24 Cal. 4th at 1132-33; *see Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553,

4    580 (2014) (explaining California's policy of adjusting the lodestar upward to account for

5    contingent risk). A court abuses its discretion if it fails to apply a risk multiplier where the

6    attorneys undertook the case with the expectation that they would receive a risk

7    enhancement if they prevailed, the case was risky, and the hourly rate does not reflect that

8    risk. *See Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir.

9    2002).

10         The contingent risk factor is the single most important enhancement factor under

11   California law for actions where statutory fees are available, and it must be considered by

12   the court in fixing fees. *See Horsford*, 132 Cal. App. 4th at 399 (reversing a trial court

13   order for failure to consider contingent risk for statutory fees); *Vizcaino*, 290 F.3d at 1049-

14   1050. This enhancement stems from the "established practice in the private legal market to

15   reward attorneys for taking the risks of non-payment by paying them a premium over their

16   normal hourly rates for winning contingency cases." *In re Washington Public Power*

17   *Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). This risk is particularly acute

18   for contingency fee attorneys because they "must use savings or incur debt to keep their

19   offices afloat and their families fed during the years-long litigation." *Horsford*, 132 Cal.

20   App. 4th at 400. Because attorneys pursuing claims in contingency will sometimes lose

21   after expending thousands of hours and advancing tens of thousands of dollars in

22   expenses, despite litigating diligently and expertly, an enhancement ensures that the risks

23   do not outstrip thee incentive to pursue claims on behalf of consumers.

24         This case presents substantial risk. First, this case against a major automotive

25   manufacturer alleging a defect in Class Vehicles has the potential to consume significant

26   amounts of attorneys' time and Court resources. Had litigation continued, Hyundai would

27   have argued that no defect exists, or that, even if it did exist, Plaintiffs would not be able to

28   show that the defect constitutes a safety concern. Hyundai would also be expected to argue

that individual issues as to liability and damages would prevail over common issues. *See*, *e.g.*, *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991-92 (N.D. Cal. 2010) (granting defendant's motion for summary judgment and finding alleged ignition-lock defect not a safety risk).

Second, Plaintiffs may well be unable to maintain class status through trial. The technological issues in this case are complex, and Hyundai contends that changes in the manufacturing process, design, and software created multiple versions of the dual-clutch transmissions ("DCT" or "DCTs") and Transmission Control Modules ("TCM"), precluding the likelihood of one common defect. Had litigation continued, Hyundai would likely have argued that the variations in the DCT and TCM and in the defects alleged also preclude class certification of the consumer fraud claims for omission. In addition, Hyundai would have argued that, among other individual variations, questions regarding each customer's proper maintenance of the vehicle, driving conditions, and the reasonableness of repair attempts, such as whether the vehicle was taken timely to the dealer for repairs, among others, would preclude certification of the warranty claims. These are the types of defenses that, if accepted, would support a denial of certification. *See, e.g., Philips v. Ford Motor Co.*, No. 14-02989, 2016 WL 7428810, *17 (N.D. Cal. Dec. 22, 2016) (finding that plaintiffs failed to present a compelling damages model supporting a class-wide determination regarding Ford's alleged omission of a "systemic defect" in the vehicle's electronic steering system); *Grodzitsky v. Am. Honda Motor Co.*, No. 2-01142-SVW, 2014 U.S. Dist. LEXIS 24599 (C.D. Cal. Feb. 19, 2014) (denying certification due to lack of evidence that common materials were used for all defective "window regulators" in the class); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 553 (C.D. Cal. 2012) ("There is also no evidence that a single design flaw that is common across all of the drains in question is responsible for the alleged water leak defect …").

Aside from certification risk, Class Counsel could face the termination of their action at summary judgment or at trial. For instance, in a similar action against Ford Motor Co., summary judgment was recently entered after years of litigation in favor of defendant,

1  underscoring the high contingent risk borne by plaintiffs' counsel in large-scale class

2  actions. *See Coba v. Ford Motor Co.*, 932 F.3d 114 (3d Cir. 2019).

3        In short, Class Counsel faced the crippling, if not the termination, of their action at

4  every stage in the litigation. For this type of contingent risk, courts have applied a

5  multiplier of 1.5 or more to account for the "return expected by lawyers." *Fadhl v. City*

6  *and County of San Francisco*, 859 F.3d 649, 650 (9th Cir. 1988) (awarding a 2.0

7  multiplier); *see also Chambers*, 214 F. Supp. 3d at 904 (applying a 1.68 multiplier on a

8  contested fee motion); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d

9  155, 170-71 (D. Mass. 2015) (applying a 2.0 multiplier in awarding fees to successful

10  plaintiff's counsel in an action involving defectively-designed engines). Notably, Judge

11  Fernando Olguin of this District approved a fee request based on a 2.9 multiplier in an

12  automotive defect settlement based on contingent risk. *See Warner v. Toyota Motor Sales,*

13  *U.S.A.*, No. 15-02171-FMO (C.D. Cal. May 21, 2017), Dkt. No. 140, at **22-25. The

14  order in *Warner*, a case with a similar procedural posture to this action but with far fewer

15  Class Members, is instructive.

16        The fees are also reasonable given the "novelty and difficulty of the questions

17  involved, and the skill displayed is presenting them." *Serrano III*, 20 Cal. 3d at 49. (finding

18  that this existence of this factor justifies a multiplier to the lodestar). There is little question

19  that this action presented both novel and difficult questions of law. In investigating and

20  prosecuting this action, Class Counsel was required to understand the advanced

21  technology at issue and structure a sophisticated and unique settlement that addressed a

22  range of harms.  Class Counsel's skill, particularly in creating the Settlement and

23  managing the Settlement process, also supports the requested multiplier.

24        Finally, considering the lengthy claims' period and the number of Class Members

25  who have already contacted Class Counsel, Class Counsel expects to expend many hours

26  after final approval (assuming it is granted). The requested multiplier would help

27  compensate Class Counsel for the expected future work aiding class members. *See*

28  *Browne v. Am. Honda Motor Co.*, No. 09-06750 MMM, 2010 WL 9499073, at *11 (C.D.

Cal. Oct. 5, 2010) (approving a 1.5 multiplier in part on future "work with class members as they seek reimbursement under the settlement over the coming months").

>    **(b)    The Results Achieved and the Awards in Similar Cases Support the Application of a Multiplier**

A multiplier is also warranted when attorneys achieved a high level of success, often because of the attorneys' "exceptional effort." *Graham*, 34 Cal. 4th at 583. By any measure, the results achieved by Class Counsel are exceptional. For example, the Settlement not only reimburses Class Members for their out-of-pocket costs for diagnostic visits and repairs, it also compensates Class Members who had multiple repairs under warranty, with no out-of-pocket costs—a benefit not typically included in settlements of automotive class actions.

In automobile defect cases, courts frequently evaluate the success achieved by valuing the benefit conferred to the Class. *See In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d, at 171 (valuing benefits conferred at $101,148,498, including over $18 million for repairs and $8 million for reimbursements, along with over $73 million for the extended warranty based on "the price a class member would have paid for such a service absent settlement."); *Trew v. Volvo Cars of N. Am., LLC*, No. S-05-1379-RRB, 2007 U.S. Dist. LEXIS 55305, at *15 (S.D. Cal. July 31, 2007) (valuing the settlement benefit of replacing a throttle module at $24 million based on part replacement costs and applying a percentage method to determine fees); *Alin v. Honda Motor Co.*, No. 08-4825, 2012 WL 8751045, at *19 (D.N.J. Apr. 13, 2012) (valuing the settlement benefit at over $38 million based on replacement costs of item for all class vehicles covered by the warranty).[9]

Here, while not all of the Settlement benefits can be valued with precision, Class

---

[9] *See also In re Toyota Motor Corp.*, No. 8:10ML-02151-JVS, 2013 U.S. Dist. LEXIS 94485, at *211 (C.D. Cal. June 17, 2013) (valuing the relief involving the installation of a break override system at $400 million); *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 305-307 (E.D. Pa. 2003) (valuing extended warranty coverage at approximately $20 million and applying a percentage method to determine fees).

Counsel retained an expert to value the "Compensation for Unsatisfactory Performance" remedy provided by the Settlement. Based on warranty data provided by Hyundai, which tracks Service Visits associated with repairs under warranty (in Plaintiffs' estimation, however, the majority of Service Visits had no associated repairs under warranty, and therefore would not be captured by the warranty data), a minimum of 71,345 Class Members have already made the requisite number of Service Visits to qualify for this remedy.  If these Class Members submitted claims for payment, they would be eligible to receive approximately $11.27 million or $22.54 million in Vehicle Rebate Certificates, depending on which remedy they select. (*See* Declaration of Susan Thompson ¶¶ 13-15.) Moreover, an additional 32,480 Class Members would qualify for this remedy if they were to make even one additional Service Visit; i.e., the warranty data reflects that 32,480 Class Members each made one Service Visit, but if they were to make a subsequent Service Visit, they too would qualify for the relief provided by this remedy.

In sum, Class Counsel's fee request of $1,961,340 represents a small fraction of the benefits conferred. Given the success achieved in this litigation, a 1.32 multiplier is reasonable and should be approved. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 572 (finding that multipliers of 1.22 and 1.5521 are "modest or in-line with others we have affirmed"); *In re: Volkswagen and Audi Warranty Extension Litig.*, 89 F. Supp. 3d at 171 ($15,468,000 in attorneys' fees costs awarded, awarding a 2.0 multiplier); *Warner v. Toyota*, No. 15-02171-FMO, at *22-25 (awarding $ 9,750,000 in requested fees in an automotive defect settlement and awarding a 2.9 multiplier).

### 4.   A Percentage Cross-Check Confirms the Reasonableness of the Requested Fees

In cases "where classwide benefits are not easily monetized, a cross-check is entirely discretionary." *Yamada*, 825 F.3d at 547. While the Court does not need to conduct a cross-check, if it does do so, it should value the Settlement by the potential awards made available to the Class. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 571 ("we do not require courts employing the lodestar method to perform a "crosscheck"

using the percentage method"); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)); *see also Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (1990) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980) ("The Supreme Court has stated that attorneys' fees sought under a common fund theory should be assessed against every class members' share, not just the claiming members.").

As set forth above, one of many multiple remedies provided by the Settlement, i.e., the "Compensation for Unsatisfactory Performance," can be valued at $11.27 million or $22.54 million in Vehicle Rebate Certificates, depending on which remedy Class Members select. (*See* Declaration of Susan Thompson ¶¶ 13-15.) The requested amount in attorneys' fees, $1,961,340, represents less than 18% of that value, which is substantially lower than the 25% benchmark in the Ninth Circuit[10] and is therefore reasonable.

## C.   The Expenses Advanced by Class Counsel Should be Reimbursed

For litigation expenses, the rule is that prevailing parties may recover, as part of statutory attorneys' fees, "litigation expenses…when it is 'the prevailing practice in the given community' for lawyers to bill those costs separate from their hourly rates." *Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (citation omitted). Attorneys are reimbursed for out-of-pocket expenses "such as '1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.'" *Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338, *20-*21 (C.D. Cal. June 17, 2013) (quoting *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (both courts awarding the requested expenses, including for expert witnesses, mediation, photocopying and computerized research).

Here, Class Counsel have incurred $38,660 in costs and expenses that would

---

[10] *See Six Mexican Workers*, 904 F.2d at 1311 (announcing a 25% benchmark and authorizing district courts to make upward or downward adjustments as necessary).

typically be billed to a paying client. The costs are documented in Counsels' respective declarations. (Zohdy Decl. ¶ 24; Isaacson Decl. ¶ 23.) The expenses they advanced on behalf of the Class should be reimbursed.

### D. The Requested Incentive Awards Are Fair and Reasonable and Should Be Approved

Incentive awards are routinely awarded as compensation for named plaintiffs' undertaking the risk and expense of litigation to advance the class' interests. *See Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). In light of the valuable benefits conferred to Class Members, the sum of $5,000, each, to Plaintiffs are modest and well within the range of service awards that have been approved in similar cases.

Plaintiffs are entitled to incentive awards for their time and effort to support a case in which they had a modest personal interest but which provided considerable benefits to Class Members—a commitment undertaken without any guarantee of recompense. Each Plaintiff provided documents to, and consulted with, Counsel about the claims in this case and assisted throughout the course of the litigation. Plaintiffs reviewed the allegations, kept in constant contact with Class Counsel regarding the status of the case, and responded to inquiries regarding Hyundai's efforts to remedy the problems Plaintiffs experienced. Plaintiffs have also stayed abreast of Settlement negotiations, reviewed the Settlement terms, and approved the Settlement on behalf of the Class. (Zohdy Decl. ¶ 26.)

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion and award fees and costs of $2,000,000 and incentive payments of $5,000 for each of the named Plaintiffs.

1    Dated:  December 12, 2019                Respectfully submitted,

2                                    By:  /s/ Tarek H. Zohdy

3                                        Tarek H. Zohdy
                                         Cody R. Padgett
                                         Trisha K. Monesi
4                                        **CAPSTONE LAW APC**

5
                                         Troy Isaacson
6                                        Norberto Cisneros
                                         **MADDOX, ISAACSON, CISNEROS LLP**
7

8                                        Attorneys for Plaintiffs Nicholas Wylie,
                                         Shawna Wylie, Timothy Ryan, and
9                                        Gregory Perger

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28