Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Troy L. Isaacson, Esq., (Cal. Bar No. 186834, NV Bar No. 6690)
Norberto J. Cisneros, Esq., (Cal. Bar No. 182001, NV Bar No. 8782)
Barbara M. McDonald, Esq., (Cal. Bar No. 281722, NV Bar No. 11651)
MADDOX | ISAACSON | CISNEROS LLP
11920 Southern Highlands Parkway, Suite 100
Las Vegas, Nevada 89141
Telephone:    (702) 366-1900
Facsimile:    (702) 366-1999

Attorneys for Plaintiffs Nicholas Wylie,
Shawna Wylie, Timothy Ryan, and Gregory Perger

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS WYLIE, SHAWNA WYLIE (fka BROWN), TIMOTHY RYAN, and GREGORY PERGER, individually, and on behalf of a class of similarly situated individuals,<br><br>    Plaintiffs,<br><br>    v.<br><br>HYUNDAI MOTOR AMERICA, a California corporation,<br><br>    Defendant. | Case No.: 8:16-cv-02102-DOC-JCG<br><br>Hon. David O. Carter<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    March 2, 2020<br>Time:    8:30 a.m.<br>Place:    Courtroom 9D |

1    **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2       **PLEASE TAKE NOTICE** that on March 2, 2020, at 8:30 a.m., in Courtroom 9D

3 of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, California,

4 92701, the Honorable David O. Carter presiding, Plaintiffs Nicholas Wylie, Shawna

5 Wylie, Timothy Ryan, and Gregory Perger will, and hereby do, move this Court to: (1)

6 enter an order finally approving the settlement described in the Settlement Agreement

7 (Dkt. No. 39-1) preliminarily approved by the Court on August 26, 2019; (2) finally certify

8 the Settlement Class; (3) enter a judgment to dismiss the action.

9       This Motion is based on: (1) this Notice of Motion and Motion; (2) the

10 Memorandum of Points and Authorities in Support of Motion for Final Approval of Class

11 Action Settlement; (3) the Declaration of Tarek H. Zohdy; (4) the Declaration of Troy

12 Isaacson; (5) the Declaration of Daniel Lee Regarding Class Notice and Claim

13 Administration; (6) the [Proposed] Order and [Proposed] Judgment filed concurrently

14 herewith; (7) the records, pleadings, and papers filed in this action; and (8) on such other

15 documentary and oral evidence or argument as may be presented to the Court at the

16 hearing of this Motion.

17

18 Dated: January 23, 2020           Respectfully submitted,

19                    By: /s/ Tarek H. Zohdy

20                    Tarek H. Zohdy
                       Cody R. Padgett

21                    Trisha K. Monesi
                       **CAPSTONE LAW APC**

22                    Troy Isaacson
                       Norberto Cisneros

23                    **MADDOX, ISAACSON, CISNEROS LLP**

24                    Attorneys for Plaintiffs Nicholas Wylie,

25                    Shawna Wylie, Timothy Ryan, and
                       Gregory Perger

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................1

II.  FACTS AND PROCEDURE .....................................................2

    A.  Plaintiffs' Experiences with the Class Vehicles ...................2

    B.  Overview of the Litigation and Settlement Negotiations ...........3

III.  SETTLEMENT BENEFITS ......................................................4

    A.  Reimbursement for Diagnostic Visits and Repairs .................4

    B.  Compensation for Unsatisfactory Performance ...................5

    C.  Compensation for Loss in Value ...................................5

    D.  Informational Brochure ............................................6

    E.  The Court Granted Preliminary Approval ..........................6

    F.  Implementing the Class Notice Program ..........................7

IV.  ARGUMENT ....................................................................7

    A.  Class Certification Requirements Are Met..........................7

    B.  The Court Should Grant Final Approval of the Class Settlement ...........8

        1.  Class Representatives and Plaintiffs' Counsel Have Adequately Represented the Class and the Settlement Was Negotiated at Arms'-Length ...................................9

        2.  The Settlement Provides Valuable Relief to the Class .................10

            (a)  The Relief Provided for the Class Is Fair, Adequate, and Reasonable Considering the Costs, Risks, and Delay of Trial and Appeal................................11

            (b)  The Method of Distribution, Attorneys' Fees, and Other Agreements................................14

        3.  The Settlement Treats Class Members Equitably ........................16

        4.  The Extent of Discovery Completed Supports Final Approval................................17

|   | 5. | The Views of Experienced Counsel Should Be Accorded Substantial Weight | 18 |
|   | 6. | The Reaction of Class Members to the Proposed Settlement | 19 |
| C. | | The Settlement Satisfies the *Bluetooth* Factors | 19 |
| D. | | The Court Should Overrule the Relative Handful of Objections to the Settlement | 21 |
| V. | | CONCLUSION | 26 |

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Aarons v. BMW of N. Am., LLC*, No. 11-7667-PSG, 2014 U.S. Dist. LEXIS
    118442 (C.D. Cal. Apr. 29, 2014).................................................................. 13, 23, 25

*Adoma v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964 (E.D. Cal. 2012).........................10

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015)..................................................................9

*Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372 (N.D.
    Cal. July 24, 2015)......................................................................................................16

*Asghari v. Volkswagen Grp. of Am.*, No. 13-02529-MMM, 2015 WL
    12732462 (C.D. Cal. May 29, 2015) ................................................................. 15, 23

*Boyd v. Bank of Am. Corp.*, No. 13-cv-0561-DOC, 2014 WL 6473804 (C.D.
    Cal. Nov. 18, 2014).....................................................................................................17

*Browne v. Am. Honda Motor Co.*, No. 09-06750-MMM, 2010 U.S. Dist.
    LEXIS 14575 (C.D. Cal. July 29, 2010) ..................................................................22

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ........................7, 11

*Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012).......................12

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .......................................8

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ..................................14

*Coba v. Ford Motor Co.*, No. 12-1622-KM, 2017 WL 3332264 (D.N.J. Aug.
    4, 2017) ......................................................................................................................13

*Corson v. Toyota Motor Sales U.S.A.*, No. 12-8499-JGB, 2016 WL 1375838
    (C.D. Cal. Apr. 4, 2016)............................................................................................11

*Eisen v. Porsche Cars N. Am.*, No. 11-09405, 2014 WL 439006 (C.D. Cal.
    Jan. 30, 2014) ..............................................................17, 19, 22, 23, 24, 25

*Grodzitsky v. Am. Honda Motor Co.*, No. 2-01142-SVW, 2014 U.S. Dist.
    LEXIS 24599 (C.D. Cal. Feb. 19, 2014) .................................................................12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................8, 25

*Hensley v. Eckehart*, 461 U.S. 424 (1983).................................................................. 15, 21

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..................... 19

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770
(N.D. Cal. July 22, 2019) ................................................................................................ 9

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ................................. 8

*In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92 (D.N.J. 2012) ................................. 21

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465
(S.D.N.Y.1998) ............................................................................................................... 21

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ......................... 9

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ............................................... 18

*In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886 (N.D.
Cal. Nov. 26, 2007)........................................................................................................ 14

*In re Rite Aid Corp Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005).......................................... 22

*In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ............... 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab.*
*Litig.*, 895 F.3d 597 (9th Cir. 2018) ........................................................................... 20

*Keegan v. Am. Honda Co.*, No. 10-09508-MMM, 2014 WL 12551213 (C.D.
Cal. Jan. 21, 2014) ...................................................................................................... 14, 24

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ....................................................... 11

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ........................... 17

*Milligan v. Toyota Motor Sales, U.S.A.*, No. 09-05418-RS, 2012 U.S. Dist.
LEXIS 189782 (N.D. Cal. Jan. 6, 2012) .................................................................. 19, 22, 24

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................... 10

*Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010)..................... 24

*Philips v. Ford Motor Co.*, No. 14-02989, 2016 WL 7428810 (N.D. Cal.
Dec. 22, 2016).............................................................................................................. 12

*Robbins v. Hyundai Motor America, Inc.*, 2015 WL 304142 (C.D. Cal. Jan.
14, 2015).......................................................................................................................... 14

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) .............................. 10, 11, 13

*Sadowska v. Volkswagen Group of America*, No. 11-00665-BRO, 2013 WL
    9500948 (C.D. Cal. Sep. 25, 2013)....................................................................11

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016)...............21

*Smith v. Am. Greetings Corp.*, No. 14-cv-02577, 2016 WL 362395 (N.D.
    Cal. Jan. 29, 2016) ..........................................................................................17

*Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010)....................................12

*Warner v. Toyota Motor Sales U.S.A.*, No. 15-02171-FMO (C.D. Cal. May
    21, 2017) .........................................................................................................11

*Zakskorn v. Am. Honda Motor Co.*, No. 11-02610-KJM, 2015 WL 3622990
    (E.D. Cal. June 9, 2015) ..................................................................................11


**FEDERAL STATUTES**

Fed. R. Civ. 54(d)(2)(B)..................................................................................................15

Fed. R. Civ. P. 23 ....................................................................................................*passim*


**STATE STATUTES**

Cal. Civ. Code § 1793.2(d)(2)(C) ...................................................................................14


**SECONDARY AUTHORITIES**

Hyundai Corporate News (Oct. 2, 2014),
    https://www.hyundaipressoffice.co.uk/release/559/.........................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs submit this memorandum in support of their Motion for Final Approval of the Class Action Settlement,[1] and for final certification of the Settlement Class. The proposed Settlement resolves allegations that certain vehicles manufactured by Defendant Hyundai Motor Co. ("Hyundai" or "HMA") had a transmission design defect that caused, among other problems, jerking, shuddering, shaking, failure to shift, stalling, delayed acceleration, and loss of power ("Alleged Defect").

The Settlement provides Class Members with immediate and valuable relief for the Alleged Defect in the form of:

- Reimbursement for Diagnostic Visits and Repairs. Class Members who incurred out-of-pocket costs for any type of repair, replacement, diagnosis, or inspection of a Class Vehicle relating to the DCT ("Qualifying Repair") will be entitled to **full reimbursement** for all reasonable costs incurred for the Qualifying Repairs, including the payment of insurance copays and deductibles.

- Compensation for Unsatisfactory Performance. Class Members will also be entitled to compensation for the unsatisfactory performance of their Class Vehicles. Specifically, Class Members who made or make multiple visits to an authorized Hyundai dealership within 7 years/100,000 miles of delivery of the Class Vehicle to the first retail customer (whichever occurs first) to complain about a DCT-Related Symptom will have the option to claim compensation up to $675, or vehicle rebate certificates up to $1,350. Based on warranty data provided by Hyundai (which tracks only service visits associated with repairs under warranty rather than just service visits), a minimum of 71,345 Class Members are already eligible for the above relief (*see* Declaration of Susan Thompson ¶¶ 13-15 [ECF No. 39-3]), and if they submitted claims, would be eligible to receive a minimum of $11.27 million, or $22.5 million in vehicle rebate certificates (*see id.*).

- Compensation for Lost Value on Trade-In or Sale. Class Members who have traded-in or sold (or will trade-in or sell) their Class Vehicles may claim compensation after trading-in or selling their cars because of transmission-related complaints. This valuable benefit for partial compensation is intended to

---

[1] Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

offset the Class Vehicle's potential loss in value resulting from the Alleged Defect.

- <u>Notice of DCT Software Upgrades</u>. An Informational Brochure about the operation and function of the DCT, as well as notice regarding the most recent DCT software upgrades, will be distributed to Class Members within 30 calendar days after the Effective Date.

The Court has previously found that the Settlement satisfies all of the criteria for preliminary settlement approval. (Dkt. No. 46.) As detailed below, the Court should now finally approve the Settlement Agreement because the terms are fair and reasonable, providing substantial benefits to Settlement Class Members, and because the proposed Settlement Class satisfies the requirements of Rule 23.

## II.    FACTS AND PROCEDURE

This nationwide class action arises out of an alleged defect in DCTs designed and manufactured by Hyundai for use in the 2015-2017 Sonata Eco, 2016-2017 Tucson, and 2016-2017 Veloster vehicles.  Hyundai premiered the DCT in October 2014, and described it as "an improvement in fuel consumption and $CO_2$ emission compared to a conventional six-gear automatic transmission, while acceleration performance also improves."  The DCT features two dry clutches that, according to Hyundai, transfer engine power "independently into the odd and even gear train ensuring it is ready to shift into the next gear without any torque interruption."[2] Despite Hyundai's marketing claims, the DCTs installed on Plaintiffs' vehicles were often unreliable and occasioned multiple trips to their Hyundai dealerships for service. In fact, within weeks of purchasing their Class Vehicles, each of the Plaintiffs experienced the shuddering, stalling, delayed acceleration, and power loss that have become symptomatic of the DCTs.

### A.    Plaintiffs' Experiences with the Class Vehicles

**Nicholas and Shawna Wylie:** Plaintiffs Nicholas and Shawna Wylie (the

---

[2] Hyundai to showcase new downsized turbocharged engines and seven-speed dual-clutch transmission in Paris, Hyundai Corporate News (Oct. 2, 2014), https://www.hyundaipressoffice.co.uk/release/559/.

"Wylies") are Nevada citizens who reside in Boulder City, Nevada. (*See* Dkt. No. 27, First Amended Complaint ("FAC") ¶ 16.)  On October 31, 2015, the Wylies purchased a new 2016 Hyundai Veloster Turbo, equipped with a 7-speed DCT, from Henderson Hyundai Superstore, an authorized Hyundai dealer in Clark County. (*Id.* at ¶ 17.)  On July 6, 2016, the Wylies brought their vehicle to Henderson Hyundai complaining that the vehicle's transmission felt like it was "slipping." (*Id.* at ¶ 19.)  A Hyundai service technician inspected the vehicle but could not confirm any transmission-related faults, and no repairs were performed. (*Id.*) Although no faults were confirmed, the issues persisted. (*Id.* at ¶¶ 20-22.)

**Timothy Ryan:** Plaintiff Timothy Ryan ("Ryan") is a Nevada citizen who resides in Henderson, Nevada. (FAC ¶ 28.) On September 10, 2016, Ryan purchased a new 2016 Hyundai Tucson SUV, equipped with a 7-speed DCT, from Henderson Hyundai Superstore. (*Id.* at ¶ 29.)  Within a week of his purchase, Ryan began experiencing hesitation when he tried to accelerate the vehicle. (*Id.* at ¶ 31.)  He returned to Henderson Hyundai immediately to complain but was told that there was nothing wrong with the car. (*Id.*) Notwithstanding, the issues persisted. (*Id.* at ¶¶ 32-33.)

**Gregory Perger:** Plaintiff Gregory Perger ("Perger") is a California citizen who resides in Coarsegold, California. (FAC ¶ 38.)  On October 5, 2016, Perger purchased a new 2017 Hyundai Tucson, equipped with a 7-speed DCT, from an authorized Hyundai dealer in Fresno County, California. (*Id.* at ¶ 39.)  Shortly after purchase, Perger's vehicle began to turn off intermittently, requiring him to reset it by turning the car off and back on. (*Id.* at ¶ 41.) He also began experiencing delayed acceleration and SelectShift function failure. Perger returned several times to Lithia Hyundai of Fresno to complain. (*Id.* at ¶¶ 42-46.)

### B.    Overview of the Litigation and Settlement Negotiations

The Wylies filed the initial class action complaint on November 22, 2016.  As a result of several meetings regarding Defendant's anticipated motion to dismiss and the prospect of amending the complaint, the Parties agreed to participate in an early mediation.

On March 15, 2017, the Court issued an order staying proceedings pending mediation.  On May 1, 2017, the Parties participated in a mediation with the Hon. Russell Bostrom (Ret.) of Judicate West.  The Parties were unable to settle at mediation, but agreed to revisit their settlement negotiations as the litigation resumed. (Declaration of Tarek Zohdy ["Zohdy Decl."] ¶ 2.)

Plaintiffs filed their First Amended Complaint on September 12, 2017, adding Ryan and Perger as additional named plaintiffs.  On November 27, 2017, the Parties participated in another mediation with Judge Bostrom.  Although the Parties were able to close the gap between their respective positions, they were still unable to settle. (Zohdy Decl. ¶ 3.)

On January 26, 2018, Hyundai filed its Answer to Plaintiffs' First Amended Complaint. The Parties thereafter exchanged significant formal discovery and evidence, and eventually agreed to participate in a third mediation on May 30, 2018, this time before the Hon. Howard B. Wiener (Ret.). Although the Parties did not settle at the third mediation, with Justice Wiener's continuing guidance and months of continued negotiations, the Parties were eventually able to negotiate a complete settlement of the claims at issue. (Zohdy Decl. ¶ 4.)

## III.   SETTLEMENT BENEFITS

Plaintiffs' Counsel negotiated a Settlement with several tiers of benefits to provide relief to Class Members with varying experiences and suffering different types of harms associated with the Alleged Defect.

### A.   Reimbursement for Diagnostic Visits and Repairs

Class Members who incurred out-of-pocket costs for any type of Qualifying Repair will be entitled to full reimbursement for all reasonable costs incurred, including the payment of insurance copays and deductibles. (Settlement Agreement ¶ 2.2.) To be eligible for reimbursement, Class Members must submit a Claim Form no later than 120 days after the Notice Date. (*Id.*, Ex. C.) Reimbursements will be provided irrespective of whether Qualifying Repairs occurred at an authorized Hyundai dealership or elsewhere. (*Id.*)

**B.     Compensation for Unsatisfactory Performance**

Under the Settlement, Class Members are eligible to receive substantial payments if they have experienced the symptoms related to the Alleged Defect, as demonstrated by having taken Class Vehicles to authorized HMA dealers for inspection and service. Class Members who made (or will make) two or more Service Visits will receive $225 for the second Service Visit, with increasing payments for each additional Service Visit, up to four visits. (Settlement Agreement ¶ 2.3.)  In lieu of such payments, Class Members may elect to receive a "Vehicle Rebate Certificate," as defined in the Settlement Agreement, toward the purchase of an HMA vehicle.  Class Members may collect up to $675 or $1,350 in Vehicle Rebate Certificates. (*Id.*)  Importantly, Class Members need not have incurred any out-of-pocket costs to be eligible for this payment.

Based on warranty data provided by Hyundai, which tracks Service Visits associated with repairs under warranty (in Plaintiffs' estimation, however, the majority of Service Visits had no associated repairs under warranty, and therefore would not be captured by the warranty data), a minimum of 71,345 Class Members have already made the requisite number of Service Visits to qualify for this remedy.  **If these Class Members submitted claims for payment, they would be eligible to receive approximately $11.27 million or $22.54 million in Vehicle Rebate Certificates, depending on which remedy they select**. *See* Declaration of Susan Thompson ¶¶ 13-15.[3]

**C.     Compensation for Loss in Value**

Class Members who have, or will, trade or sell their Class Vehicles may claim compensation in the form of money for partial reimbursement after having trading-in or selling their cars because of transmission-related complaints. To make a claim for partial reimbursement, Class Members must provide either: (1) documentary proof that they have made a DCT-related complaint at least once within the first 20,000 miles of ownership of

---

[3] Moreover, an additional 32,480 Class Members would qualify for this remedy if they were to make even one additional Service Visit; i.e., the warranty data reflects that 32,480 Class Members each made one Service Visit, but if they were to make a subsequent Service Visit, they too would qualify for the relief provided by this remedy.

1    their vehicle; or (2) a declaration signed under penalty of perjury that the Class Member

2    experienced DCT Related symptoms within the first 20,000 miles of ownership; and (3)

3    documentary proof of at least two Service Visits.  The amount of compensation under the

4    Customer Satisfaction Program will be based on the difference (the "Purchase/Sale Price

5    Difference") between the purchase price for the Class Vehicle (the "Purchase Price") and

6    the trade-in value or sale price of the Class Vehicle (the "Sale Price"), adjusted for mileage

7    and other factors, such as set forth in Paragraph 2.4 of the Settlement Agreement.

8    **D.     Informational Brochure**

9    Via the "Informational Brochure," HMA will inform Class Members about the

10   operation and functionality of the DCT and provide them with notice of the most recent

11   DCT software upgrades.  HMA will distribute the Informational Brochure within 30

12   calendar days after the Effective Date.

13   **E.     The Court Granted Preliminary Approval**

14   Plaintiffs filed their Motion for Preliminary Approval of the Class Action

15   Settlement on July 19, 2019. (Dkt. No. 39.) Following the hearing, the Court granted

16   preliminary approval on August 26, 2019. (Dkt. No. 46.) In its Order Granting Preliminary

17   Approval, this Court determined that the Settlement Class, as defined, satisfies the

18   requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). (*Id*. ¶¶ 2-9.) The

19   Court designated Plaintiffs Nicholas Wylie, Shawna Wylie, Timothy Ryan, and Gregory

20   Pergeras as the Class Representatives of the Settlement Class. (*Id*. ¶ 8.) The Court also

21   appointed Capstone Law APC and Maddox, Isaacson, Cisneros LLP as Class Counsel.

22   (*Id*. ¶ 9.)

23   Upon review of the Settlement terms, this Court found that the Settlement was the

24   product of "several years of litigation, during which the Parties exchanged sufficient

25   discovery and information to knowledgeably assess the strengths and weakness of their

26   respective claims and defenses," and that the settlement was "non-collusive, [and the]

27   product of arms'-length negotiations between counsel for Plaintiff and Defendant presided

28   by over by experienced third-party neutrals." (*Id*. at ¶¶ 3-4.) Based on its review, the Court

1    concluded that it would, subject to comments/objections from Class Members, "likely be

2    able to approve the proposed settlement as fair, reasonable, and adequate under Rule

3    23(e)(2)."

4          The Court approved the form of the notice, including the Short Form Class Notice

5    to be disseminated to Class Members and a Long Form Class Notice that has been

6    uploaded to the Settlement website. (*Id.* ¶ 9.)

7          **F.    The Class Notice Program Has Been Implemented**

8          Pursuant to the Settlement Agreement and the Preliminary Approval Order,

9    Hyundai successfully implemented the Class Notice plan. On October 25, 2019, Hyundai

10   mailed 313,737 Short Form Class Notices to Class Members and emailed a total of

11   137,455 Short Form Class Notices. (Declaration of Daniel Lee ["Lee Decl."] ¶ 6-8.) The

12   Short Form Class Notice, which was approved by the Court, advised Class Members

13   about their rights under the Settlement and the Settlement's benefits, including the

14   deadline to submit claims, opt-out, or object. The Short Form Class Notice also provided

15   Hyundai's toll-free support line and website address "DCTSettlement.HyundaiUSA.com,"

16   which provides additional information along with links to all relevant settlement

17   documents for Class Members to review. (*Id.* at ¶¶ 3-4.)

18         The deadline for Class Members to opt out or object expired on December 26,

19   2019. Only 150 Class Members have opted out and only 19 have objected (9 objections

20   were subsequently withdrawn). (*See* Zohdy Decl. ¶¶ 15-16.) The deadline to submit claims

21   for reimbursement is February 22, 2020.

22   **IV.   ARGUMENT**

23         **A.    Class Certification Requirements Are Met**

24         The Court certified the Class for settlement purposes upon Preliminary Approval,

25   finding that requirements under Rule 23(a) and Rule 23(b)(3) are satisfied. (*See* Dkt. No.

26   46, ¶¶ 5-9.) Nothing has changed that would affect the Court's ruling on class certification.

27   *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming

28   the certification set forth in the preliminary approval order "[b]ecause the circumstances

have not changed" since that order); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the criteria for class certification "differently in litigation classes and settlement classes"). Therefore, the Court should grant final certification of the settlement class.

### B.     The Court Should Grant Final Approval of the Class Settlement

Upon final approval, the Court's duty is to determine whether the proposed Settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In evaluating the Settlement, the Court is guided by several important policies. First, federal courts favor settlements, particularly in class actions, where the costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors settlements, particularly where complex class action litigation is concerned"). Second, for settlements reached through arms'-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027.

Guided by these policies, the district court then may consider some or all of the following factors in evaluating the reasonableness of a settlement: (1) the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of proceedings; (5) the participation of a governmental participant; (6) the experience and views of counsel; and (7) the reaction of class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

The recent amendments to Rule 23 direct the Court to consider a similar list of

1   factors, including whether: (A) the class representatives and class counsel have adequately

2   represented the class; (B) the proposal was negotiated at arm's length; (C) the relief

3   provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial

4   and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

5   including the method of processing class-member claims; (iii) the terms of any proposed

6   award of attorney's fees, including timing of payment; and (iv) any agreement required to

7   be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably

8   relative to each other. FED. R. CIV. P. 23(e)(2). The Advisory Committee's notes clarify

9   that this list of factors does not "displace" the *Hanlon* factors, "but instead aim to focus the

10  court and attorneys on 'the core concerns of procedure and substance that should guide the

11  decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, No.

12  15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting FED. R. CIV. P.

13  23(e)(2) advisory committee's note to 2018 amendment).

14         Additionally, for class action settlements prior to contested certification, the Ninth

15  Circuit further requires that the Court scrutinize the settlement even more closely, applying

16  the so-called *Bluetooth* factors.[4] *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).

17  As set forth below, the Settlement satisfies all of these factors, meriting final approval.

18         **1.     Class Representatives and Plaintiffs' Counsel Have Adequately**

19                 **Represented the Class and the Settlement Was Negotiated at**

20                 **Arms'-Length**

21         Under Rule 23(e)(2)(A)-(B), the Court considers whether Plaintiffs and Plaintiffs'

22  Counsel adequately represented the class and whether the proposed settlement was

23  negotiated at arm's length. Both factors are amply satisfied. There is no suggestion of a

24  conflict between the Class Representatives and Plaintiffs' Counsel on the one hand, and

25  Class Members on the other. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942

26  (9th Cir. 2015) (conflict cannot be "speculative" or "trivial" but must go to "the heart of

27

28
_____
         [4] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011).

the litigation"). Plaintiffs and Plaintiffs' Counsel have vigorously pursued the claims on behalf of the Class, adducing important facts regarding Hyundai's pre-sale knowledge of the Alleged Defect, litigating the matter, and negotiating a valuable Settlement to deliver immediate relief to the Class. (Zohdy Decl. ¶¶ 5-9.) Given the heightened interest in the Settlement, Plaintiffs' Counsel has devoted substantial resources to answering inquiries and assisting Class Members with claims submissions and other issues.

Rule 23(e)(2)(B) is also satisfied, as the Settlement is the product of arm's length negotiations after multiple mediations before distinguished mediators and jurists; namely, the Hon. Russell Bostrom (Ret.) and the Hon. Howard B. Wiener (Ret.).

### 2.    The Settlement Provides Valuable Relief to the Class

Under Rule 23(e)(2)(C), the Court is to examine the relief to the Class in light of the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified. This overlaps with first three *Hanlon* factors, the strength of the plaintiff's case balanced against the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class certification through trial, and the amount of settlement. In evaluating these considerations, a court assesses "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." *Adoma v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012). However, there is "no single formula" to be applied. *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009).

In assessing the settlement's value, courts are instructed to take into account that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). But this Court "put[s] a good deal of stock in the product of an arms-length, non-collusive negotiated resolution, and ha[s] **never prescribed a particular formula** by which that outcome must be tested." *Rodriguez*, 563

F.3d at 965 (internal citations omitted; emphasis added). The Court "need not include a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012). Indeed, *Lane* expressly rejected any requirement that district courts calculate the value of the claims—explaining that "not only would such a requirement be onerous, it would often be impossible... [since] the amount of damages of a given plaintiff (or class of plaintiffs) has suffered in a question of fact that must be proved at trial." *Id.* [5]

> **(a)** **The Relief Provided for the Class Is Fair, Adequate, and Reasonable Considering the Costs, Risks, and Delay of Trial and Appeal**

As discussed above, the Settlement offers substantial benefits to Class Members, including reimbursement for out-of-pocket costs, payments for multiple Service Visits, and partial reimbursement for Class Vehicle trades and sales. When weighed against the risk of further litigation, the Settlement is clearly fair, adequate, and reasonable. To be sure, while Plaintiffs believe that their case is strong on the merits, HMA has raised a number of substantive defenses that present serious risks to Plaintiffs' case. These defenses include, among others, that no DCT defect exists, or that, even if a defect existed, Plaintiffs would not be able to show that it constitutes a safety concern. And, HMA would likely have argued that individual issues as to liability and damages would prevail over

---

[5] Accordingly, courts, in evaluating automotive defect settlements, do not require the plaintiff to present speculative measures of the maximum value of the action upon a successful trial. *See, e.g., Warner v. Toyota Motor Sales U.S.A.*, No. 15-02171-FMO (C.D. Cal. May 21, 2017), Dkt. No. 140, at *13 (granting final approval without a maximum valuation, noting that settlements involve "abandoning of highest hopes"); *Corson v. Toyota Motor Sales U.S.A.*, No. 12-8499-JGB, 2016 WL 1375838, *7 (C.D. Cal. Apr. 4, 2016) (granting final approval, based in part, on "substantial recovery" that class members would receive as a result of the settlement); *See also Chambers*, 214 F. Supp. 3d at 888-89 (no valuation required to approve consumer class action settlement); *Zakskorn v. Am. Honda Motor Co.*, No. 11-02610-KJM, 2015 WL 3622990, at *8 (E.D. Cal. June 9, 2015) (same); (finding that settlement provides adequate compensation without requiring extensive valuation); *Sadowska v. Volkswagen Group of America*, No. 11-00665-BRO, 2013 WL 9500948, *4 (C.D. Cal. Sep. 25, 2013) (same).

1  common issues.

2    As a threshold matter, the existence of a defect may not lead to legal liability under

3  federal or state statutes.  *See*, *e.g.*, *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991-92

4  (N.D. Cal. 2010) (granting defendant's motion for summary judgment and finding alleged

5  ignition-lock defect not a safety risk), *aff'd*, 462 F. App'x 660 (9th Cir. 2011).

6  Accordingly, Plaintiffs would have to meet a high burden to establish violations of state

7  and federal consumer protection and warranty statutes.

8    Moreover, had litigation continued, HMA would have argued that the variations in

9  the DCT and in the defects also preclude class certification of the consumer fraud claims

10  for omission.  In addition, HMA would have argued that, among other individual

11  variations, questions regarding each customer's proper maintenance of the vehicle, driving

12  conditions, and repair attempts, such as whether the vehicle was taken to the dealer in a

13  reasonable time period for repairs, among others, would preclude certification of the

14  warranty claims.

15    While Plaintiffs would vigorously dispute these claims, consumers bringing

16  automotive defect actions are frequently denied class certification due to lack of common

17  proof.[6]  Recently, a California district court denied class certification involving a theory

18  based on material omission of a similar defect.  *See Philips v. Ford Motor Co.*, No. 14-

19  02989, 2016 WL 7428810, *17 (N.D. Cal. Dec. 22, 2016) (finding that the plaintiffs failed

20  to present a compelling damages model supporting a class wide determination regarding

21  Ford's alleged omission of a "systemic defect" in the vehicle's electronic steering system).

22  *Philips* underscores the heightened litigation risk for Plaintiffs seeking class certification.

23    This body of recent case law demonstrates that, had the case continued, "plaintiffs

24  [would] face[] a substantial risk of incurring the expense of a trial without any recovery."

25  ───────────────────

26   [6] *See*, *e.g.*, *Grodzitsky v. Am. Honda Motor Co.*, No. 2-01142-SVW, 2014 U.S. Dist.
LEXIS 24599 (C.D. Cal. Feb. 19, 2014) (denying certification due to lack of evidence that

27  common materials were used for all defective "window regulators" in the class); *Cholakyan v.
Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 553 (C.D. Cal. 2012) ("There is also no evidence

28  that a single design flaw that is common across all of the drains in question is responsible for
the alleged water leak defect…").

*In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014).

Indeed, the risk of continuing litigation, including the risk of new adverse statutory or case

law, increased costs, and expiration of a substantial amount of time, weigh heavily in favor

of settlement. *Rodriguez*, 463 F.3d at 966. In particular, Plaintiffs shoulder exceedingly

high financial risks in pursuing this action. A class action against a major automotive

manufacturer, where Plaintiffs allege that over one hundred and thirty thousand vehicles

suffer a serious defect, has the strong potential to engulf plaintiffs and attorneys in

protracted, resource-draining court battles.

In a contested certification motion, HMA would likely submit expert testimony

from an HMA engineer showing that the DCT for various Class Vehicles differs in kind.

Plaintiffs would rely on the testimony of a technical expert to dispute the import of these

minor part variations, along with that of an expert on consumer expectations and a

damages expert. These hefty costs would have to be advanced by Plaintiffs and Plaintiffs'

Counsel and would add significantly to the risks of proceeding in litigation. *See Aarons v.*

*BMW of N. Am. LLC*, No. 11-7667, 2014 U.S. Dist. LEXIS 118442, at *29-31 (C.D. Cal.

Apr. 29, 2014) (approving a settlement for repairs/reimbursement of transmission defect

and observing that "it is the very uncertainty of outcome in litigation and avoidance of

wasteful and expensive litigation that induce consensual settlements." [citation omitted]).

Aside from certification risk, Plaintiffs could face the termination of their action at

summary judgment or at trial. For instance, in a long-running action alleging failure to

disclose a known defect involving the same class counsel, summary judgment was

recently entered in favor of the automotive manufacturer after years of litigation and

exorbitant out-of-pocket costs, underscoring the difficulties faced by Plaintiffs here. *See*

*Coba v. Ford Motor Co.*, No. 12-1622-KM, 2017 WL 3332264 (D.N.J. Aug. 4, 2017).

Even if Plaintiffs were to certify the Class on a contested motion, and prevail on

dispositive motions and at trial,[7] the years of litigating this action would almost certainly

---

[7] The inherent risks of proceeding to trial weigh in favor of settlement. *See In re*

1   diminish the value of the relief to Class Members, as their Class Vehicles' value will

2   depreciate over time.  Any restitution remedies they could obtain would also be subject to

3   offsets for car owners' use of the vehicles.  For example, even under consumer-friendly

4   California law (the Song-Beverly Consumer Warranty Act), a repurchase would require an

5   offset for the mileage driven.  *See* Cal. Civ. Code § 1793.2(d)(2)(C); *see also Robbins v.*

6   *Hyundai Motor America, Inc*., 2015 WL 304142, at *6 (C.D. Cal. Jan. 14, 2015).  State

7   law offsets could also apply to claims under the federal Magnuson-Moss Warranty Act,

8   which applies state substantive law for federal causes of action.  *See Clemens v.*

9   *DaimlerChrysler Corp*., 534 F.3d 1017, 1022 (9th Cir. 2008) ("[C]laims under the

10  Magnuson-Moss Act stand or fall with… express and implied warranty claims under state

11  law").

12          In light of the substantial risks of continued litigation, including the risk of

13  maintaining class certification, the significant relief secured for the Class by the proposed

14  Settlement should be viewed as a fair, reasonable, and adequate compromise of the issues

15  in dispute.

16                  **(b)     The Method of Distribution, Attorneys' Fees, and**

17                          **Other Agreements**

18          Under Rule 23(e)(2)(C)(ii)-(iv), the Court is to review the method of distribution,

19  attorneys' fees and the existence of other agreements. As set forth above, claims for

20  reimbursement and payment for Service Visits can be submitted using the Settlement's

21  user-friendly claim forms. *See Hyundai*, 926 F.3d at 568 (finding that online claims

22  process where class member must input VIN and class member ID not overly

23  burdensome). Service Visits require documentation, but it is standard in settlements to

24  require repair orders or receipts to substantiate a claim. *See Keegan*, *v. Am. Honda Motor*

25  *Co.*, No. 10-09508-MMM, 2014 WL 12551213, *15 (C.D. Cal. Jan. 21, 2014) ("Courts

26

27  ───────────────────

    *Portal Software, Inc. Sec. Litig*., 2007 U.S. Dist. LEXIS 88886, *7-8 (N.D. Cal. Nov. 26,
28  2007) (recognizing that "inherent risks of proceeding to… trial and appeal also support the
    settlement").

frequently approve settlements that require class members to submit receipts or other documentation."). In fact, most states have record-retention laws, and "dealerships and service centers routinely maintain such records; thus, to the extent that class members do not have an invoice in their possession, it is likely that they would be able to secure such documentation." *Asghari v. Volkswagen Grp. of Am.*, No. 13-02529-MMM, 2015 WL 12732462, at *29 (C.D. Cal. May 29, 2015) (overruling objection that requiring claimants to submit proof of compliance with scheduled oil changes in warranty maintenance manual is unfair and overly burdensome).

For the reasons discussed in greater detail in Plaintiffs' separately filed Motion for Attorneys' Fees, Costs, and Class Representative Incentive Awards (Dkt. No. 47), Plaintiffs seek reasonable attorneys' fees in the amount of $1,961,340, reimbursable costs and expenses in the amount of $38,660, and incentive awards of $5,000, each. With the exception of the "clear sailing" provision, none of the *Bluetooth* factors are present with the Parties' Settlement. Plaintiffs' Counsel do not seek a disproportionate share of fees and there is no "reverter" of unclaimed funds to Hyundai as the Settlement does not provide for the establishment of a common fund. Rather, the settlement was negotiated at arm's-length after multiple mediations before distinguished mediators and jurists. Further, by agreeing to resolve attorneys' fees amicably, HMA's counsel averted the possibility that Plaintiffs' Counsel might apply for, and receive, a much larger award, and thus avoided a "second major litigation" on attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.").

Finally, aside from the Settlement Agreement, Plaintiffs' Counsel have a fee-sharing agreement which has been consented to by each firm's respective clients.[8] No other agreements have been made in connection with this Settlement under Rule 23(e)(3).

---

[8] The terms of the fee-sharing agreements are confidential, but Class Counsel will disclose the fee arrangement, *in camera*, if ordered by the Court pursuant to Rule 54(d)(2)(B) "If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made."

### 3. The Settlement Treats Class Members Equitably

The Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's Notes.

Here, the settlement generally treats all class members the same. All current owners and lessees are equally entitled to the relief and remedies provided by the Settlement. To the extent they receive different compensation under the settlement, it will be proportionate to their actual harms. For example, only those class members who spent money on DCT repairs/service will be reimbursed for such expenses. *See, e.g.*, *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct"). Once reimbursed for their repair expenses, those Class Members will stand in an identical posture to all other Class Members—at that point, none will have suffered unreimbursed, out-of-pocket repair costs. Similarly, Class Members who made, e.g., four Service Visits will receive more compensation that those who made only two.

Much the same could be said about those Class Members who experienced the Defect firsthand or those who decide to trade in or sell their vehicles after receiving notice of the settlement. Not all class members will suffer these types of harms, but those who do will be eligible for the same compensation. The same is true for the class's release: all Class Members will provide an identical release—it does not vary by class member or subset of the class. As a result, the settlement treats all class members equitably, further supporting approval of the settlement. Finally, though the class representatives will receive an additional $5,000, the extra payment is in recognition for the service they

1  performed on behalf of the class, and the Ninth Circuit has approved such awards.[9]

2  ### 4.   The Extent of Discovery Completed Supports Final Approval

3  Courts may also consider the extent of discovery and the current stage of the

4  litigation to evaluate whether parties have sufficient information to make an informed

5  decision to settle the action. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234,

6  1239 (9th Cir. 1998). A settlement negotiated at an earlier stage in the litigation will not be

7  denied so long as sufficient investigation has been conducted. *Eisen v. Porsche Cars N.*

8  *Am.*, No. 11-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) (finding that counsel

9  had "ample information and opportunity to assess the strengths and weaknesses of their

10  claims" despite "discovery [being] limited because the parties decided to pursue settlement

11  discussions early on.").

12  Both before and after the action was filed, Plaintiffs thoroughly investigated and

13  researched their claims, which allowed Plaintiffs' Counsel to better evaluate Hyundai's

14  representations and omissions concerning the functionality of the DCTs.  Among other

15  tasks, Plaintiffs fielded in excess of a thousand inquiries from putative Class Members and

16  investigated many of their reported claims.  They consulted and retained expert Susan

17  Thompson, PA/CFF Hemming Morse, LLP, Certified Public Accountants, to assist them

18  in quantifying the value of the benefits conferred by the settlement. (Zohdy Decl. ¶ 5.)

19  Plaintiffs also researched publicly available materials and information provided by

20  the National Highway Traffic Safety Administration ("NHTSA") concerning consumer

21  complaints about the DCTs. They reviewed and researched consumer complaints and

22  discussions of DCT-related problems in articles and forums online, in addition to various

23  manuals and technical service bulletins ("TSBs") discussing the alleged defect. *Id.* Finally,

24  they conducted research into the various causes of actions and other similar automotive

25

26  ───────────────

     [9] *Boyd v. Bank of Am. Corp.*, No. 13-cv-0561-DOC, 2014 WL 6473804, at *7

27  (C.D. Cal. Nov. 18, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir.
     2003)). The awards here are comparable to the "typical incentive awards in the Ninth

28  Circuit, where $5,000 is presumptively reasonable." *Smith v. Am. Greetings Corp.*, No.
     14-cv-02577, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016).

1  actions. (Zohdy Decl. ¶ 6.)

2       In response to Plaintiffs' written discovery efforts, Plaintiffs received over **two**

3  **hundred thousand pages of documents**, including spreadsheets with thousands of rows

4  of data, owners' manuals, maintenance and warranty manuals, internal Hyundai

5  investigation reports, TSBs, field reports, warranty data, etc. (Zohdy Decl. ¶ 7.) All of this

6  information was thoroughly and meticulously reviewed by Plaintiffs' Counsel.

7       In addition to written discovery, Plaintiffs took the depositions of Hyundai's

8  corporate representatives: Wayne Gates (Director of the Hyundai United States Safety

9  Office), Gregory Webster (Senior Group Manager of the Engineering Design and

10  Analysis Department), and Sandy Zielomski (Senior Group Manager for Customer

11  Claims). (Zohdy Decl. ¶ 8.)

12       In reviewing the above discovery, evidence, and testimony, Plaintiffs identified

13  information that was instrumental to the case and to Plaintiffs' efforts during mediation.

14  Finally, over the course of litigation, Plaintiffs responded to over a thousand Class

15  Members who contacted Plaintiffs' Counsel to report problems with their Class Vehicles

16  and seek relief. Plaintiffs' Counsel also conducted detailed interviews with Class Members

17  regarding their pre-purchase research, their purchasing decisions, and their repair histories,

18  and developed a plan for litigation and settlement based in part on Class Members'

19  reported experiences with their Class Vehicles and with Hyundai dealers. (Zohdy Decl. ¶

20  9.)

21      **5.**    **The Views of Experienced Counsel Should Be Accorded**

22              **Substantial Weight**

23       The fact that sophisticated parties with experienced counsel have agreed to settle

24  their dispute should be given considerable weight by courts, since "parties represented by

25  competent counsel are better positioned than courts to produce a settlement that fairly

26  reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47

27  F.3d 373, 378 (9th Cir. 1995). Here, the Parties achieved a settlement after a thorough

28  review of relevant documents and testimony, as well as a rigorous analysis of the Parties'

claims and defenses.  The expectations of all Parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations and finalized with the assistance of an experienced mediator.  The Parties were represented by experienced class action counsel possessing significant experience in automotive defect and class action matters.  (*See, e.g.*, Zohdy Decl. ¶¶ 10-13, Ex. 1; Isaacson Decl. ¶¶ 4-11.)  Likewise, HMA's counsel, Bird Marella Boxer Wolpert Nessim Drooks Lincenberg & Rhow, P.C., is a renowned defense firm.  The Parties' recommendation to approve this Settlement should therefore "be given great weight."  *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel in approving a settlement resolving automotive defect allegations).

### 6.  The Reaction of Class Members to the Proposed Settlement[10]

As discussed above, only 150 individuals have chosen to opt out, and only 19 lodged objections, of which 9 have been withdrawn. (Zohdy Decl. ¶ 15-16.) This small percentage of exclusions and objections demonstrate that Class Members have reacted favorably to the Settlement, supporting final approval. *See, e.g., Eisen,* 2014 WL 439006, at *5 ("Although 235,152 class notices were sent, 243 class members have asked to be excluded ...."); *Milligan v. Toyota Motor Sales, U.S.A*., No. 09-05418-RS, 2012 U.S. Dist. LEXIS 189782, at *25 (N.D. Cal. Jan. 6, 2012) (finding favorable reaction where 364 individuals opted out [0.06%] following a mailing of 613,960 notices); *Browne*, 2010 U.S. Dist. LEXIS 14575, at *49 (finding favorable class reaction where, following a mailing of 740,000 class notices, 480 or 0.65% opted out).

### C.  The Settlement Satisfies the *Bluetooth* Factors

Finally, pre-certification settlements require further inquiry for "more subtle signs" of potential collusion between class counsel and defendant. *In re Bluetooth*, 654 F.3d at 946-47. But in applying "all of these factors, considerations, 'subtle signs,' and red flags, the underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean*

---

[10] There is no governmental participant in this case, and so this factor is neutral.

1    *Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

2    These factors "in the end are just guideposts." *Id.*

3          As discussed, this settlement does not bear the hallmarks of collusion, such as when

4    class counsel "receive a disproportionate distribution of the settlement" or when "class

5    receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654

6    F.3d at 947.  Plaintiffs' Counsel do not seek a disproportionate share of fees and there is no

7    "reverter" of unclaimed funds to Hyundai as the Settlement does not provide for the

8    establishment of a common fund. Rather, the settlement was negotiated at arm's-length after

9    multiple mediations before respected mediators. The Settlement is not under collusive under

10   the first *Bluetooth* factor.

11         The *Hyundai Fuel Economy* case is instructive. In *Hyundai*, the settlement

12   delivered roughly $100 million in benefits (much of which is also attributable to a

13   voluntary program created by automakers in response to an EPA investigation), had a clear

14   sailing provision for several but not all of the firms serving as class counsel, and no

15   reverter. On those facts, the Ninth Circuit en banc panel found that it bore "none of the

16   typical signs of collusion." *Hyundai*, 926 F.3d at 569. The en banc panel distinguished its

17   facts from *Bluetooth*, in which "the settlement paid the class zero dollars," a clear-sailing

18   provision where defendants agreed not to contest "an award of attorneys' fees totaling

19   eight times the *cy pres* award," and a kicker clause on fees. *Id.*

20         Even though there was a "clear sailing" provision for some class counsel, the en

21   banc court in *Hyundai* held that it was not problematic, since "[t]he settling parties agreed

22   on the amount of class compensation" well before negotiating, "'over multiple mediation

23   sessions with a respected and experience mediator,' the 'reasonable attorney's fees

24   provided in the settlement agreement.'" *Hyundai*, 926 F.3d at 569-70. The en banc panel

25   emphasized that the Ninth Circuit had "previously approved such an approach," as it "put

26   a good deal of stock in the product of an arms-length, non-collusive, negotiated

27   resolution." *Id.* (citation omitted). That fees were separately awarded under the lodestar

28   method, with a multiplier ranging from 1.22 to 1.55, also supports a finding that the

1  settlement was not collusive. *Id.* at 571-72.

2        Under *Hyundai*, therefore, a "clear-sailing" provision is not inherently problematic

3  so long as the fees do not dwarf the class benefits and the fees were negotiated separately,

4  with the assistance of an experienced mediator. This is in accord with pre-*Hyundai* cases.

5  *See, e.g., MyFord Touch*, 2019 WL 1411510, at *7 (approving settlement with a "clear-

6  sailing provision" partly because the fee agreement were reached under the auspices of an

7  experienced mediator); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687

8  (N.D. Cal. 2016) (clear-sailing provision does not signal collusion when the agreed-upon

9  fees are reasonable and the relief negotiated for the class is favorable). Indeed, the U.S.

10  Supreme Court had instructed parties to "settle the amount of a fee" to avoid uncertainty,

11  risk, and the potential of a resource-draining "second major litigation" on fees. *Hensley v.*

12  *Eckerhart*, 461 U.S. 424, 437 (1983).

13        Thus, even though the Settlement contains a clear-sailing provision, it is not

14  problematic and does not support collusiveness under the second *Bluetooth* factor. Finally,

15  the third *Bluetooth* factor is also absent, as there is no reversion to Hyundai.

16        Quite simply, no badges of collusion exist. The Court, after applying the *Bluetooth*

17  factors, should find that the Settlement is not the product of collusion and is fair,

18  reasonable and adequate, meriting final approval.

19        **D.    The Court Should Overrule the Relative Handful of Objections to the**

20        **Settlement**

21        In any litigation involving a large class, an absence of objections would be

22  "extremely unusual."  *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465,

23  478 (S.D.N.Y.1998) (observing that "[i]n litigation involving a large class, it would be

24  'extremely unusual' not to encounter objections."). Here, a scant 10 Class Members (9

25  Class Members withdrew their objections; *see* Zohdy Decl. ¶ 16) have chosen to object to

26  the Settlement. A "small number of objections by Class Members to the Settlement

27  weighs in favor of approval." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 103

28  (D.N.J. 2012) (citations omitted).

1    This response compares favorably to class member responses to other automotive

2    settlements approved by federal courts.  *See, e.g., Eisen v. Porsche Cars N. Am.*, No. 11-

3    09405-CAS, 2014 U.S. Dist. LEXIS 14301, *15 (C.D. Cal. Jan. 30, 2014) ("Although

4    235,152 class notices were sent, 243 class members have asked to be excluded, and only

5    53 have filed objections to the settlement."); *Milligan v. Toyota Motor Sales, U.S.A.*, No.

6    09-05418-RS, 2012 U.S. Dist. LEXIS 189782, *25 (N.D. Cal. Jan. 6, 2012) (finding

7    favorable reaction where 364 individuals opted out [0.06%] and 67 filed objections

8    [0.01%] following a mailing of 613,960 notices; *Browne v. Am. Honda Motor Co.*, No.

9    09-06750-MMM, 2010 U.S. Dist. LEXIS 14575, *49 (C.D. Cal. July 29, 2010) (finding

10   favorable class reaction where, following a mailing of 740,000 class notices, 480 (0.065%)

11   opted out and 117 (0.016%) objected). The reaction of Class Members supports final

12   approval. *See In re Rite Aid Corp Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("such a

13   low level of objection is a 'rare phenomenon'"). These results demonstrate that the Court's

14   preliminary assessment of Settlement's fairness and reasonableness has been separately

15   endorsed by the Class.

16   **The Court Should Overrule Nicole Shruhun's Objections.** Nicole Shruhun

17   ("Shruhun") lodges several objections to the sufficiency of the relief provided by the

18   Settlement. (Zohdy Decl., Ex. 3). She argues that: (1) compensation for Service Visits

19   "does not help with time away from work or requiring another replacement vehicle," (2)

20   Class Members should not have to submit claims/proof to be reimbursed for Diagnostic

21   Visits and Repairs ("Then we have to file forms and chase Hyundai back for the money

22   we have paid? How is this our problem?"), and (3) "compensation for lost value or sale

23   seems pretty vague . . . [s]elling the vehicle to another owner may not be possible because

24   of the reputation Hyundai has with these vehicles. Others may not want to buy this car if

25   selling privately."

26   Regarding her first objection, compensation for Service Visits is an exceptional

27   remedy rarely provided by automotive settlements. The Parties negotiated this novel

28   remedy in response to numerous complaints by Class Members to Plaintiffs' Counsel

regarding their frustration with the DCT-Related Symptoms. The payments offered by the Settlement are based on objective criteria to troubleshoot, diagnose, repair, or complain about DCT-Related Symptoms. Requiring a minimum of two Service Visits is a logical way to distinguish a persistent, inherent problem from driver error, a random occurrence, or normal wear-and-tear and is not grounds for disapproving the relief.[11] *See Eisen v. Porsche Cars N. Am.*, No. 11-09405, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ("The fact that the settlement requires actual [problem arising from alleged defect] to have occurred as a predicate for monetary compensation does not make it unfair.").

While Shruhun argues that the remedy does not make her entirely whole for, e.g., "time away from work," it is universally recognized that a settlement necessarily "involves some line-drawing, and full compensation is not a prerequisite for a fair settlement." *Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV1302529MMMVBKX, 2015 WL 12732462, at *28 (C.D. Cal. May 29, 2015) (internal quotations deleted); *Aarons v. BMW of N. Am., LLC*, No. 11-7667-PSG, 2014 U.S. Dist. LEXIS 118442, at *29 (C.D. Cal. Apr. 29, 2014) (explaining that all limits on compensation are "by their nature somewhat arbitrary" but approving the mileage cut-off for compensation given that it "was the product of arms'-length negotiation").

Regarding reimbursement for Diagnostic Visits and Repairs, Shruhun seems to imply that Class Members should not have to submit claims, or provide documentation, to be reimbursed. But the Parties are entitled to structure the Settlement to avoid its being "highly impractical to administer." *Asghari*, 2015 WL 12732462, at *27 (holding that the parties are entitled to "negotiate compensation for actual repairs and other 'concrete, provable costs'" that can be administered in a practicable way). In contrast, Shruhun's approach would create nearly insurmountable administrative burdens. Instead of submitting a claim form with objective criteria, Class Members would have to submit sworn written statements that reconstruct the events giving rise to claims for

---

[11] Most state lemon laws also require multiple repairs or repair attempts to qualify for relief.

reimbursement. This process would exacerbate proof problems and possibly increase the likelihood of fraud. The Settlement cannot be found to be unfair because the Parties chose a more manageable solution that reduces the potential for fraud. *See Keegan v. Am. Honda Co.*, No. 10-09508-MMM, 2014 WL 12551213, at *15 (C.D. Cal. Jan. 21, 2014) (observing that settlements requiring documentary proof for claims are frequently approved "given the defendant's need to avoid fraudulent claims").

As for her third objection, the Customer Satisfaction Program is specifically designed to offset Class Vehicles' potential loss in value resulting from the Alleged Defect. The Settlement is one of the few automotive settlements that even attempts to compensate Class Members for diminution of value, as such claims are extremely difficult to establish and calculate. *See, e.g.*, *Eisen*, 2014 WL 439006, at *8 ("These objectors have not taken into account the difficulties of establishing class-wide diminution in value damages…"); *Milligan*, 2012 U.S. Dist. LEXIS 189782, at *27 (overruling objection and observing that "diminution in value cases face significant obstacles regarding proof); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) (no reimbursement for trade-ins and sales at a loss).

**The Court Should Overrule Mahfuzur Rahman's Objection.** Mahfuzur Rahman's ("Rahman") objection "lies with the overall settlement not taking into consideration future repairs." Although Rahman claims that the Settlement should provide for reimbursement for future repairs because Hyundai's "powertrain warranty is very limited," this contention is simply not accurate—Hyundai offers a 7-year/100,000 warranty. As a result, Diagnostic Visits and Repairs were often at no cost to Class Members. Furthermore, now that the Settlement has brought attention to the DCT-Related Symptoms, Class Members now know that they can take full advantage of the 7-year/100,000 remedy to service/diagnose DCT-Related Symptoms.

**The Court Should Overrule Rebecca Jane Farr's Objection.** Jane Farr ("Farr") explicitly states that that her objection "applies only to [herself]," and does not therefore touch on the overall reasonableness of the Settlement; she simply believes the Settlement

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   does not provide her with enough "choices" that address her situation. Given that

2   clarification, Farr should perhaps have opted out to preserve any unique claims she might

3   have. The opt-out procedure protects the due process rights of those who believe they

4   strong individual claims, since anyone who thought "his or her personal claim was being

5   sacrificed for the greater good… had the right to opt-out of the class." *Hanlon*, 150 F.3d at

6   1027. The Settlement is meant to benefit the many Class Members who do not wish to file

7   an individual action in court, including those who do not have strong individual claims but

8   who would still benefit from the relief it provides. *See Eisen*, 2014 WL 439006, at *7

9   (citing cases overruling objections because "class members could have opted out if they

10  objected to the benefits offered by the settlement."); *Aarons*, 2014 U.S. Dist. LEXIS

11  118442, at *32 (overruling objections that the settlement did not provide adequate

12  compensation for certain categories of Class Members because "[t]o the extent those

13  individuals believe the settlement to be unfair, they could have opted out of the class.").

14          **The Court Should Overrule the Objections of Brian Roffe, Janice Finley, John**

15  **McCormack, Katrina Harden, Daniel Williams, and Philip Chaffin.** Objectors Brian

16  Roffe, Janice Finley, John McCormack, Katrina Harden, Daniel Williams, and Philip

17  Chaffin ("Roffe Objectors") generally fault the Settlement for not: (1) punishing Hyundai

18  for selling the Class Vehicles with the Alleged Defect, (2) recalling the Class Vehicles and

19  taking them off the road; and (3) providing a total fix for the DCT-Related Symptoms.

20          Regarding the first and second objections, the Parties stipulated at the outset that

21  neither the Settlement, nor any act performed or document executed pursuant to or in

22  furtherance of it, may be deemed or may be used as an admission of wrongdoing or

23  liability by Hyundai. (Settlement Agreement ¶ 12.2.) Given this understanding—which is

24  the foundation of all such class action settlements—the obvious function of the Settlement

25  would not be to "punish" Hyundai for the DCT-Related Symptoms, but to provide Class

26  Members with fair, adequate, and reasonable remedies for their claims.

27          As for the third general objection, settlements are by their very nature compromises

28  of disputed claims that provide "fair, adequate, and reasonable" relief—not total fixes.

1    Settlements are not designed to provide class members with a "total fix" of the issue, as

2    defendants rarely if ever concede that there is an issue that needs to be "fixed," and

3    because if they had so conceded that point, there would likely have been a recall which

4    would have obviated the need for a settlement in the first instance.

5          **The Court Should Overrule Nancy R. Hazlett's Objection.** The thrust Nancy R.

6    Hazlett's ("Hazlett") grievance can be summarized by the following quote: "Judge Carter,

7    I am asking that you increase my award of the class action proceeds by a minimum of

8    $4,000. My legal grounds consist of the intentional bad faith (dishonest and deceptive)

9    manner in which Hyundai and the Phil Long dealership knowingly dealt with me upon

10   purchasing the 2017 and again on the 2019 Tucson." Hazlett claims that her request is fair

11   and appropriate because she "purchased the 2017 vehicle in good faith with hard earned

12   money, and believe[s] HMA through their dealership, sold it to [her] under fraudulent bad

13   faith conditions." As in the case with Farr, Hazlett seems to have a highly individualized

14   grievance with Hyundai and her dealership, and should have opted out to pursue any fraud

15   claims she may have, rather than to deny settlement benefits to all Class Members. Her

16   objection, like the others, should be overruled.

17   **V.      CONCLUSION**

18         Based on the foregoing, the proposed Settlement is fair, adequate, and reasonable,

19   and satisfies the standard for final approval. Accordingly, Plaintiffs move the Court to

20   enter the Final Order and Judgment granting final approval of the Settlement Agreement

21   and grant such other and additional relief as the Court may deem appropriate.

22   //

23   //

24   //

25   //

26   //

27   //

28   //

1    Dated:  January 23, 2020                Respectfully submitted,

2                                      By:  /s/ Tarek H. Zohdy
                                           Tarek H. Zohdy
3                                          Cody R. Padgett
                                           Trisha K. Monesi
4                                          **CAPSTONE LAW APC**

5                                          Troy Isaacson
                                           Norberto Cisneros
6                                          **MADDOX, ISAACSON, CISNEROS LLP**

7                                          Attorneys for Plaintiffs Nicholas Wylie,
8                                          Shawna Wylie, Timothy Ryan, and
                                           Gregory Perger
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT